**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SLOAN VALVE COMPANY, a Delaware corporation, ) ) | |
| Plaintiff, ) | |
| ) | No. 10-cv-204 |
| v. ) | |
| ) | Honorable Amy J. St. Eve |
| ZURN INDUSTRIES, INC., a Delaware ) corporation, and ZURN INDUSTRIES, LLC, a ) Delaware limited liability company, ) ) | |
| Defendants. ) | |

**<u>CORRECTED MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

For the following reasons, the Court grants in part and denies in part Plaintiff Sloan Valve Company's ("Sloan") Motions Under Rule 12.

**BACKGROUND**

Sloan filed its complaint against Defendants Zurn Industries, Inc. and Zurn Industries, LLC (collectively "Zurn") on January 13, 2010 alleging infringement of U.S. Patent No. 7,607,635 entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent") and the corresponding U.S. Patent Application Publication No. 2006/015729 (the "'729 Patent Application"). (R. 1-1, Complaint, ¶ 1.)

**I.     Sloan's Complaint**

Sloan's complaint contains the following allegations. Sloan is a leading manufacturer of plumbing products. *Id.* at ¶ 7. In 2004, John Wilson, an engineer working in Sloan's research and development group, conceived a new dual flush valve and handle assembly that would distribute one amount of water when pushed down, and a reduced quantity of water when lifted

up. *Id.* at ¶ 11. Sloan recognized Wilson's invention as a solution to satisfy the need for a dual mode flush product for commercial application and accordingly decided to invest in testing, developing and commercializing Wilson's invention. *Id.* at ¶¶ 11-12. After testing a number of experimental handle assemblies, Sloan announced the commercial introduction of the product on August 1, 2005. *Id.* at ¶¶ 13, 16. On August 4, 2005, Zurn announced a water-saving valve and handle assembly that, upon information and belief, Zurn derived by copying Sloan's dual mode flush handle. *Id.* at ¶¶ 18-22.

Sloan filed a patent application in the United States Patent and Trademark Office ("U.S. Patent Office") claiming the unique features of the dual mode flush handle assembly and valves. *Id.* at ¶ 23. On July 13, 2006, the U.S. Patent Office published Sloan's patent application as the '729 Patent Application. *Id.* at ¶ 24. On October 27, 2009, after finding Wilson's invention patentable, the U.S. Patent Office issued the '635 Patent.

Count I of Sloan's complaint alleges that Zurn's making, using, offering to sell, importing or selling dual mode handle assemblies and flush valves infringe Claims 1, 4-6, 10-12, 14, 19, 28-31 and 33-34 of the '635 Patent. *Id.* at ¶ 36. Count II of Sloan's complaint alleges that Zurn infringed the '729 Patent Application by making, using, or offering for sale the invention in at least Claims 10-11, 15 and 31 of the '635 Patent between the publication of the '729 Patent Application and the issuance of the '635 Patent. *Id.* at ¶¶ 40-43. Sloan's complaint also alleges claims against Zurn for inducement to infringe the '635 Patent and contributory infringement of the '635 Patent.

## II.     Zurn's Answer, Counterclaim and Affirmative Defenses

On February 2, 2010, Zurn filed its Answer, Counterclaims, and Affirmative Defenses to Sloan's complaint. (R. 17-1, Zurn's Answer, Counterclaims, and Affirmative Defenses.) In its

counterclaim, Zurn seeks a declaration of invalidity (Count I) and non-infringement (Count II) of all of the claims of the '635 Patent, and unenforceability of the '635 Patent due to inequitable conduct (Count III). Zurn also filed seven affirmative defenses which assert: (i) detrimental reliance, (ii) lack of actual notice of the '729 Patent Application, (iii) denial of infringement of any valid claim of the '635 Patent, (iv) estoppel, (v) invalidity and unenforceability of the '635 Patent, (vi) misuse/unclean hands, and (vii) entitlement to attorneys' fees.

