# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SLOAN VALVE COMPANY, a Delaware corporation, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 10-cv-204 |
| v. | ) ) | |
| ZURN INDUSTRIES, INC., a Delaware corporation, and ZURN INDUSTRIES, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Sloan Valve Company ("Sloan") moves to dismiss, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendants Zurn Industries, Inc.'s and Zurn Industries, LLC's (collectively, "Zurn") inequitable conduct counterclaims (Counts III and IV) for failure to comply with Rule 9(b), and it seeks an award of attorney's fees and costs associated with its motion. For the reasons explained below, the Court grants in part and denies in part Sloan's motion to dismiss, and denies its request for attorney's fees and costs. Specifically, the Court denies Sloan's motion with respect to Count III and grants the motion with respect to Count IV.

Zurn, however, has cited additional factual information it has obtained from discovery regarding Count IV in its response brief, which, if added to its counterclaims, would render Count IV sufficient under Rule 9(b). Importantly, allowing Zurn to amend its allegations will not prejudice Sloan. This case has been pending for over two years, and the parties have engaged in extensive discovery. Sloan has had notice, through such discovery, of the factual basis for Zurn's claim. *See Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir.

1994) (stating that Rule 9(b) "serve[s] three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party.") (citation omitted); *see also Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1327 (Fed. Cir. 2009) (in adopting a Rule 9(b) pleading standard for inequitable conduct claims, the court "follow[ed] the lead of the Seventh Circuit in fraud cases"). Therefore, pursuant to Rule 15(a)(2), the Court grants Zurn leave to amend its Counterclaims consistent with the terms of this Memorandum Opinion and Order by April 9, 2012.

## BACKGROUND

### I.       Procedural Background

Sloan filed this lawsuit on January 13, 2010, alleging that Zurn had appropriated its "dual mode flush valve invention," therefore infringing U.S. Patent No. 7,607,635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent") and the corresponding U.S. Patent Application Publication No. 2006/0151729 (the "'729 Patent Application"). (R. 1.)  On February 8, 2010, Zurn filed its Answer, Counterclaims, and Affirmative Defenses, asserting invalidity and non-infringement of the '635 Patent as well as inequitable conduct during the prosecution of the '635 Patent.  (R. 17.)  Sloan moved to dismiss certain counterclaims and affirmative defenses, arguing in relevant part that Zurn failed to plead materiality of the withheld information.  (R. 24.)  On May 4, 2010, the Court granted in part and denied in part Sloan's motion to dismiss, holding that Zurn had adequately alleged materiality of the withheld information.  (R. 70.)  Zurn subsequently filed an Amended Answer, Counterclaims, and Affirmative Defenses and, later, a Second Amended Answer, Counterclaims,

and Affirmative Defenses. (R. 72, 85.) Sloan answered Zurn's Second Amended Counterclaims on August 12, 2010. (R. 104.)

On December 16, 2010, upon Zurn's motion, the Court stayed the proceedings because the U.S. Patent and Trademark Office ("PTO") had granted its request for an ex parte reexamination of the '635 Patent. (R. 149, 157.) On September 27, 2011, the PTO issued an Ex Parte Reexamination Certificate for the '635 Patent, which provides that certain of Sloan's claims in the '635 Patent were amended and others were added. (R. 184-1, Ex Parte Reexamination Certificate.) On October 7, 2011, Sloan filed a motion to re-open the case and lift the stay, which the Court granted on November 10, 2011. (R. 183, 192.)

On November 29, 2011, Sloan filed its Amended and Supplemental Complaint (the "Complaint"),[1] asserting direct and willful infringement of claims 1, 4-6, 10-12, 14, 19, 29-31, and 33-34 of the '635 Patent, infringement of the '729 Patent Application, induced infringement of the '635 Patent, and contributory infringement of the '635 Patent. (R. 197.) On December 9, 2011, Zurn filed its Answer, Counterclaims, and Affirmative Defenses to Sloan's Complaint, in

---

[1]  Sloan filed a redacted version of the Complaint on November 29, 2011 and an unredacted copy under seal on December 11, 2011. (R. 197, 204.)

which Zurn asserts four counterclaims, including two for inequitable conduct (the "Counterclaims"). (R. 202, 207.) In its motion, Sloan seeks dismissal of the Counterclaims.

## II. Factual Background

### A. Sloan's Complaint

Sloan's Complaint contains the following allegations.[2] Sloan is a leading manufacturer of plumbing products. (R. 197, Compl. ¶ 8.) In 2004, John Wilson, an engineer working in Sloan's research and development group, conceived a new dual flush valve and handle assembly that distributed one amount of water when pushed down and a reduced quantity of water when lifted up. (*Id.* ¶ 12.) Sloan recognized Wilson's invention as a solution to satisfy the need for a dual mode flush product for commercial application and accordingly decided to invest in testing, developing, and commercializing Wilson's invention. (*Id.* ¶¶ 12-13.) After testing a number of experimental handle assemblies, Sloan announced the commercial introduction of its dual flush product on August 1, 2005. (*Id.* ¶¶ 14, 17.)

