# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 10 C 204 | DATE | 4/12/2012 |
| CASE TITLE | Sloan vs. Zurn | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part Sloan's motion to strike Zurn's "late-asserted" invalidity defense and to compel discovery and award sanctions [234]. The Court orders Zurn to produce, by 5/4/12, 1) all worn valves it fabricated using the Zurn Machine; 2) all non-privileged documents relating to those valves, including, but not limited to, documents describing the procedure used and parameters employed in making them; and 3) a detailed privilege log. Zurn must also produce a Rule 30(b)(6) witness for a deposition consistent with the terms of this order, and it must bear the costs of the deposition as well as the fees for one of Sloan's attorney's time spent at the deposition. The Court denies Sloan's motion to strike Zurn's invalidity defense, but orders Zurn to produce all relevant, non-privileged documents related to that defense and a privilege log by 5/4/12, and to produce a witness, if requested, to testify about that defense in a deposition. Zurn must also pay Sloan's reasonable attorney's fees and costs associated with such additional discovery. Finally, the Court orders Zurn to pay Sloan's reasonable attorney's fees and costs incurred during the preparation of its motion to compel and reply in support thereof. Sloan should submit a fee petition no later than 21 days after the close of fact discovery in this case. Zurn shall have 7 days thereafter in which to respond. The parties shall submit a joint proposed amended scheduling order to the Court by 4/20/12.

■[ For further details see text below.]     Notices mailed by Judicial staff.

### STATEMENT

    Before the Court is Plaintiff Sloan Valve Company's ("Sloan") motion to strike Defendants Zurn Industries, LLC's and Zurn Industries, Inc.'s ("Zurn") "late-asserted" invalidity defense and to compel discovery and award sanctions for failure to provide discovery. For the following reasons, the Court grants Sloan's motion in part and denies it in part. The Court further grants in part and denies in part Sloan's request for attorney's fees and costs.

### FACTUAL BACKGROUND

    Sloan filed this lawsuit on January 13, 2010, alleging that Zurn had appropriated its "dual mode flush valve invention," therefore infringing U.S. Patent No. 7,607,635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent") and the corresponding U.S. Patent Application Publication No. 2006/0151729 (the "'729 Patent Application"). (R. 1.) On February 8, 2010, Zurn filed its Answer, Counterclaims, and Affirmative Defenses, asserting invalidity and non-infringement of the '635 Patent, as well as inequitable conduct during Sloan's prosecution of the '635 Patent. (R. 17.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On April 26, 2010, Zurn served its supplemental Initial Invalidity, Unenforceability and Non-Infringement Contentions ("Initial Invalidity Contentions") on Sloan, in which it stated the following:

> Claims 1, 5, 7, 8, 12, 14, 18, 19, 28, 29, 30, 31, 33 and 34 of [the '635 Patent] are invalid under 35 U.S.C. § 102(a) or (b) as anticipated by a worn flush valve. Zurn has performed life tests on a handle assembly and reported the findings in ZP000029 to ZP000037. The life cycle test simulates wear that occurs during normal operation of the handle assembly when attached to a flush valve. Thus, in the description [in the attached chart], the "worn flush valve" refers to a Zurn flush valve having a brass bushing handle assembly. Specifically, the handle is a handle used in Zurn's flush valve Z6000AV-2-WS1-H (ZP000068-72), which was offered for sale at least as early as April 28, 2003.

(R. 64-1 at 2.) Sloan filed a motion to compel Zurn to supplement its Initial Invalidity Contentions with, among other things, additional information regarding Zurn's fabrication and testing of the fabricated valve (the "Worn Zurn Flush Valve"). (R. 63.) The Court granted Sloan's motion. (R. 71.)