Zurn's claim of inequitable conduct contained in Count III of its counterclaim derives from statements made by Sloan during a reexamination that Sloan failed to disclose to the United States Patent Office during the prosecution of the '635 Patent. On May 11, 2009 and July 10, 2009, Sloan filed a (i) Request for Reexamination of United States Patent No. 7,481,413 (the "'413 Patent") and (ii) Corrected Request for Reexamination of the '413 Patent (collectively "Request for Reexamination of the '413 Patent"). *Id.* at ¶¶ 15-16. Zurn alleges that Sloan made statements concerning prior art in the Request for Reexamination of the '413 Patent that are inconsistent with the specifications of the '729 Patent Application and the '635 Patent.

Specifically, in the Request for Reexamination of the '413 Patent, Sloan described U.S. Patent No. 1, 912,937 and stated that, "[t]he bore is inherently larger than the plunger so as to allow the plunger to passes [sic] there through. One of ordinary skill would understand the bore to be sized sufficiently larger than the plunger so as to avoid excessive frictional forces that would cause operation to be difficult and that would result in greater amount of operational wear." *Id.* at ¶ 20. The '635 Patent and the '729 Patent Application state that, "[y]et another possible alternate construction of the bushing passage is to make the inside diameter of the bushing passage appreciably larger than the outside diameter of the plunger." *Id.* at ¶ 22. Zurn

alleges that in the Request for Reexamination of the '413 Patent, Sloan argued that a plunger having a smaller radius than the inside diameter of the bushing was inherently taught by prior art references, and that in the specifications and claims of the '635 Patent Sloan stated that part of its invention included a plunger having a smaller radius that the inside diameter of the bushing. *Id.* at ¶¶ 24-25.

Zurn thus alleges that at least one claim in the '635 Patent covers a plunger having a smaller radius than the inside diameter of the bushing which is inherently taught by prior art references. *Id.* at ¶ 26. Zurn further alleges that Sloan did not disclose the Request for Reexamination of the '413 Patent to the United States Patent Office during the prosecution of the '635 Patent, and that it willfully did not advise the United States Patent Office that prior art inherently taught a plunger having a smaller radius than the inside diameter of the bushing. *Id.* at ¶ 29. Finally, Zurn alleges that the United States Patent Office would have considered this teaching and Sloan's statements material to the examination of the '635 Patent.

## LEGAL STANDARD

### I.  12(b)(1) Motion to Dismiss

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). If a defendant is challenging the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See id.* If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the Court may look beyond the pleadings and view any evidence submitted to determine if subject matter

jurisdiction exists.  *See id.*; *see also St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).  "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

## II.     12(b)(6) Motion to Dismiss

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No.* 7, 570 F.3d 811, 820 (7th Cir. 2009).  Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).  This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."

*Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (court construes complaint in light most favorable to plaintiff drawing all reasonable inferences in plaintiff's favor).

### III.     Motion to Strike Affirmative Defenses

Rule 12(f) governs motions to strike. Pursuant to that Rule, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings.'" *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Heller Financial v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). "Motions to strike are 'not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Id.* Yet, "[i]t is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case." *Davis v. Elite Mortg. Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (citing *Heller*, 883 F.2d at 1295). "It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a 'short and plain statement' of all the material elements of the defense asserted; bare legal conclusions are not sufficient." *Id. (*citing *Heller*, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D. Ill. 2000)).

Courts in this Circuit apply a three-part test to affirmative defenses subject to a motion to strike: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge -- in other words, if it is impossible for

defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient." *Davis*, 592 F. Supp. 2d at 1058 (citing *Heller*, 883 F.2d at 1294)). Regarding the first part of the test, "the basic concept of an affirmative defense is an *admission* of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable." *ADM Investor Servs., Inc. v. Collins,* No. 05 C 1823, 2006 WL 224095, * 2 (N.D. Ill. Jan. 26, 2006) (quoting *Instituto Nacional de Comercialization Agricola v. Cont'l Ill. Nat'l Bank and Trust Co.*, 576 F.Supp. 985, 988 (N.D. Ill. 1983)) (emphasis in original). Federal Rule of Civil Procedure 8 also contains a list of affirmative defenses that a Defendant may plead. Fed. R. Civ. P. 8(c)(1).