On August 4, 2005, Zurn announced a water-saving valve and handle assembly that Sloan alleges Zurn derived by copying Sloan's dual mode flush handle. (*Id.* ¶¶ 19-22, 24.) Since December 2005, Zurn has offered for sale dual mode handle assemblies and dual mode flush valves, including Zurn Commercial Brass product P6000-M-ADA-DF, which incorporate features of Wilson's invention and are covered by the '635 Patent's claims and the '729 Patent Application. (*Id.* ¶ 32.)

---

[2] Much of this factual background section is identical to the factual background section in the Court's earlier opinion regarding Sloan's first motion to dismiss. *See Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp. 2d 743, 746-48 (N.D. Ill. 2010). The Court has updated the previous factual allegations with Sloan's and Zurn's newly-asserted allegations.

Sloan filed a patent application with the PTO, claiming the unique features of the dual mode flush handle assembly and valves, which the PTO published as the '729 Patent Application on July 13, 2006. (*Id.* ¶¶ 35-36.) On October 27, 2009, the PTO issued the '635 Patent. (*Id.* ¶ 37.)

Sloan's Complaint contains four counts. Count I alleges that Zurn's making, using, offering to sell, importing or selling dual mode handle assemblies and dual mode flush valves infringes claims 1, 4-6, 10-12, 14, 19, 29-31, and 33-34 of the '635 Patent. (*Id.* ¶ 78.) Count II alleges that Zurn infringed the '729 Patent Application by making, using, or offering for sale the invention in at least claims 10-11 and 15 between the publication of the '729 Patent Application and the issuance of the '635 Patent. (*Id.* ¶¶ 83-85.) Sloan also alleges claims against Zurn for inducement to infringe the '635 Patent (Count III) and for contributory infringement of the '635 Patent (Count IV). (*Id.* ¶¶ 86-95.)

## B.     Zurn's Answer, Counterclaims, and Affirmative Defenses

Zurn seeks a declaration of invalidity (Count I) and non-infringement (Count II) of the asserted '635 Patent claims, as well as unenforceability of the '635 Patent due to inequitable conduct (Counts III and IV). (R. 202, Answer, Counterclaims, and Aff'tive Defs.) Zurn also asserts an affirmative defense of invalidity and unenforceability of the '635 Patent. (*Id.*) Zurn's allegations with respect to its inequitable conduct counterclaims are discussed more fully below.

## LEGAL STANDARD

Although this is a patent case, the Court applies the Seventh Circuit's Rule 12(b)(6) standard. *Exergen Corp.*, 575 F.3d at 1318 (regional circuit law applies to procedural issues that are not specific to patent law); *see also Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*,

350 F.3d 1327, 1344 (Fed. Cir. 2003) ("This court reviews the dismissal of a claim under Rule 12(b)(6), a matter of procedure, by applying the law of the regional circuit.") (citation omitted). "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (quoting *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997)). "In evaluating the sufficiency of the complaint," the court must "view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Id.* (citing *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010)).

To survive a Rule 12(b)(6) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). It is not enough to put "a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *AnchorBank*, 649 F.3d at 614 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original)). An asserted claim, however, "need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Indep. Trust Corp.*, 665 F.3d at 935 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

# ANALYSIS

## I.     Pleading Requirements for Inequitable Conduct Claims

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability. . . ."  37 C.F.R. § 1.56(a); *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007).  "A breach of this duty–including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information–coupled with an intent to deceive, constitutes inequitable conduct."  *Honeywell*, 488 F.3d at 999 (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)).  In order to plead a claim for inequitable conduct, Zurn must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO."  *Exergen*, 575 F.3d at 1327 n.3 (citations omitted).

Although inequitable conduct is a "broader concept than fraud," it is well established Federal Circuit law that a party must plead inequitable conduct with particularity under Rule 9(b).  *See id.* at 1326-27; *Ferguson Beauregard/Logic Controls*, 350 F.3d at 1344; *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356-57 (Fed. Cir. 2007).  Federal Circuit law applies to the issue of whether Zurn's allegations of inequitable conduct meet Rule 9(b)'s heightened pleading requirements.  *See Exergen*, 575 F.3d at 1318 ("Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a

question governed by Federal Circuit law.") (citing *Cent. Admixture*, 482 F.3d at 1356)).  Rule 9(b) requires that a plaintiff plead "the circumstances constituting fraud" with particularity, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *Exergen*, 575 F.3d at 1326-27 (citing *King Auto., Inc. v. Speedy Muffler King, Inc*., 667 F.2d 1008, 1010 (CCPA 1981)).

In *Exergen*, the Federal Circuit articulated the substantive pleading requirements for inequitable conduct claims.  Similar to fraud cases, in order to satisfy Rule 9(b)'s particularity requirements, the pleading must set forth the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  575 F.3d at 1327.  Although the party asserting the counterclaim may aver knowledge and intent generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328-29.  "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith."  *Id.* at 1329, n.5.