Zurn served supplemental contentions on May 14, 2010, which included some additional information regarding the dimensions of the Worn Zurn Flush Valve, but did not specify when Zurn created the valve or provide information regarding testing of the fabricated valve. Sloan then served an interrogatory on Zurn, asking it to describe specific information regarding the alteration of the valve handle and the testing thereof. (R. 238-9 at 1, Interrog. 11.) Zurn responded that the fabrication of the handle was completed on or about March 6, 2009, but it did not state when the procedure began or give all of the details of the procedure. (*Id.* at 2.) Zurn stated, among other things, that "[a]pproximately 300,000 flushes were applied to the flush valve handle using Zurn's handle life test machine" and that the "life cycle test is monitored throughout the life of the test." (*Id.*)

Sloan then filed a second motion to compel Zurn to fully answer the interrogatory and to produce documents that Sloan had requested regarding the worn valves. (R. 86.) On August 13, 2010, the parties appeared before the magistrate judge to address certain discovery disputes. (R. 109, Transcript of Aug. 13, 2010 Hrg.) The magistrate judge entered an agreed order, pursuant to which Zurn's counsel was to provide a letter identifying certain supplemental information and certifying that it was not withholding responsive documents. (R. 108.)

On August 24, 2010, Sloan inspected the life cycle machine that Zurn used to fabricate the Worn Zurn Flush Valve (the "Zurn Machine") and discovered from Zurn's counsel that Zurn had created 20-25 "worn valves" with the Zurn Machine, which it never produced. On August 27, 2010, Zurn's counsel sent a letter to Sloan's counsel, essentially stating that its document production was complete.[1] (R. 111-3.)

On September 20, 2010, Sloan filed a third motion to compel based on the information it learned during its inspection of the Zurn Machine. (R. 110.) The parties again appeared before the magistrate judge on October 5, 2010 to discuss Sloan's motion. (R. 140, Transcript of Oct. 5, 2010 Hrg.) The magistrate judge ordered Zurn to supplement the contents of its certification regarding its document production and to produce a Rule 30(b)(6) witness to testify regarding discovery matters. (R. 135.)

---

[1] Notably, Zurn stated that its August 4, 2010 privilege log lists 58 documents, which "represent the entirety of Zurn's documents that have been withheld from production. After the above search, Zurn can confirm that it has not withheld any non-privileged documents that are responsive to Sloan's document requests." (R. 111-3 at 3.)

Zurn's subsequent certification letter revealed that it did not search any custodian's records for the term "life cycle" and it only searched one custodian's records for the term "worn." Notably, Zurn did not search Michael Funari's records for the term "worn," even though he was the employee principally responsible for the life cycle testing of the Worn Zurn Flush Valve. (R. 238-13, Zurn October 19, 2010 Submission at 4-8.)

Zurn served its Final Invalidity and Unenforceability Contentions on October 22, 2010 (the "Prior Invalidity Contentions"), wherein Zurn stated the following:

> Claims 1, 5, 7, 8, 12, 14, 19, 29, 30, 31, 32 and 34 of the '635 Patent are invalid under 35 U.S.C. § 102(a) or (b) as anticipated by a worn Zurn flush valve. A chart identifying where each element recited in the claims appears in the reference is attached hereto as **Exhibit B**. A "worn Zurn flush valve" refers to a Z6000 series flush valve that was sold by Zurn, installed and used. The worn Zurn flush valves include . . . Z6000-YB flush valves. . . . A worn Zurn Z6000-YB flush valve uses a P6000-M handle assembly having a plastic retainer.
>
> Claims 4, 6, 10 and 11 of the '625 Patent are invalid under 35 U.S.C. § 103 as obvious over worn Zurn flush valves in view of United States Patent No. 7,481,413 to Funari et al. ("Funari"). A chart identifying where each element recited in the claims appears in the reference is attached hereto as **Exhibit B**.
>
> \*\*\*
>
> Zurn began offering to sell Zurn Z6000 flush valves using P6000-M . . . handle assemblies at least as early as December of 1989. On or about December 5, 1989, Zurn offered to sell and or sold several Z6000-YB flush valves to J.J. Barnes, Inc. for use in the Community Resource Center in Sanford, North Carolina (see Appendix 2). The flush valves that were sold used P6000-M handle assemblies.
>
> In addition to the documents and depositions already of record, further documents supporting Zurn's final invalidity contentions are attached hereto as Appendices 1-4.