## ANALYSIS

In its motion to dismiss, Sloan requests that the Court: (i) dismiss counts I and II of Zurn's counterclaim with respect to the unasserted claims of Patent '635 pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, (ii) dismiss Count III of Zurn's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), and (iii) strike Zurn's First, Second, Third, Sixth and Seventh affirmative defenses. For the following reasons, the Court grants in part and denies in part Zurn's motion.

**I.      Rule 12(b)(1) Motion to Dismiss Counts I and II of Zurn's Counterclaim as They Relate to the Unasserted Claims**

In its complaint, Sloan alleges that Zurn infringed 17 of the 25 claims of the '635 Patent: Claims 1, 2-6, 7-8, 10-12, 14, 19, 28-31 and 33-34. In counts I and II of its counterclaim, Zurn seeks a declaration of invalidity and non-infringement of all of the claims of the '635 Patent. Sloan argues that because its complaint only asserts infringement of certain claims, Zurn has failed to demonstrate that a justiciable controversy exists with respect to the unasserted claims of

Patent '635. Accordingly, Sloan asserts that Counts I and II of Sloan's counterclaim must be dismissed pursuant to Rule 12(b)(1) with respect to the unasserted claims because the Court lacks subject matter jurisdiction over those claims.

> The Declaratory Judgment Act provides, in relevant part:
>
> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007), the Supreme Court revised the Federal Circuit's jurisprudence regarding standing to seek a declaratory judgment of patent invalidity. The Supreme Court held that a party may assert an action for declaratory judgment where the alleged facts "'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at 127 (internal citation omitted); *see also Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007). "The dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' 'real and substantial,' and 'admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Berger v. Ohio Table Pad Co.*, 539 F. Supp. 2d 1069, 1089-1090 (N.D. Ind. 2008) (citing *MedImmune*, 127 S. Ct. at 771)). "A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff[.]" *Benitec*, 495 F.3d at 1344.

This case presents a unique question of justiciability because Sloan has only asserted infringement of certain claims of the '635 patent.  In *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984), the Federal Circuit addressed a similar scenario.  In *Jervis*, the plaintiff only asserted and litigated some of the claims of the patent at issue.  The Federal Circuit held that due to this limited assertion of infringement, "the evidence in the record is inadequate to indicate the existence of a case or controversy regarding the remaining claims in the invalidity declaratory judgment counterclaim." *Id.*  Accordingly, the Federal Circuit held that the district court did not have jurisdiction over the invalidity claims in defendant's counterclaim that related to the unasserted claims.  *Id.*  The court indicated that "[t]his holding is applicable only to those instances where the declaratory judgment plaintiff, responding to an initial complaint by the declaratory defendant that asserted the infringement of less than all of his claims, counterclaimed for an invalidity declaration but failed to meet the case or controversy requirement regarding the invalidity of all of the claims." *Id.* at 1399, n. 8.  Accordingly, the "holding [in *Jervis*] does not preclude the issuance of a declaratory judgment that all claims are valid or invalid in response to, *inter alia*, . . . the filing of a declaratory judgment counterclaim asserting the invalidity of all of a patentee's claims in response to an accusation or a complaint that asserted the infringement of less than all of the claims *where the declaratory plaintiff is able to meet both of the case or controversy requirements for all of the claims*." *Id.*[1]  See also *Wm. Wrigley Jr. Co. v. Cadbury Adams USA, LLC*, 2004 WL 2616300, 2004 U.S. Dist. LEXIS

---

[1] Zurn incorrectly asserts that in *Jervis* the Federal Circuit held that "even though claims 4 and 8 were not asserted, since claim 9 was asserted, and claim 9 depends from claims 4 and 8, a case or controversy existed as to claims 4 and 8." (R. 44-1, Defendant's Memorandum in Opp'n to Plaintiff's Motions Under Rule 12, p. 9.)  Instead, in *Jervis*, the court noted that the plaintiff had litigated the dependent claims by relying on them in post-trial motions. *Jervis*, 742 F.2d at 1399, n. 7.  Conversely, in the present case, Plaintiff has specifically asserted that it will not pursue the unasserted claims.