Almost two years after *Exergen*, the Federal Circuit decided *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc), in which it tightened the proof requirements with respect to the materiality and intent elements of an inequitable conduct claim.

*Id*. at 1285.[3] *Therasense* did not address inequitable conduct claims at the pleading stage, nor did it override *Exergen*'s pleading requirements. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (affirming that, post-*Therasense*, "[a] charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO") (citing *Exergen*, 575 F.3d at 1318, 1330; citing generally *Therasense*); *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 409, 432 (E.D. Va. 2011) ("*Exergen* still states the correct elements required for pleading inequitable conduct after *Therasense*."). *But see Hansen Mfg. Corp. v. Enduro Sys., Inc.*, No. 11-4030, 2011 WL 5526627, at *4 (D. S.D. Nov. 14, 2011) ("*Therasense* tightened the standards for pleading inequitable conduct. . . .").

*Therasense*, however, made clear that district courts may no longer assess allegations of materiality by the "reasonable examiner" or PTO Rule 56 standards. Instead, "in assessing the materiality of a withheld reference," the court must determine whether there are sufficient allegations from which a court may reasonably infer that "the PTO would not have allowed the claim if it had been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291-94 (rejecting the relatively broad "reasonable examiner" and PTO Rule 56 materiality standards and holding that inequitable conduct claims based on "nondisclosure of prior art references to the

---

[3] The Federal Circuit, in both *Therasense* and *Exergen*, expressed concern with the frequency with which parties assert inequitable conduct claims. Indeed, the court announced that it undertook review of the panel's decision in *Therasense* at least in part because it recognized "the problems created by the expansion and overuse of the inequitable conduct doctrine." *Therasense*, 649 F.3d at 1285.

PTO" or "failure to mention prior art references" must allege "but for" materiality); *Capital Mach. Co., Inc. v. Miller Veneers, Inc.*, No. 09-cv-702, 2012 WL 243563, at *3 (S.D. Ind. Jan. 25, 2012) (noting that after *Therasense*, "materiality requires that the patent would not have issued but for the misrepresentation"); *Recticel Automobilesysteme GMBH v. Auto. Components Holdings, LLC*, No. 10-cv-14097, 2011 WL 5307797, at *7 (E.D. Mich. Nov. 3, 2011) (applying *Therasense*'s "but for" materiality standard in ruling on motion to dismiss inequitable conduct counterclaims).[4]  *Therasense* also reaffirmed that district courts "may not infer intent solely from materiality."  649 F.3d at 1290 ("A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."); *see also Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011).[5]

---

[4]  The "but for" materiality requirement applies except in cases of affirmative egregious misconduct, in which case such misconduct is material in and of itself.  *Therasense*, 649 F.3d at 1292 ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material.") (citing cases).

[5]  The Court rejects Sloan's argument that Zurn must, at the pleading stage, make an initial showing from which the Court may plausibly infer that "the intent to deceive is the single most likely explanation for the non-disclosure."  As *Exergen* makes clear, "[i]n contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence.  Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be 'the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard.'"  575 F.3d at 1329 n.5 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365-66 (Fed. Cir. 2008)).  Nothing in *Therasense* alters this distinction.  At the pleading stage, Zurn must allege facts from which an inference of deceptive intent is "'reasonable,' meaning that it must be 'plausible and [] flow[] from the facts alleged.'"  *Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110, 2010 WL 2901793, at *2 (N.D. Ill. July 21, 2010) (citing *Exergen*, 575 F.3d at 1329 n.5).

## II.     Count III

### A.     Allegations

The Court accepts the following well-pleaded factual allegations as true for the purposes of Sloan's motion to dismiss Zurn's inequitable conduct counterclaim in Count III.  *See Anchorbank*, 649 F.3d at 614.  Count III derives from statements Sloan made to the PTO during reexamination of Patent No. 7,481,413 (the "'413 Patent"), which Sloan allegedly failed to disclose to the PTO examiner during the prosecution of the '635 Patent.  On May 11, 2009 and July 10, 2009, respectively, Sloan filed a Request for Reexamination of the '413 Patent and a Corrected Request for Reexamination of the '413 Patent (collectively, "Request for Reexamination of the '413 Patent").  (R. 202, Counterclaims ¶¶ 15-16.)  Zurn alleges that Sloan made statements concerning prior art in the Request for Reexamination of the '413 Patent that are inconsistent with and material to the specifications of the '729 Patent Application and the '635 Patent.