(R. 238-1) Appendix 2 included a copy of a submittal sheet for the Zurn valves sold to J.J. Barnes, Inc. for use in the Community Resource Center in Sanford, North Carolina ("Community Center"). (R. 251-2.) In Exhibit B to the Prior Invalidity Contentions, Zurn provided details (in the form of a chart) of how a Worn Zurn Flush Valve anticipates or renders the claims in the '635 Patent invalid. (R. 238-2.) The Worn Zurn Flush Valve described in Exhibit B was described as a worn valve that was created through Zurn's "life cycle" simulation using Zurn's Machine. (*Id*. at 5.)

After Zurn served its Prior Invalidity Contentions, it conducted tests, using the Zurn Machine, on handle assemblies that were in use at Community Center. (R. 251, Resp. at 3.) The tests included "characterizing the bushing passage on November 18, 2010" and "characterizing the plunger travel path in a worn Zurn flush valve on June 22, 2011" (collectively, the "Community Center Valve Tests"). (*Id.*)

On December 6, 2010, Sloan served a notice of deposition pursuant to Rule 30(b)(6), requesting testimony regarding the life cycle testing that Zurn employed to modify a new Zurn handle into Zurn's fabricated worn valve handle. (R. 251-15.) At the deposition, Zurn's 30(b)(6) witness, Mr. Michael Funari, testified that he did not review the relevant testing report "because it was prepared for and given to Zurn's attorneys in connection with what resulted in this lawsuit." (R. 251, Resp. at 6-7.)

On December 8, 2010, Zurn moved to stay this case because the U.S. Patent and Trademark Office's ("PTO") had granted its request for ex parte reexamination of the '635 Patent. (R. 149.) The Court granted Zurn's motion on December 16, 2010. (R. 157.) On September 27, 2011, the PTO issued an Ex Parte Reexamination Certificate for the '635 Patent, which provides that certain of Sloan's claims in the '635 Patent were amended and others were added. (R. 184-1.) On October 7, 2011, Sloan filed a motion to re-open the case and lift the stay, which the Court granted on November 10, 2011. (R. 183, 192.) The Court also granted the parties' proposed joint scheduling order. (R. 196.)

In accordance with the scheduling order, Sloan filed its Amended and Supplemental Complaint on November 29, 2011, asserting willful and direct infringement of claims 1, 4-6, 10-12, 14, 19, 29-31, and 33-34 of the '635 Patent, infringement of the '729 Patent Application, induced infringement of the '635 Patent, and contributory infringement of the '635 Patent. (R. 197.) On December 9, 2011, Zurn filed its Answer, Counterclaims, and Affirmative Defenses to Sloan's Complaint. (R. 202.)

Zurn served its Updated Final Invalidity and Unenforceability Contentions on January 16, 2012 (the "Updated Invalidity Contentions"). (R. 238-3.) Zurn's Updated Invalidity Contentions stated the following:

> Claims 1, 5, 7, 8, 12, 14, 19, 29, 30, 31, 33 and 34 of the '635 Patent are invalid under 35 U.S.C. § 102(a) or (b) as anticipated by a worn Zurn flush valve. A chart identifying where each element recited in the claims appears in the reference is attached hereto as **Exhibit B**. A "worn Zurn flush valve" refers to a Z6000 series flush valve that was sold by Zurn, installed, publicly used and wore before the critical date of the '635 Patent. The worn Zurn flush valves include . . . Z6000-YB flush valves. . . . A worn Zurn Z6000-YB flush valve used a P6000-M handle assembly having a plastic retainer.
>
> Claims 4, 6, 10 and 11 of the '625 Patent are invalid under 35 U.S.C. § 103 as obvious over worn Zurn flush valves in view of United States Patent No. 7,481,413 to Funari et al. ("Funari"). A chart identifying where each element recited in the claims appears in the reference is attached hereto as **Exhibit C**.
>
> \*\*\*
>
> Zurn began offering to sell Zurn Z6000 flush valves using P6000-M . . . handle assemblies at least as early as December of 1989. On or about December 5, 1989, Zurn offered to sell and or sold several Z6000-YB flush valves to J.J. Barnes, Inc. for use in the Community Resource Center in Sanford, North Carolina (see Appendix 2). The flush valves that were sold used P6000-M handle assemblies.
>
> In addition to the documents and depositions already of record, further documents supporting Zurn's final invalidity contentions based on worn Zurn flush valves are attached hereto as Appendices 1, 2, 4, and 7-9 pursuant to LPR 2.2.