23461, *7-*8 (N.D. Ill. Nov. 17, 2004) ("[T]he *Jervis* court refused to assume that a case or controversy existed for claims that were not part of the original suit. Instead, it required the declaratory judgment plaintiff to independently prove the existence of a case or controversy for each claim.); *Hoffman-La Roche Inc. v. Mylan Inc.*, 2009 WL 4796736, 2009 U.S. Dist. LEXIS 114784, 16-17 (D.N.J. Dec. 9, 2009) ("[T]he counterclaimant cannot go forward with its declaratory judgment action in regard to the unasserted claims unless it shows the existence of a live case or controversy. If the counterclaimant fails to make the requisite showing, then the court will lack jurisdiction to reach the merits of any invalidity or noninfringement claim connected to those discrete claims.") (citing *Jervis*, 742 F.2d at 1399).

In order to withstand a 12(b)(1) motion to dismiss, Zurn must demonstrate that it is able to meet the case or controversy requirements set forth in *MedImmune* with respect to the unasserted claims in the '635 Patent. Zurn makes two arguments in this regard. First, Zurn asserts that it has an immediate apprehension of suit on two of the unasserted claims, claims 9 and 18, because these claims depend from either claim 10-11 or 19. This conclusory statement, however, is insufficient to establish a "substantial controversy" between the parties. *See MedImmune*, 549 U.S. at 127. Indeed, "[t]he burden of persuasion rests with the party asserting federal jurisdiction." *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 329-330 (7th Cir. 2009). While a claim that is more limited in scope than the claim from which is depends cannot be infringed when the broader claim is not infringed, *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989)), Zurn has presented no evidence or argument to support its conclusory argument with regard to jurisdiction.

Second, Zurn argues that because it has asserted an inequitable conduct claim, each and every claim of the '635 Patent is subject to the Court's jurisdiction. While a court's determination of inequitable conduct in relation to one or more claims of a patent renders the entire patent unenforceable, *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1322 (Fed. Cir. 2008) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988)), Zurn has not demonstrated to the Court that an actual controversy exists with respect to the unasserted claims. Zurn relies on *Flakice Corp. v. Liquid Freeze Corp.*, 131 F. Supp. 599, 600-01 (D. Cal. 1955), a non-controlling fifty year old case which held that the court had subject matter jurisdiction over defendant's declaratory counterclaim because "[a]lthough the plaintiffs have limited their precise complaint to particular claims of their patents, the actual controversy between them involves the accused machine." *Id.* at 600. Contrary to the facts of the present case, however, in *Flakice* the plaintiff made no representations that it would not bring suit against the defendant for the unasserted claims. *Id.* Indeed, one court in this district has explained the inapplicability of the court's holding in *Flakice* to cases in which a patent-holder has agreed not to sue on certain patent claims:

> Although the one remaining case cited by Cadbury, *Flakice Corp. v. Liquid Freeze Corp.*, 131 F. Supp. 599, 600 (D. Cal. 1955), did involve an assertion of less than all of the patent's claims, I agree with Wrigley that it is distinguishable on its facts. In *Flakice*, the court noted that the controversy revolved around the manufacture and sale of an ice machine as a whole, not just the part of the machine covered by a single claim in the plaintiff's patent. *Id.* Here, Wrigley is not disputing Cadbury's right to manufacture and sell gum in general but, instead, challenges only the manufacture and sale of gum that contains cooling agents purportedly falling within the scope of Claim 34 of the '233 patent. I do not think the claims here establish the type of over-arching controversy that was at the heart of the court's grant of declaratory judgment jurisdiction in *Flakice*.

*Wm. Wrigley Jr. Co.*, 2004 WL 2616300, 2004 U.S. Dist. LEXIS 23461 (N.D. Ill. Nov. 17, 2004). Similarly, in the present case, Zurn has failed to support its claim that there is a