Specifically, Sloan, through its attorneys, stated in the specification for the '635 Patent that part of its invention included a plunger having an appreciably smaller diameter than the inside of the bushing.  (*Id.* ¶ 21.)  At least claim 1 of the '635 Patent covers a plunger having an appreciably smaller diameter than the inside diameter of the bushing passage.  (*Id.* ¶ 22.)  In the Request for Reexamination of the '413 Patent, however, Sloan, through its attorneys, argued that a plunger having a diameter that is appreciably smaller than the inside diameter of the bushing is inherently taught by prior art references, including U.S. Patent No. 1,912,937 (the "George Reference").  (*Id.* ¶ 23.)  In its Request for Reexamination of the '413 Patent, Sloan's attorneys stated the following with respect to the George Reference:

> The bore is inherently larger than the plunger so as to allow the plunger to passes [sic] there through. One of ordinary skill would understand the bore to be sized sufficiently larger than the plunger so as to avoid excessive frictional forces that would cause operation to be difficult and that would result in greater amount of operational wear. Effectively the bore is a large cylinder with the smaller diameter plunger disposed therein. Because of the inherent relative sizes, gravity will result in the plunger resting on the bottom of the bore. Thus, the central axis of the bore will inherently be nonaxisymmetric with the plunger having a smaller radius and disposed therein.

(*Id.* ¶ 24; *see also* ¶ 25.) Sloan did not disclose the Request for Reexamination of the '413 Patent to the PTO during its prosecution of the '635 Patent, and Sloan willfully failed to advise the PTO that prior art taught a plunger having an appreciably smaller diameter than the inside diameter of the bushing. (*Id.* ¶¶ 26-27.) Though Sloan knew that such a design would inherently allow the plunger to tilt and produce different flush volumes depending on which direction the handle was actuated, it did not disclose that information to the PTO. (*Id.* ¶ 27.)

The PTO examiner's reasons for allowance of the '635 Patent stated that the prior art references considered during prosecution "lack[ed] the plunger traveling along a first and second axis as well as a non-symmetrical bushing passage," yet prior art, including the George Reference, taught a "central axis of the bore [that] will inherently be nonaxisymmetric with the plunger having a smaller radius and disposed therein," which would necessarily allow the plunger to travel along a first and second axis. (*Id.* ¶¶ 30-31.) Therefore, had the examiner been aware of Sloan's statements in the Reexamination of the '413 Patent regarding the inherent properties of prior art, the examiner would have disallowed at least one of the '635 Patent's claims. (*Id.* ¶¶ 29, 32.)

During the PTO's reexamination of the '635 Patent, the examiner rejected claims 1, 5, 7, 8, 12, 14, 18, 19 and 31 as being anticipated by a separate Sloan patent (U.S. Patent No. 3,279,742 or the "'742 Patent"), which Sloan also did not cite during prosecution of the '635 Patent, on the grounds that it teaches "that the bushing passage is larger than the plunger which allows for slight tilting movement of the plunger." (*Id.* ¶ 33.) As a result, Sloan was forced to amend claims 1, 4-6, 12, 14, 18, and 19 in reexamination in an attempt to define over the '742 Patent. (*Id.* ¶ 34.)

Sloan seeks dismissal of Count III for failing to comply with Rule 9(b), arguing that Zurn does not 1) identify an individual who allegedly committed inequitable conduct; 2) sufficiently plead materiality; or 3) sufficiently plead intent to deceive the PTO.

**B.      Sloan has waived its Rule 12(b)(6) identity and intent arguments with respect to Count III**

Before the Court reaches the merits of Sloan's motion, it addresses Zurn's contention that Sloan has waived its Rule 12(b)(6) arguments with respect to Count III. (R. 219, Zurn Resp. at 1, 7.) Zurn asserted essentially the same claim in Count III of its original Answer, Affirmative Defenses and Counterclaims, which it filed on February 8, 2010 (the "Original Count III"). (R. 17.) Sloan previously moved to dismiss Count III under Rule 12(b)(6), arguing that Zurn failed to state a claim because it did not allege that the information Sloan allegedly withheld from the PTO was material. (R. 24.) Notably, Sloan did not argue that Count III failed to identify an individual who allegedly engaged in inequitable conduct, nor did it argue that Sloan failed to sufficiently plead intent to deceive the PTO. On May 4, 2010, the Court issued an Order denying Sloan's motion to dismiss Count III, concluding that Zurn had adequately alleged materiality. *See Sloan Valve*, 712 F. Supp. 2d at 753-54. Thereafter, Zurn filed an Amended

Answer, Counterclaims, and Affirmative Defenses and a Second Amended Answer, Counterclaims, and Affirmative Defenses. (R. 72, 85.) Sloan answered Zurn's Second Amended Counterclaims before the Court granted Zurn's motion to stay the case. (R. 104.) After the Court lifted the stay, Sloan filed its Complaint, and Zurn filed its Answer, Counterclaims, and Affirmative Defenses to the Complaint. (R. 201, 207.)

Under Rule 12(g)(2), "a party that makes a motion under [Rule 12] must not make another motion under this Rule raising a defense . . . that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). A related rule, Rule 12(h)(2), however, preserves a party's ability to make a failure to state a claim argument in three situations: in any pleading under Rule 7(a), in a Rule 12(c) motion, or at trial. *See* Fed. R. Civ. P. 12(h)(2). Sloan presented its argument in a Rule 12(b)(6) motion, which does not fall within any of the three exceptions to Rule 12(g) that are outlined in Rule 12(h)(2). *See id.* Therefore, unless Sloan's arguments were unavailable to it at the time it filed its Rule 12(b)(6) motion to dismiss Zurn's Original Count III, it has waived those arguments in the limited context of a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(g)(2); *see also 766347 Ontario, Ltd. v. Zurich Capital Mkts., Inc.*, 274 F. Supp. 2d 926, 930 (N.D. Ill. 2003) ("Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity."); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, No. 02 C 4356, 2008 WL 2178150, at *3 (N.D. Ill. May 22, 2008); *see also* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment.").