(*Id.*) On January 16, 2012, Zurn produced to Sloan, for the first time, the Community Center Valve Tests. (R. 251, Resp. at 3-4.)

## LEGAL STANDARD

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("the scope of discovery should be broad in order to aid in the search for truth"). Under Federal Rule of Civil Procedure ("Rule") 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see Bond*, 585 F.3d at 1075. "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450. In the context of motions to compel, a district court has broad discretion to "grant or deny the motion in whole or in part," or "similar to ruling on a request for a protective order under Rule 26(c), . . . fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996); *see also Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008).

## ANALYSIS

**I.       Worn Zurn Flush Valve**

Sloan seeks an order 1) requiring Zurn to produce all "worn valves" it fabricated using the Zurn Machine; (2) requiring Zurn to produce all documents relating to "worn valves," including documents describing the procedure used and parameters employed in making any "worn valves" and "the report" and any other document currently being withheld by Zurn's counsel that relates to Zurn's worn valves; (3) requiring Zurn to properly prepare and produce a witness for a 30(b)(6) deposition regarding the Worn Zurn Flush Valve; and (4) awarding attorney's fees and costs associated with preparing motions to compel and retaking the 30(b)(6) deposition regarding the Worn Zurn Flush Valve. (R. 234, Mot. at 1.) Zurn concedes that it has not produced the requested discovery. It contends that the information sought by Sloan is protected from disclosure by the work product doctrine.[2] Specifically, Zurn argues that it created the worn valves in order to provide its attorneys with "information that would be relied upon in a legal opinion." (R. 251, Resp. at 11.)

Work product protection applies to materials prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). "To establish work product protection, a party must show the primary motivating purpose behind the creation of a document was to aid in possible future litigation . . . ." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008). "[W]hether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Id.* It is well established that the work product doctrine protects attorney impressions, but it does not protect non-privileged facts. *See Hickman v. Taylor*, 329 U.S. 495, 511, 513, 67 S. Ct. 385, 91 L. Ed. 451 (1947); *see also Camilotes v. Resurrection Health Care Corp.*, No. 10-cv-366, 2012 WL 245202, at *8 (citing *Hickman*). Accordingly, although the work product doctrine would protect from disclosure an attorney's mental impressions regarding the fabrication and testing of the Worn

---

[2] Zurn does not argue in its response brief that the requested materials are protected from disclosure by the attorney-client privilege, so the Court focuses its discussion on the work product doctrine.

Zurn Flush Valves, the work product doctrine covers neither the factual data regarding the fabrication and testing of the vavles nor the valves themselves. *See Hickman*, 329 U.S. at 511, 513.[3]

Moreover, even assuming for the sake of argument that the work product doctrine at some point protected the requested factual information and objects from disclosure, that protection no longer applies given that Zurn has placed the Worn Zurn Flush Valve defense at issue by contending that a Worn Zurn Flush Valve anticipates the '635 Patent. *See Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215-217 (N.D. Ill. 2001) (under the "at issue" waiver doctrine, party waives work product and/or privilege protection when a party chooses to utilize protected information to advance a claim or defense). As a basis for its invalidity contentions, Zurn subjected a new Zurn valve to life cycle testing, which it argues simulated the wear and tear that resulted in a Worn Zurn Flush Valve, anticipating Sloan's patented product. As such, Zurn has put the fabricated Worn Zurn Flush Valve, as well as documents related to the creation and testing of that valve, at issue as an integral part of its invalidity contention. Additionally, as Sloan points out, Zurn has disclosed limited information about the parameters of the Worn Zurn Flush Valve fabrication process and the Zurn Machine, while concealing the full details. (R. 262, Reply at 8, citing R. 238-9 at Interrog. 11 and R. 238-15, Funari Dep. at 76:2-19). *See Beneficial Franchise*, 205 F.R.D. at 216 ("at issue" waiver doctrine is based on "the principle that a party should not be able to selectively disclose privileged information that it believes works to that party's advantage, while concealing the rest") (citation omitted). Zurn has accordingly waived any work product protection that could have existed with respect to the factual information regarding the creation and testing of the Worn Zurn Flush Valves, as well as the valves themselves.