justiciable controversy with respect to every claim of the '635 Patent. Zurn makes passing reference to one phrase contained in the '635 Patent which it asserts demonstrates that a feature of the invention is necessarily "covered by all of the claims," but again provides no supporting analysis for this contention. Because jurisdiction must be analyzed on a "claim by claim" basis, *Jervis*, 742 F.2d at 1399, Zurn has failed to meet its burden demonstrating a justiciable controversy with respect to the unasserted claims. *See, e.g.,Wm. Wrigley Jr. Co.*, 2004 WL 2616300, 2004 U.S. Dist. LEXIS 23461 ("the current state of the law, as laid down by the Federal Circuit, weighs against the automatic extension of declaratory judgment jurisdiction to all claims in a patent when the original filing is limited in its scope"); *Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals*, 101 F. Supp. 2d 1139, 1143 (S.D. Ind. 2000) (holding that defendants failed to demonstrate "a reasonable apprehension that they will face an infringement suit on the unasserted patent claims that defendants seek to invalidate" where plaintiff "unequivocally []waived the right to assert against the defendants any [of the unasserted] claim[s]").

Moreover, the analysis of other district courts that have held that an assertion of inequitable conduct does not necessarily give rise to jurisdiction over unasserted claims is persuasive. Relying on *Biogen, Inc. v. Amgen*, Inc., 913 F. Supp. 35 (D. Mass. 1996), one district court explained:

> In *Biogen*, the court held that "in light of [the patent holder's] latest representation that it will relinquish forever the right to sue [defendant] on any claims other than [the asserted claims], [defendant's] counterclaim will be dismissed." The court noted, however, that "[a] finding of nonjurisdiction over the counterclaim [for invalidity of non-asserted claims] does not . . . preclude [defendant] from contesting the enforceability of the '702 patent." *Id.* at 38 at 38 (citing *Scripps Clinic and Research Foundation v. Genentech Inc.*, 707 F. Supp. 1547, 1557 n.15 (N.D. Cal. 1989), *rev'd on other grounds*, 927 F.2d 1565 (Fed. Cir. 1991) ("[A] determination that inequitable conduct has occurred renders the 'entire patent' unenforceable. However, . . . this Court has jurisdiction only over those claims with respect to which infringement is

12

> alleged.")). The *Biogen* court noted that "[t]he reason that a conservative approach to jurisdiction is not unfair lies in the significant difference between a claim of unenforceability and a claim of invalidity. An inequitable conduct defense is directed to the former, and is not dependent on the ability to litigate the latter." *Id.* (citing *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1400 n.8 (Fed. Cir. 1984) (noting that "when the proof at trial establishes . . . fraud," a court declining declaratory judgment jurisdiction over nonasserted claims may nonetheless enter "a declaratory judgment that all claims are invalid.")).

*Amgen, Inc. v. ARIAD Pharms., Inc.*, 577 F. Supp. 2d 695, 713 (D. Del. 2008). Indeed, even if Zurn cannot establish that the Court has jurisdiction over the unasserted claims, the Federal Circuit has held that courts may look outside the asserted claims to determine whether inequitable conduct occurred. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).

For these reasons, Zurn has failed to demonstrate that a justiciable controversy exists with respect to the unasserted claims of the '635 Patent. The Court accordingly grants Sloan's Rule 12(b)(1) motion to dismiss Counts I and II of Zurn's counterclaim as they relate to the unasserted claims without prejudice.

## II.     Rule 12(b)(6) Motion to Dismiss Count III of Zurn's Counterclaim

Sloan also asserts that the Court should dismiss Count III of Zurn's counterclaim alleging inequitable conduct pursuant to Rule 12(b)(6). Specifically, Sloan asserts that Zurn's counterclaim alleging inequitable conduct fails to meet the requirements for materiality set forth in 37 C.F.R. § 1.56. 37 C.F.R. § 1.56(a) provides that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability…." 37 C.F.R. § 1.56(b) further provides that:

> Information is material when: it is not cumulative to information already of record or being

13

made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

    (i) Opposing an argument of unpatentability relied on by the Office, or

    (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b). Sloan focuses the arguments in both its memorandum in support of its motion to dismiss and its reply brief on Zurn's alleged failure to plead materiality as required by 37 C.F.R. § 1.56. (R. 25-1, Sloan's Memorandum in Support of Its Rule 12 Motions, p. 8) ("The failure to plead and inability to prove any facts that would support either of the requirements for Patent Office Rule 56 establishing materiality is fatal to Count II); (R. 45-1, Sloan's Reply Memorandum in Support of Rule 12 Motions, p. 6) ("To plead materiality based on Rule 56(b)(1), Zurn's pleadings would need to allege factual bases that the information in Sloan's attorney's argument in the reexamination . . ."). The Federal Circuit, however, distinguishes between the materiality test set forth by the U.S Patent Office in 37 C.F.R. § 1.56 and other tests for materiality established by the Federal Circuit:

> The Federal Circuit provides several, alternative tests for materiality. *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006). The main test . . . is whether a reasonable examiner would have considered such prior art important in deciding whether to allow the patent application. *Id.* at 1314. The more recent and narrow materiality test based on the PTO's Rule 56 enacted in 1992, provides that information is material when it is not cumulative to information already of record or being made of record in the application, and (1) establishes a prima facie case of unpatentability, where the information compels a conclusion that a claim in unpatentable under a preponderance of the evidence and giving the broadest reasonable construction consistent with the specification to each term; or (2) refutes or is inconsistent with a position that the applicant takes in opposing an argument of unpatentability relied on by the PTO or in asserting an argument of patentability. 37 C.F.R. § 1.56(b); *Purdue Pharma, L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1129 (Fed. Cir. 2006).

*Chatsworth Prods., Inc. v. Panduit Corp.*, 2006 WL 1371457, 2006 U.S. Dist. LEXIS 30344, 11-12 (N.D. Ill. May 17, 2006); *see also Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1237 (Fed. Cir. 2008) ("A misstatement or admission can be material for the purposes of showing inequitable conduct even if it does not meet the standard for Rule 56 if, in the totality of the circumstances, a reasonable examiner would have considered such information important in deciding whether to allow the parent application.").

Indeed, in its response brief, Zurn cites to the broader materiality test espoused by the Federal Circuit which provides that, "[t]he materiality of information withheld during prosecution may be judged by the 'reasonable examiner' standard. That is, '[m]ateriality . . . embraces any information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent.'" *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007) (internal citations omitted). Zurn has sufficiently alleged that "the admissions by SLOAN regarding the prior art cited in the Request for Reexamination and the Corrected Request for Reexamination of the '413 Patent qualifies [sic] as prior art to the '635 Patent" and that in the prosecution of the '635 Patent "Sloan should have known that the United States Patent and Trademark Office would consider its statements that the prior art inherently taught a plunger having a smaller radius than the inside diameter of the bushing material." (R. 17-1, Zurn's Answer, Counterclaims and Affirmative Defenses, p. 12, ¶¶ 27, 31.) Because Zurn has sufficiently alleged materiality under the Federal Circuit's case law governing inequitable conduct, the Court denies Sloan's 12(b)(6) motion to

dismiss Count III of Zurn's counterclaim.[2]

## III. Motion to Strike Zurn's Affirmative Defenses

Sloan next requests the Court to strike Zurn's First, Second, Third, Sixth and Seventh affirmative defenses. The Court will address each of the contested affirmative defenses in turn.

Zurn's first and sixth affirmative defenses are insufficiently pleaded. Zurn's first affirmative defense alleges estoppel in a single sentence: "Zurn has detrimentally relied upon Sloan's acquiescence with respect to Zurn acts alleged to infringe the '729 Patent Application and the '635 Patent and Sloan is therefore estopped from seeking the relief requested in Sloan's Complaint." (R. 17-1, Zurn's Answer, Counterclaims and Affirmative Defenses, p. 5, ¶ 54.) Zurn's sixth affirmative defense alleges that "[u]pon information and belief, Plaintiff is barred in whole or in part from asserting the '635 patent." *Id.* at ¶ 61. Because they are subject to federal pleading requirements affirmative defenses "must set forth a 'short and plain statement' of all the material elements of the defense asserted; bare legal conclusions are not sufficient." *Heller*, 883 F.2d at 1294; Fed. R. Civ. P. 8(a). Zurn has failed to adequately plead estoppel or misuse/unclean hands in accordance with Rule 8 because Zurn offers no allegations in support thereof and has not provided any minimal specifics in its pleading to provide Sloan with notice of how and in what way its defenses arise. *See, e.g., Davis*, 592 F. Supp. 2d at 1059 (N.D. Ill. 2009) (motion to strike affirmative defenses granted where "affirmative defenses fail to point to specific allegations in the pleadings that satisfy the essential elements of either defense"); *see*