Count III of Zurn's most recent Counterclaims contains substantially the same allegations as the Original Count III. As Zurn points out, the most recent Count III adds additional allegations, which, if anything, render the claim more factually detailed and less objectionable under Rule 9(b). Sloan's identity and intent arguments were available to it at the time it filed its original motion to dismiss, yet Sloan admits that it raised only the issue of materiality in its previous motion to dismiss. (R. 243, Sloan Reply at 5.) Sloan, therefore, has waived such arguments for the purposes of a Rule 12(b)(6) motion.

Even if Sloan had not waived its identity and intent arguments, however, Zurn's claim, if amended consistent with the information Zurn obtained during discovery as identified in its response to Sloan's motion to dismiss, would satisfy Rule 9(b). *Cf. United States v. Midwest Generation, LLC*, 781 F. Supp. 2d 677, 693 (N.D. Ill. 2011) ("A plaintiff may oppose a motion to dismiss with additional facts asserted by affidavit or brief if those facts are consistent with the allegations in the complaint.") (citing *Hentosh v. Herman M. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999)*; Rene v. G.F. Fishers, Inc.*, --- F. Supp.2d ----, No. 11-cv-514, 2011 WL 4349473 (S.D. Ind. Sept. 16, 2011) ("The facts alleged in a plaintiff's briefs may be considered so long as the brief's allegations are consistent with the complaint."); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 542 n.1 (7th Cir. 2008) (additional facts may be presented on appeal of a district court's denial of a Rule 12(b)(6) motion as long as the additional facts are consistent with the complaint).

Although Sloan is correct that Zurn's pleading does not identify by name the specific individual alleged to have committed inequitable conduct in Count III, Sloan clarifies in its response brief that discovery revealed that at least two specific Sloan attorneys, Michael Rectin

and Matthew Martin, failed to disclose the withheld reference. Zurn further states in its response brief that the attorneys' names appear on the relevant prosecution/reexamination documents and that Sloan is well aware of who those individuals are, as demonstrated in its discovery responses. Specifically, Sloan's answers to Zurn's interrogatories state that Messrs. Rechtin and Martin "prosecuted the patent application which matured into the '635 Patent," and did not disclose statements and arguments made during the Reexamination of the '413 Patent during the prosecution of the '635 Patent. (Resp., Ex. A at 26.)

With respect to intent, Zurn alleges that Sloan's attorneys "both knew of the material information and deliberately withheld or misrepresented it" to the PTO.[6] *Exergen*, 575 F.3d at 1329. Specifically, Zurn alleges that those attorneys made certain statements in the Request for Reexamination of the '413 Patent that they knew were material to the prosecution of the '635 Patent, yet they "intentionally, knowingly, and willfully concealed [those statements] from the Examiner" in an attempt to avoid invalidating several pending claims of the patent application which matured into the '635 Patent.[7] (Counterclaims ¶¶ 21-28, 36-37.) Additionally, those attorneys' statements to the PTO during the reexamination of the '413 Patent regarding the inherent properties of prior art allegedly directly contradicted statements they made in support of the patentability of the '635 Patent.[8] (*Id.* ¶¶ 28, 35.) If Zurn amends its allegations to further

---

[6] Zurn should identify the attorneys by name in its amended Counterclaims.

[7] Zurn also alleges that Sloan filed the Request for Reexamination of the '413 Patent while the '729 Patent Application was pending. (Counterclaims ¶ 18.)

[8] Sloan argues that the statements are not inconsistent (*see* R. 211, Mem. of Law at 10), but that is a merits argument that is not appropriately decided in a Rule 12(b)(6) motion to dismiss. *See Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir. 2005) (Rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the merits of the case).

clarify, consistent with its response brief, the specific individual(s) who acted with the requisite intent, Zurn's intent allegations will satisfy Rule 9(b)'s heightened pleading requirement. Although "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient" to allege deceptive intent, *see Exergen*, 575 F.3d at 1331, Zurn's assertions, as amended, reach beyond the deceptive intent threshold because they "show that the individual who had previously cited the [withheld reference] knew of the specific information that is alleged to be material to the [patent-in-suit] and then decided to deliberately withhold it from the relevant examiner." *Id.*

Accordingly, the Court grants Zurn leave to amend its Counterclaims consistent with the additional facts and clarifications provided in its response brief by March 30, 2012.

### C.     Zurn has adequately pleaded "but for" materiality

Although Sloan moved to dismiss Zurn's Original Counterclaim III before the Federal Circuit's decision in *Therasense*, wherein the court rejected the relatively broad "reasonable examiner" materiality standard and held that inequitable conduct claims based on nondisclosure of prior art references to the PTO must generally meet the "but for" materiality standard, this Court's previous conclusion that Zurn's materiality allegations in Count III are sufficient remains unchanged even after *Therasense*.   649 F.3d at 1291-93.