Despite several motions to compel and court intervention, Zurn has nevertheless refused to produce the requested materials and instructed its 30(b)(6) witness not to answer questions regarding the fabrication of the Worn Zurn Flush Valve.[4] Zurn also did not object to the topics identified in Sloan's 30(b)(6) notice, so Zurn's attorneys were not aware in advance of the deposition that Zurn's witness would not testify regarding the designated topics. Because the information Sloan seeks is relevant and not protected from disclosure by the work product doctrine, the Court grants Sloan's motion to compel and orders Zurn to produce, by May 4, 2012, 1) all "worn valves" it fabricated using the Zurn Machine; 2) all non-privileged documents relating to "worn valves," including, but not limited to, documents describing the procedure used and parameters employed in making any "worn valves"; and 3) a detailed privilege log. Additionally, Zurn is ordered to provide a Rule 30(b)(6) witness for a four-hour deposition to testify about Zurn's creation and testing of the Worn Zurn Flush Valves after Zurn has produced the relevant information.

Due to Zurn's continued refusal to produce relevant documents despite court intervention and a clear obligation to do so, the Court grants in part and denies in part Sloan's request for attorney's fees. Specifically, the Court orders Zurn to pay the costs of the renewed Rule 30(b)(6) deposition and the reasonable attorney's fees for one of Sloan's attorneys to attend the deposition. The Court further orders Zurn to pay the reasonable

---

[3] Indeed, Zurn does not identify where it listed the documents at issue on its privilege log, and the privilege log that Sloan submitted to the Court does not contain any entries indicating that any documents or other materials are protected by the work product doctrine. (R. 262-3, Zurn Privilege Log dated Aug. 4, 2010.)

[4] During a hearing before the magistrate judge on October 5, 2010, Zurn's counsel raised the issue of whether the work product doctrine or the attorney-client privilege might protect certain documents related to Zurn's invalidity contentions. After advising Zurn's counsel that he would not give an advisory opinion, he admonished him that, in general, "factual information is not subject to any privilege." (R. 238-12 at 28, 31-33.)

attorney's fees associated with Sloan's preparation of the present motion to compel (R. 234) and reply in support of same (R. 262.) If Zurn fails to comply with the Court's order, Sloan may renew its request for attorney's fees for its prior motions to compel. In addition, if Zurn fails to comply with this Order, the Court will strike its Worn Zurn Valve Defense.

## II.     Community Center Worn Valve

The parties dispute whether the "Community Center Worn Valve" invalidity contention is an entirely new invalidity defense or whether it is part and parcel of Zurn's previous Worn Zurn Flush Valve invalidity defense. Sloan argues that Zurn's Prior Invalidity Contentions asserted an invalidity defense based on the assertion that the Worn Zurn Flush Valve (i.e., the fabricated valve) anticipates the '635 Patent. Sloan further argues that in the Updated Invalidity Contentions, Zurn dropped its Worn Zurn Flush Valve invalidity contention and asserted a new prior art invalidity contention based on an actual valve that underwent public use at the Community Center and was "worn" before the critical date of the '635 Patent. Sloan contends that Zurn concealed the naturally-worn valve during discovery. (R. 238, Mem. of Law at 1.) According to Sloan, Zurn's new invalidity contention is that a flush valve evolved during years of use at the Community Center (and not through fabrication by Zurn) from a single flush valve into a dual flush valve (the "Community Center Worn Valve"), and that such worn flush valve anticipates Sloan's patented dual flush valve. (*Id.*)