---

[2] Because Sloan only challenges Zurn's failure to plead that the relevant information is not cumulative to information of record pursuant to 37 C.F.R. § 1.56(b), the Court need not address Sloan's argument in this regard. The Court notes however, that while "[r]egardless which standard a court applies, withheld information that is merely cumulative to information already before the PTO is not material," *Digital Control, Inc.*, 437 F.3d at 1319, "the scope and content of prior art and what the prior art teaches are questions of fact." *Id.*

*also Bartashnik v. Bridgeview Bancorp, Inc.*, 2005 WL 3470315, 2005 U.S. Dist. LEXIS 33657 (N.D. Ill. Dec. 15, 2005) ("waiver, estoppel and laches 'are equitable defenses that must be pled with the specific elements required to establish the defense'") (internal citations omitted).

Zurn's second affirmative defense alleges that: "Zurn did not have actual notice of the '729 Patent Application at the time it commenced the acts alleged to constitute infringement. Furthermore, Sloan did not provide Zurn with actual notice that Zurn infringed any of the claims of the '729 Patent Application or the '635 Patent." (R. 17-1, Zurn's Answer, Counterclaims and Affirmative Defenses, p. 5, ¶ 55.) While Sloan objects to the content of the affirmative defense, the defense must be stricken for the independent reason that it is not properly pleaded as an affirmative defense. Zurn has already denied the allegation contained in Sloan's complaint that "Zurn had actual notice of the published '729 Patent Application at the time it committed the acts of infringement of the '729 Patent Application." *Id.* at ¶ 43. Zurn's second affirmative defense is accordingly not a proper Rule 8 defense, nor has Zurn identified any support to demonstrate that courts have recognized such an affirmative defense. *See Hayes v. Agilysys, Inc.*, 2009 WL 891832, 2009 U.S. Dist. LEXIS 26762 (N.D. Ill. Mar. 30, 2009) (affirmative defenses stricken where defenses were "nothing more than a reiteration of the denials [defendants] made in the bulk of their answer"); *Holzer v. Prudential Equity Group LLC*, 520 F. Supp. 2d 922, 929 (N.D. Ill. 2007) (affirmative defense stricken where defense was "nothing more than a denial of an allegation contained in the complaint"); *Renalds v. S.R.G. Restaurant Group, Chicago, LLC*, 119 F. Supp. 2d 800, 804 (N.D. Ill. 2000) (where defendant has already put matters in issue by "denying certain allegations in its answer" defendant "not only need not but cannot raise these matters again via an affirmative defense").

Zurn's third and seventh affirmative defenses suffer from the defect that they are not actually affirmative defenses. "The concept of an affirmative defense under Rule 8(c) 'requires a responding party to admit a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability (or perhaps from full liability).'" *Reis Robotics USA, Inc. v. Concept Indus.*, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006) (citing *Menchaca v. Am. Med. Resp. of Ill.*, 6 F. Supp. 2d 971, 972 (N.D. Ill. 1998)). Zurn's third affirmative defense denies that Zurn infringed the '635 Patent and its seventh affirmative defense alleges that this is an "exceptional" case in which Zurn is entitled to attorneys' fees pursuant to 35 U.S.C. § 285. To support its claim that these are "typically plead[ed]" affirmative defenses Zurn relies on un-dated and non-controlling secondary source, as well as a 25 year-old, non-patent Northern District of Illinois case which does not address either of Zurn's asserted affirmative defenses. Neither of the affirmative defenses are proper Rule 8 affirmative defenses, nor has Zurn identified any controlling legal authority to demonstrate that courts have recognized these alleged affirmative defenses.

The Court accordingly grants Sloan's motion to strike Zurn's First, Second, Third, Sixth, and Seventh affirmative defenses.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Sloan's Motions Under Rule 12. Zurn is ordered to file an amended counterclaim and affirmative defenses consistent with this ruling by May 18, 2010.

DATED:  May 6, 2010                         ENTERED

                                            _____
                                            AMY J. STUEVE
                                            United States District Court Judge