Zurn has adequately alleged that the PTO would not have allowed at least one claim of the '635 Patent had it been aware of the undisclosed prior art.  *See id.*  Specifically, Zurn alleges that the affirmative statements Sloan's attorney made during reexamination of the '413 Patent regarding the relative size of the plunger and bushing passage as taught by the prior art reference were highly material and would have prevented at least claim 1 of the '635 Patent from being

allowed.  (Counterclaims ¶¶ 22, 32, 33, 36.)  Zurn's contention is supported by the factual allegations that the examiner's reasons for allowance of the '635 Patent stated that the prior art references considered during prosecution of the '635 Patent "lack[ed] the plunger traveling along a first and second axis as well as a non-symmetrical bushing passage," yet prior art, including the George Reference, taught a "central axis of the bore [that] will inherently be nonaxisymmetric with the plunger having a smaller radius and disposed therein," which would necessarily allow the plunger to travel along a first and second axis.  (*Id.* ¶¶ 30-31.)  These facts are sufficient to allege but for materiality.

Additionally, Zurn clarifies in its response brief that disclosure of the prior art reference would have caused the PTO examiner to reject, at a minimum, claims 1, 5, 7, 8, 12, 13, 18, 19 and 31 of the '635 Patent because it would have disclosed that the George Reference "taught that the bushing passage is larger than the plunger which allows for slight tilting movement (i.e., a plunger traveling along a first and second axis)."  (Resp. at 17 (citing Counterclaims ¶ 33)).  Indeed, as Zurn points out, during reexamination of the '635 Patent, the examiner actually rejected those claims for anticipation under 35 U.S.C. § 102(b) over a prior art reference that taught the same feature that Sloan represented was inherently taught by the George Reference.  (*Id.* at 12 (citing Counterclaim ¶ 33).)  Zurn should have included those clarifications in its Counterclaims, and therefore the Court grants it leave to add those additional allegations.[9]

## III.    Count IV

Zurn asserts an additional counterclaim for inequitable conduct in Count IV and alleges

---

[9]  Because Zurn has adequately alleged but for materiality, the Court need not address Zurn's alternative argument that Sloan's conduct constituted affirmatively egregious misconduct.

the following facts in support of that claim.  On or about July 12, 2004, John Wilson, a Sloan engineer and the first named inventor of the '635 Patent, conducted flush volume tests on standard and modified flush valve handles and recorded the results ("Wilson's Test Results") in an Inventor's New Concept Disclosure ("Inventor's Disclosure").  (Counterclaims ¶ 41.)  Peter Jahrling, Director of Design Engineering at Sloan, supervised Wilson's work, signed the Inventor's Disclosure, and was involved in the prosecution of the '635 Patent.  (*Id.* ¶¶ 50-51.) Wilson's Test Results established, among other things, that standard prior art flush valve handles, including the flush valve handle upon which Sloan's dual flush product was based, dispense different volumes of water depending on which direction the handle is actuated.  (*Id.* ¶ 43.)  Zurn further alleges that Wilson has admitted that standard prior art flush valves necessarily allowed sufficient tilting of the plunger rod within the bushing passage to arrive at a flush volume differential of 10% depending on the direction of handle actuation.  (*Id.* ¶¶ 47-48.) Despite this alleged fact, Sloan's attorneys, throughout the prosecution and reexamination of the '635 Patent, characterized several prior art flush valves, including the flush valve identified, tested, and documented in the Inventor's Disclosure, as "single mode" or "single volume."  (*Id.* ¶ 45.)

Zurn alleges that one or more claims of the '635 Patent, including but not limited to claim 23, would be anticipated by the standard prior art flush valve upon which Sloan's dual flush product was based.  (*Id.* ¶ 49.)  Mr. Jahrling, who was involved in the prosecution of the '635 Patent, testified at a deposition in this case that the standard prior art flush valve identified, tested, and documented in the Inventor's Disclosure fell within the scope of claim 23 of the '635 Patent.  (*Id.* ¶ 51.)  Sloan's attorneys had the Inventor's Disclosure in their possession at the time

they began the prosecution of the '729 Patent Application, and at least one of Sloan's attorneys who prosecuted the '729 Patent Application had read the Inventor's Disclosure one month before the '635 Patent was issued and understood that the data therein reflected a variance in flush volumes due to tilting of the plunger rod within the bushing passage. (*Id.* ¶¶ 52-54.) At least one of Sloan's attorneys who prosecuted the '729 Patent Application also testified that the standard prior art flush valve identified, tested, and documented in the Inventor's Disclosure fell within the scope of claim 23 of the Wilson Patent. (*Id.* ¶ 55.) Neither Wilson nor Jahrling, nor any of Sloan's attorneys, disclosed Wilson's Test Results or the Inventor's Disclosure to the examiner during prosecution of the '635 Patent. (*Id.* ¶ 56.)