Additionally, Sloan contends that Zurn had already retrieved and tested the Community Center Worn Valve when it served its Prior Final Invalidity Contentions in October 2010, but Zurn nevertheless did not disclose the Community Center Worn Valve invalidity defense at that time. Sloan concedes, as it must, that in October 2010, Zurn disclosed the existence of the Community Center Worn Valve as evidence that Zurn's "unused" and "used" valves had been in public use since before the filing of the '729 Application. (*Id.*) What Zurn did not disclose, according to Sloan, is its position that the Community Center Worn Valve had evolved from a single flush into a dual flush valve and that it was prior art. Zurn also allegedly concealed and failed to produce documents that are relevant to testing of the Community Center Worn Valve in violation of its obligations under the Local Patent Rules and Rule 26(e). (*Id.*) As a sanction for concealing the Community Center Worn Valve invalidity contention and related discovery until serving its Updated Invalidity Contentions in January 2012, Sloan asks the Court to strike the defense. (*Id.* at 2.)

Zurn responds that Sloan has been on notice since October 2010 of Zurn's contention that the asserted claims in the '635 Patent are invalid in view of worn flush valves. (R. 251, Resp. at 2.) It submits that the Worn Zurn Flush Valve invalidity contention and the Community Center Worn Valve invalidity contention are one and the same because they are based on the same premise—namely, that Sloan has patented a worn handle assembly from a flush valve. (*Id.* at 9.) Zurn concedes that its Community Center Worn Valve invalidity contention relies upon data that differs from the data related to the Worn Zurn Flush Valve invalidity contention, but it claims that it did not have the data related to the Community Center Worn Valve until after it served the Prior Invalidity Contentions in October 2010. (*Id.*)

The Court agrees that Zurn failed to properly disclose its Community Center Worn Valve invalidity contention. Although the Court agrees that Zurn's two invalidity contentions are not the same, as is discussed further below, they are based on the same theory such that Zurn should be allowed to assert the newly-articulated defense. It is a close call, however, and it is apparent from the facts in the record that Zurn unexplainably failed to produce the underlying documentation regarding the Community Center Worn Valve to Sloan despite certifying numerous times that its document production was complete. Accordingly, the Court orders Zurn to pay Sloan's reasonable costs and attorney's fees incurred in conducting discovery related to the newly-articulated Community Center Worn Valve defense as set forth in the Order.

A plethora of rules, including both the Local Patent Rules and the Federal Rules of Civil Procedure, required Zurn to identify the Community Center Worn Valve invalidity contention and produce detailed information relevant to it long before January 2012. The Local Patent Rules required Zurn to produce with its Rule 26(a)(1) initial disclosures "a copy of each item of prior art of which the party is aware that allegedly anticipates each asserted patent and its related claims or renders them obvious or, if a copy is unavailable, a description sufficient to identify the prior art and its relevant details." *See* LPR 2.1(b)(2). Rule 26(e)(1) provides that a party must supplement its initial disclosures and other discovery responses if the party discovers that they are inaccurate or incomplete. Fed. R. Civ. P. 26(e)(1). Further, Local Patent Rule 3.2 required Zurn to serve final invalidity contentions containing the information called for in Local Patent Rule 2.3, which requires "a chart, responsive to the chart required by LPR 2.2(c), that identifies as to each identified element in each asserted claim, to the extent then known by the party opposing infringement, whether such element is present literally or under the doctrine of equivalents in each Accused Instrumentality and, if not, the reason for such denial and the relevant distinctions." *See* LPR 3.2 and 2.3(a). Additionally, Sloan expressly requested materials relating to asserted prior art when it propounded the following requests for production:

> **REQUEST FOR PRODUCTION NO. 25:** All documents and things relating to or referring to any efforts undertaken by or on behalf of Zurn to locate prior art, with respect to U.S. Patent No. 7,607,635, valves, bushings, handles and/or handle assemblies, and all documents and things obtained through such efforts.
>
> **REQUEST FOR PRODUCTION NO. 26:** All documents and things relating to or referring to any testing of any prior art, with respect to U.S. Patent No. 7,607,635, valves, bushings handles and/or handle assemblies.
>
> **REQUEST FOR PRODUCTION NO. 27:** All documents and things relating to or referring to any testing, measuring and/or simulating of wear of any valves, bushings, handles and/or handle assemblies to ascertain if they would produce products similar to those described in U.S. Patent No. 7,607,635, including (without limitation) any valves, bushings, handles and/or handle assemblies that have been worn by robotic or other automated action.