Sloan's attorneys, despite filing at least five Information Disclosure Statements during prosecution of the '635 Patent, deliberately decided to withhold Wilson's test results, allegedly because they wanted to initiate this lawsuit against Zurn as soon as possible. (*Id.* ¶¶ 59-60, 62.) According to Zurn's allegations, Sloan initiated this lawsuit knowing that one or more claims of the '635 Patent, including claim 23, were anticipated by the standard prior art flush valve handle upon which Sloan's dual flush product was based and would not have been allowable over the withheld Inventor's Disclosure. (*Id.* ¶¶ 63-64.) Sloan stipulated at the outset of the litigation that it would not seek to assert several claims of the '635 Patent, including claims 18 and 23, against any current or past Zurn product, which Zurn contends is an admission by Sloan that at least claim 23 would have been anticipated by the withheld prior art. (*Id.* ¶¶ 64-66.)

Sloan argues that Zurn fails to state a claim in Count IV because Zurn 1) fails to identify an individual who allegedly committed inequitable conduct as required by Rule 9(b); 2) fails to plead materiality with particularity as required by Rule 9(b); and 3) fails to adequately plead

intent to deceive.

## A. Identity

In *Exergen,* the Federal Circuit held that a pleading must identify "the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it" to survive a Rule 9(b) challenge. 575 F.3d at 1329. Sloan argues, correctly, that the allegations relating to Count IV fail to identify any specific individual whom Zurn accuses of inequitable conduct and instead refers only to "Sloan attorneys," "at least one of SLOAN's attorneys," "any SLOAN attorneys," and "SLOAN through its attorneys," and "SLOAN."

In its response, however, Zurn clarifies that Sloan's attorney, Matthew Martin, whom Sloan admits was involved with the prosecution of the '635 Patent, testified in this case that "(i) he had reviewed [the] Inventor's Disclosure document approximately one month prior to the issuance of the patent in suit; (ii) claim 23 was anticipated by the standard prior art flush valve analyzed in the Inventor's Disclosure document, and (iii) this document had not been submitted to the Examiner." (Resp. at 13 (citing Counterclaim ¶¶ 53-56).) If Zurn supplements its allegations with those additional facts, which it learned through discovery, it will have identified at least one specific individual whom it alleges knew about the information in the Inventor's Disclosure, understood that it was material to the '635 Patent application in that it fell within the scope of claim 23 of that patent, was involved in the prosecution of the '635 Patent, and failed to bring the Inventor's Disclosure to the attention of the examiner. Such allegations would comply with Rule 9(b). *See Exergen*, 575 F.3d at 1329; *see also VG Innovations, Inc. v. Minsurg Corp*., No. 10-cv-1726, 2011 WL 1466181, at *3 (M.D. Fla. Apr. 18, 2011) (holding that although the

complaint referred often to the defendants generally, it also identified one specific person by name who allegedly failed to disclose information to the PTO, which is sufficient under *Exergen*).[10]

### B.     Materiality

Sloan argues that Zurn's allegations regarding materiality are insufficient because they do not 1) identify the claims or claim limitations that would not have been allowed if Sloan had disclosed the Wilson Test Results to the examiner; or 2) allege facts to support an inference that such claims would not have been allowed if Sloan had disclosed the Wilson Test Results to the examiner.  (Mem. of Law at 12-13.)  Sloan further contends that Zurn fails to plead any facts in support of its "conclusory allegation" of but for materiality.  The Court agrees that Zurn's current Counterclaim does not comply with Rule 9(b)'s pleading requirement, but finds that if Zurn amends its allegations with the additional facts and clarification set forth in its response brief, Zurn's materiality allegations will be sufficient under Rule 9(b).

To satisfy Rule 9(b)'s pleading standards, Zurn must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found–i.e., the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1329.  Zurn alleges that the standard prior art flush valve analyzed in the Inventor's Disclosure document anticipated claim 23 of the '635 Patent[11] and that "but for the

---

[10]  Zurn also alleges that the inventor of the patent-in-suit, Wilson, and his supervisor, Peter Jahrling, knew of the material information, yet did not disclose it to the PTO. (Counterclaims ¶¶ 48, 50-51, 56.)

[11]  Claim 23 provides as follows:
A system for a flush valve which can provide at least two flush volumes of water during operation, comprising:

failure of SLOAN's attorneys to disclose Wilson's test results, one or more claims, (e.g., claim 23) of the ['635 Patent] would not have been allowed."  (Counterclaims ¶ 49 ("One or more claims of the *Wilson* Patent, including without limitation claim 23, would be anticipated by the standard prior art flush valve upon which SLOAN's dual flush product was based."); ¶ 51 (alleging that Mr. Jahrling, one of Sloan's employees, testified that the prior art identified in the Inventor's Disclosure fell within the scope of claim 23); ¶¶ 58, 63-66).[12]  Such allegations sufficiently allege at least one claim to which the withheld reference is relevant and why such claim would not have been allowed if Sloan had disclosed the Wilson Test Results to the examiner.  They do not, however, sufficiently identify the specific claim limitations to which the withheld reference is relevant.