(R. 238-8, Defs.' Suppl. Resp. to Plf.'s RFPs, dated May 26, 2010.) Notably, Zurn represented that it had produced or would produce in the future relevant, non-privileged documents responsive to such requests. (*Id.*) Zurn also certified, pursuant to the magistrate judge's orders, that it had produced all responsive documents in this case. Zurn's failure to timely produce documents regarding the Community Center Worn Valve until January 2012 constitutes a violation of its obligations under the Federal Rules of Civil Procedure and the Local Patent Rules.

The Court is unpersuaded by Zurn's suggestion that it should be excused from failing to comply with its discovery obligations with respect to documents relating to the Community Center Worn Valve because it did not obtain those documents until after it served its Prior Invalidity Contentions on October 22, 2010. (R. 251, Resp. at 3.) Documents that Zurn has recently produced to Sloan indicate that Zurn tested the Community Center Worn Valves as early as September 30, 2010–almost one month before Zurn served its Prior Invalidity Contentions. Additionally, Zurn admits in its response brief that it completed at least some testing of the Community Center Worn Valve on November 18, 2010, less than one month after serving its Prior Invalidity Contentions and almost one month before the Court granted Zurn's request for a stay of the case pending reexamination of the '635 Patent. Zurn should have disclosed, at a minimum, those testing documents to Sloan in 2010 rather than waiting until January 2012 to do so. As Sloan points out, had Zurn done so, Sloan would have had the opportunity to examine the documents and work with its experts on issues surrounding the valve even during the stay. Moreover, Zurn's argument that Sloan has been "on notice" since October 2010 of Zurn's defense that Sloan

patented a worn flush valve "like the ones found in the [Community Center]" neither explains nor excuses Zurn's failure to comply with its disclosure and discovery obligations under the Local Patent Rules and the Federal Rules of Civil Procedure.

The Court orders Zurn to produce by May 4, 2012 all relevant, non-privileged documents and things in its possession regarding the Community Center Worn Valve contention, as well as a detailed privilege log. Should Sloan request it, Zurn must also produce a witness to testify about that contention during a deposition. As a sanction for failing to comply with its discovery obligations, Zurn is further ordered to pay Sloan's reasonable attorney's fees and costs in connection with such additional discovery.

Fact discovery is scheduled to close on April 20, 2012. In light of this Order, the scheduling order in this case will require yet another amendment. The parties shall submit to the Court, no later than April 20, 2012, a proposed amended scheduling order that will allow Sloan adequate time to conduct discovery regarding Zurn's invalidity contentions.

## CONCLUSION

For the reasons set forth above, the Court grants Sloan's motion in part and denies it in part. The Court orders Zurn to produce, by May 4, 2012, 1) all worn valves it fabricated using the Zurn Machine; 2) all non-privileged documents relating to those valves, including, but not limited to, documents describing the procedure used and parameters employed in making them; and 3) a detailed privilege log. Zurn must also produce a Rule 30(b)(6) witness for a deposition consistent with the terms of this order, and it must bear the costs of the deposition as well as the fees for one of Sloan's attorney's time spent at the deposition. The Court denies Sloan's motion to strike Zurn's invalidity defense, but orders Zurn to produce all relevant, non-privileged documents related to that defense and a privilege log by May 4, 2012, and to produce a witness, if requested, to testify about that defense in a deposition. Zurn must also pay Sloan's reasonable attorney's fees and costs associated with such additional discovery. Finally, the Court orders Zurn to pay Sloan's reasonable attorney's fees and costs incurred during the preparation of its motion to compel and reply in support thereof. Sloan should submit a fee petition no later than 21 days after the close of fact discovery in this case. Zurn shall have 7 days thereafter in which to respond.