---

a user handle operable in at least a first and second direction to cause a face plate to pivot about at least a respective first face plate direction and a second face plate direction;
a plunger mechanism having a plunger coupled to the user handle; and
a bushing receiving the plunger into a bushing passage and the plunger positioned in the bushing passage such that movement of the user handle in the first direction causes the face plate to pivot about the first face plate direction engaging the plunger to move a first distance associated with a first flush volume of water and movement of the user handle in the second direction causes the face plate to pivot about the second face plate direction engaging the plunger to move a second distance associated with a second flush volume of water.
(R. 211-1, U.S. Patent No. 7,607,635).

[12]  Sloan takes issue with Zurn's allegations that the omission may implicate additional unspecified claims, arguing that such allegations render Count IV insufficient.  (Mem. of Law at 12 (arguing that Zurn "hedges its bets" by identifying claim 23 and other unidentified claims)).  Sloan, however, provides no authority in support of its position.  Moreover, Zurn explains, convincingly, that its use of inclusive language is necessary in light of the fact that the Court has not yet construed the claims in this case.  (Resp. at 15 (Zurn's use of inclusive language is "a recognition that the Court's construction of terms that have been disputed by the parties from the outset (i.e., 'dual mode,' 'dual flush,' and 'dual volume') may render one or more additional claims anticipated.")).

Zurn clarifies in its response brief that "claims merely reciting multiple flush volumes, including without limitation claim 23, are anticipated by the mischaracterized "single mode" prior art flush valve analyzed in the Inventor's Disclosure document which exhibited a flush volume differential of up to 10%." (Resp. at 15; *see also* Counterclaims ¶ 58.) If Zurn supplements its Complaint consistent with those additional facts regarding the claims and the claim limitations to which the prior art flush valve is relevant, Zurn will have adequately alleged materiality. *See Exergen*, 575 F.3d at 1329-30.

## C.      Intent

In order to adequately allege intent, the pleader must name the individual(s) associated with the filing or prosecution of the application "who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329. As explained above, if Zurn amends its Counterclaims consistent with the facts it learned through discovery as identified in its response brief, Zurn will have adequately identified an individual who both knew of the material information and withheld or misrepresented it. The remaining question, then, is whether Zurn has adequately alleged that the individual intended to deceive the PTO in withholding or misrepresenting the information.

Zurn alleges that "at least one of Sloan's attorneys" was aware of the Inventor's Disclosure, including Wilson's Test Results, during the prosecution of the '635 Patent, knew that it was material, and despite filing at least five Information Disclosure Statements during prosecution of the '635 Patent, deliberately decided to withhold the Inventor's Disclosure in order to initiate this lawsuit against Zurn as soon as possible. (Counterclaims ¶¶ 53-62.) Although it appears from Zurn's response brief that it means to refer to Sloan's attorney,

Matthew Martin, as the attorney in question (Resp. at 13), that is not clear on the face of Zurn's pleading. Zurn further alleges that Sloan stipulated at the outset of the litigation that it would not seek to assert several claims of the '635 Patent, including claims 18 and 23, against any current or past Zurn product, which Zurn contends is an admission by Sloan that it was aware that at least claim 23 would have been anticipated by the withheld standard prior art flush valve (Counterclaims ¶¶ 63-66.)

If Zurn amends its allegations consistent with the facts it learned during discovery regarding the identity of the Sloan attorney(s), then its allegations will be sufficient to support a reasonable inference of intent to deceive the PTO. *AnchorBank*, 649 F.3d at 614 (on a Rule 12(b)(6) motion to dismiss, the Court must well-pleaded facts as true and make all possible inferences in the pleader's favor). Contrary to Sloan's argument, at the pleading stage the inference of deceptive intent need not be the "single most reasonable" inference–rather, it must only be "'reasonable,' meaning that it must be 'plausible and [] flow[] from the facts alleged.'" *Itex*, 2010 WL 2901793, at *2 (citing *Exergen*, 575 F.3d at 1329 n.5). Moreover, the inference "need not be probable, only plausible." *Indep. Trust Corp.*, 665 F.3d at 935.

### III. The Court Grants Zurn Leave to Amend Pursuant to Rule 15(a)(2)

Under Rule 15(a)(2), courts are to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As explained above, amendment in this case would not be futile, and Sloan identifies no persuasive reason to deny leave to amend. Therefore, the Court grants Zurn's request for leave to amend.

**CONCLUSION**

For the reasons set forth above, the Court denies Sloan's motion to dismiss Count III, but grants Sloan's motion to dismiss Count IV. Sloan's request for attorney's fees and costs is denied. Zurn is granted leave to amend its Counterclaims consistent with this Memorandum Opinion and Order by April 9, 2012. Sloan shall answer Zurn's Amended Counterclaims by April 20, 2012.

DATED: April 1, 2012                                                    ENTERED

AMY J. ST. EVE
United States District Court Judge