IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SLOAN VALVE COMPANY, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 10 C 204 |
| ZURN INDUSTRIES, INC., a Delaware corporation, and ZURN INDUSTRIES, LLC, a Delaware limited liability company, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Sloan Valve Company ("Sloan") brings this patent infringement action against Defendants Zurn Industries, Inc. and Zurn Industries, LLC (collectively, "Zurn"). Zurn now moves for partial summary judgment on Count II. (R. 363.) The Court previously denied the motion in part. (R. 399.) For the reasons discussed below, the motion is granted in remaining part.

### BACKGROUND

This case concerns U.S. Patent No. 7,607,635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent" or the "Wilson Patent"), and the corresponding U.S. Patent Application Publication No. 2006/0151729 (the "Published Wilson Patent Application"). On January 13, 2010, Sloan commenced this action against Zurn seeking (a) damages and injunctive relief for Zurn's alleged infringement of the '635 Patent; and (b)

provisional damages for Zurn's alleged making, sale and use of inventions that the Published Wilson Patent Application covers. (*See* R. 1, Compl. ¶¶ 34-38.)

**I.      The Patent at Issue**

The '635 Patent "relates to flush valves for use with plumbing fixtures such as toilets, and more specifically to improvements in the bushing of the actuating handle assembly that will provide for user-selectable, dual mode operation of the flush valve." (R. 314-1, '635 Patent, col. 1, ll. 6-10.) The improvement is a mechanism that allows a user to select one of two flush volumes based on the direction of actuation of the handle: a full flush volume to evacuate solid waste from the bowl or a reduced flush volume to remove liquid waste. (*Id.*, col. 1, ll. 11-19, col. 2, ll. 27-33.)

The '635 patent was filed on August 25, 2005 and issued on October 27, 2009. (Undisputed Facts[1] ¶ 2.) On July 13, 2006, the patent published with 31 claims as the Published Wilson Patent Application. (*Id.* ¶ 3.) Zurn filed a request for reexamination of the '635 patent on September 17, 2010. (*Id.* ¶ 4.) In 2010, the U.S. Patent and Trademark Office ("PTO") granted Zurn's request for an ex parte reexamination of the '635 Patent. (R. 149, 159.) On September 27, 2011, the PTO issued an Ex Parte Reexamination Certificate for the '635 Patent, in which certain of Sloan's claims were amended and others were added. (Undisputed Facts ¶¶ 5-6.) Claims 10-11 and 15 of the Published Wilson Patent Application correspond to Claims 7-8 and 12, respectively, of the '635 patent. (*Id.* ¶ 7.)

---

[1] Citations to "Undisputed Facts" refer collectively to Zurn's Local Rule 56.1 Statement of Facts (R. 365) and Sloan's response thereto (R. 381, at 2-8). "Citations to "Add'l Undisputed Facts" refer collectively to Sloan's Local Rule 56.1 Statement of Additional Facts (R. 381, at 8-12) and Zurn's response thereto (R. 394). For purposes of clarity, the Court will use these citation references where the fact preceding the citation is undisputed.

2

### A. Claims 7 and 8

Claims 7 and 8 of the Wilson Patent are method claims that are identical to the corresponding Published Wilson Patent Application claims 10 and 11. (Add'l Undisputed Facts ¶ 30.) Claim 7 of the '635 patent reads:

> In a flush valve of the type having a body with an inlet and an outlet, a valve seat between said inlet and outlet, a valve member movable to a closing position on said valve seat to control water flow between said inlet and outlet, a pressure chamber defined in said body above said valve member, a relief valve mounted on the valve member for movement between seated and unseated positions which close and open the pressure chamber, respectively, a handle assembly mounted on the body and including an actuatable handle, a bushing having a sleeve with a passage defined therethrough and a plunger mounted for sliding and tilting in said busing passage, the plunger having an outer end in engagement with the handle and an inner end engageable with the relief valve, the plunger being movable to unseat the relief valve, a method of operating a flush valve in a dual mode comprising the step of adjusting the flush volume by tilting the inner end of the plunger to alter the location at which it contacts the relief valve.

(Undisputed Facts ¶ 9.)

Claim 8 of the '635 patent reads: "The method of claim 7 wherein the tilting step is characterized by tilting the inner end of the plunger downwardly to reduce the flush volume." (*Id.* ¶ 10.)

### B. Claim 12

Claim 12 of the '635 Patent is directed to a system for operating a water flush valve in a plurality of flush modes. (R. 382-1, Ex Parte Reexamination Cert. for the '635 Patent, at 4, col. 1:55 – col. 2:14; *see also* R. 391, Claim Construction Order, at 4-5.) Claim 15 of the Published Wilson Patent Application, which corresponds to Claim 12 of the '635 patent, was published on July 13, 2006 as follows:

> A system for operating a water flush valve in a plurality of flush volume modes, comprising a user handle operable in at least a first and second direction to cause a face plate to pivot about a plurality of portions of the face plate; and the face plate of the system coupled to the user handle and constructed to respond to

handle motion by at least the following: (1) motion in a first handle direction of the user handle causing the face plate to pivot about a first face plate portion of the face plate moving in a first face plate direction and a coupled lower portion of a plunger head and coupled shank remaining substantially centered on a horizontal axis of travel such that an end view of the shank remains substantially centered on the horizontal axis of travel, thereby releasing a first volume of water for flushing purposes and (2) motion in a second handle direction of the user handle causing the face plate to pivot about a second face plate portion of the face plate moving in a second face plate direction and a coupled upper portion of the plunger head and the coupled shank displaced away from a center of the horizontal axis of travel such that an end view of the shank is displaced from the horizontal axis of travel, thereby releasing a second volume of water for flushing purposes.

(Undisputed Facts ¶ 13; *see also id.* ¶ 11 (claim 12 not amended prior to publication).)

During reexamination, Sloan amended claim 12 of the '635 patent, which now reads:

A system for operating a water flush valve in a plurality of user selectable[2] flush volume modes including a liquid waste removal mode and a solid waste removal mode, comprising a user handle operable in at least a first and second direction to cause a face plate to pivot about a plurality of portions of the face plate; and the face plate of the system coupled to the user handle and constructed to respond to handle motion by at least the following: (1) motion in a first handle direction of the user handle causing the face plate to pivot about a first face plate portion of the face plate moving in a first face plate direction and a coupled lower portion of a plunger head and coupled shank remaining substantially centered on a horizontal axis of travel such that an end view of the shank remains substantially centered on the horizontal axis of travel, thereby releasing a first flush volume of water for solid waste flushing purposes in the solid waste removal mode and (2) motion in a second handle direction of the user handle causing the face plate to pivot about a second face plate portion of the face plate moving in a second face plate direction and a coupled upper portion of the plunger head and the coupled shank displaced away from a center of the horizontal axis of travel such that an end view of the shank is displaced from the horizontal axis of travel, thereby releasing a second flush volume of water adequate for liquid waste flushing purposes in the liquid waste removal mode.

(*Id.* ¶ 13.) Sloan pursued this amendment during reexamination to overcome a § 102 anticipation rejection over the [']Billeter [P]atent['](U.S. Patent No. 3,279,742)." (*Id.* ¶ 14; *see also* R. 391, Claim Construction Order, at 6-7.) The examiner interpreted Billeter as "inherently a dual mode

---

[2] The parties recite this language as "user selected" (R. 365, 381), but the proper claim language is "user selectable" and so the Court will use the latter. (*See* Undisputed Facts ¶ 13.)

4

flush valve." (R. 391, Claim Construction Order, at 7.) During an interview with the examiner on March 31, 2011, the examiner "expressed that [Claim 1] may benefit from additional language to clarify that the claimed structure is related to the dual mode concept set forth in the preamble." (*Id.*) In addition to amending Claim 1, Sloan replied by amending Claim 12 to include language directed to "user selectable" flush volume modes and designating "a first flush volume" relating to removal of solid waste and "a second flush volume" relating to adequate removal of liquid waste. (*See id.*; Undisputed Facts ¶¶ 13-16.)

## II. Procedural History

On January 13, 2010, Sloan filed this patent infringement action against Zurn, seeking damages and injunctive relief, as well as provision damages. In its Amended and Supplemental Complaint filed on November 29, 2011, Sloan repeated its claim for provisional damages. Both Sloan's January 13, 2010 Complaint and its November 29, 2011 Amended and Supplemental Complaint assert that its claim for provisional damages is based on Zurn's pre-issuance activities, namely, that Zurn "made, used, offered for sale or sold in the United States and the invention claimed" in at least issued claims 7, 8 and 12. In an order dated September 13, 2012, the Court construed the relevant claims in the '635 patent. (R. 391.)

Zurn thereafter filed the present motion for partial summary judgment on Count II, arguing that Sloan is not entitled to provisional remedies based on Claims 7, 8 and 12 of the '635 parent. (R. 363, Zurn's Mot.; R. 364, Zurn's Mem.) The Court denied the motion as moot as to Claims 7 and 8 after Sloan clarified that it was not alleging infringement as to those claims. (R. 399 & Sloan's Amended Final Infringement Contentions, at 7 ("Zurn has directly infringed asserted Claims 1, 4-8, 10-12, 14, 19, 29-31 and 33-34 of the Wilson Patent by using the Zurn Z6000 Valve and Zurn P6000 Handle with a flush valve, including in connection with its internal

quality assurance testing of those products."). Accordingly, the only remaining issue in Zurn's motion for partial summary judgment is whether Sloan can pursue provisional remedies under 35 U.S.C. § 154(d) on Claim 12 of the '635 patent. As discussed below, it cannot.

## LEGAL STANDARD

Rule 56 provides that a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Under the Rule, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Parent v. Home Depot U.S.A., Inc.*, — F.3d —, 2012 WL 4329332, at *2 (7th Cir. Sept. 24, 2012). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

In deciding summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697,

704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

Here, Zurn argues that it is entitled to partial summary judgment on Sloan's § 154(d) claim because Claim 12 does not meet the "substantially identical" standard for recovery of provisional damages. Zurn argues that Sloan amended Claim 12 in the reexamination to overcome rejections raised by the Examiner over the Billeter Patent, and that those amendments, which limited a first flush volume to removing liquid and solid waste and a second flush volume to removing liquid waste, substantially changed the scope of Claim 12. (*See* R. 364, Zurn's Mem. at 6.) The Court agrees.

**I.    Applicable Law of Provisional Damages Under 35 U.S.C. § 154(d)**

Under Section 154(d), an inventor has the right to obtain a reasonable royalty from anyone who, between the patent's publication and issuance, "makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States." 35 U.S.C. § 154(d). The statute further provides that a patentee may "obtain reasonable royalties for activities amounting to infringement of the [patent application's claims] if: (1) the issued patent claims are substantially identical to the claims in the published application; and (2) [defendant] had actual notice of the published patent application." *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1275-76 (Fed. Cir. 2004) (internal footnotes omitted); *see also* 35 U.S.C. §§ 154(d)(1)(B), (2).

Because the second element -- actual notice -- is not at issue,[3] the Court will focus

---

[3] The Court previously granted Sloan's motion to strike portions of Zurns' Reply Brief relating to actual notice. (R. 399, 10/2/12 Minute Order.) Zurn did not argue in its opening brief that Sloan failed to provide actual notice of the published Wilson patent application (*See* R. 364), and the Court rejected Zurn's attempt to do so for the first time in reply. (R. 399); *see also Carroll v. Lynch*, --- F.3d ----, 2012 WL 4845456, at *7 n. 2 (7th Cir. Oct. 16, 2012); *Griffin v. Bell*, ---

7

whether the claims are "substantially identical." This is a question of law. *See Laitram Corp v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). To determine whether "the invention as claimed in the patent is substantially identical to the published patent application," 35 U.S.C. § 154(d)(2), courts draw upon case law relating to whether reissue claims are "substantially identical" to original claims for purposes of intervening rights under 35 U.S.C. § 252. *See Pandora Jewelry, LLC v. Chamilia, LLC*, No. CCB-06-600, 2008 WL 3307156, at *9 (D. Md. Aug. 8, 2008); (*see also* R. 381, at 15.) Under 35 U.S.C. § 252, "amended patent claims are 'substantially identical' to the original claims "if they are without substantive change." *Pandora Jewelry*, 2008 WL 3307156, at *9 (citing *Laitram*, 163 F.3d at 1346); *see also Seattle Box Co. v. Indus. Crating & Packaging, Inc.,* 731 F.2d 818, 828 (Fed. Cir. 1984).

"In determining whether substantive changes have been made, [a court] must discern whether the *scope* of the claims are identical, not merely whether different words are used."[4] *Laitram*, 163 F.3d at 1346 (citing *Slimfold Mfg. Co. v. Kinkead Indus.,* 810 F.2d 1113, 1115 (Fed. Cir. 1987)); *see also Predicate Logic, Inc. v. Distributive Software,* 544 F.3d 1298, 1305 (Fed. Cir. 2008) ("An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical . . . .") (citation omitted). The Federal Circuit has explained that "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." *Laitram,* 163 F.3d at 1348. An amendment that merely clarifies the terms of a

---

F.3d ----, 2012 WL 3984411 (7th Cir. Sept. 4, 2012). This Order therefore does not consider the issue of actual notice because Zurn has not properly presented that issue for decision.
[4] If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate. *See Laitram*, 163 F.3d at 1346 (citing *Bloom Eng'g Co. v. N. Am. Mfg. Co*., 129 F.3d 1247, 1249-50 (Fed. Cir. 1997)).

claim is not a substantial change, but an amendment that narrows the scope of a claim is a substantial change. *Bloom Eng'g*, 129 F.3d at 1250.

There is no *per se* rule as to what is "substantially identical," and courts must analyze the claims in light of the intrinsic evidence in the record, including the written description, and the language of the respective claims, the prosecution history and the prior art. *See Laitram,* 163 F.3d at 1347; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). A plain reading of a claim may obviate the need to construe it if the plain reading reveals that it is clearly not substantially identical. *See Seattle Box*, 731 F.2d at 828.

## II.     Claim 12 of the Wilson Patent is Not "Substantially Identical" to its Published Form

Claim 12 of the '635 Patent is representative of a system for operating a water flush valve in a plurality of flush modes. (R. 391, Claim Construction Order, at 4-5; *see also* R. 382-1, Ex Parte Reexamination Cert., at 4, col. 1:55 – col. 2:14; Undisputed Facts ¶ 13.) As explained above, Claim 15 of the Published Wilson Patent Application, which corresponds to Claim 12 of the '635 patent, was published on July 13, 2006 and amended following reexamination. (Undisputed Facts ¶¶ 3, 7.) A comparison of the Published Wilson Patent Application Claim 15 to Claim 12 of the '635 Patent is below (bold and italicized text was added during reexamination):

> A system for operating a water flush valve in a plurality of ***user selectable*** flush volume modes, ***including a liquid waste removal mode and a solid waste removal mode,*** comprising a user handle operable in at least a first and second direction to cause a face plate to pivot about a plurality of portions of the face plate; and the face plate of the system coupled to the user handle and constructed to respond to handle motion by at least the following: (1) motion in a first handle direction of the user handle causing the face plate to pivot about a first face plate portion of the face plate moving in a first face plate direction and a coupled lower portion of a plunger head and coupled shank remaining substantially centered on a horizontal axis of travel such that an end view of the shank remains substantially centered on the horizontal axis of travel, thereby releasing a first ***flush*** volume of water for ***solid waste*** flushing purposes ***in the solid waste removal mode*** and (2)

9

> motion in a second handle direction of the user handle causing the face plate to pivot about a second face plate portion of the face plate moving in a second face plate direction and a coupled upper portion of the plunger head and the coupled shank displaced away from a center of the horizontal axis of travel such that an end view of the shank is displaced from the horizontal axis of travel, thereby releasing a second *flush* volume of water *adequate for liquid waste* for flushing purposes *in the liquid waste removal mode*.

(Undisputed Facts ¶ 13.) Because Sloan amended Claim 12 in response to the Billeter Patent, (*see id.* ¶¶ 11, 13-14), the operative question is whether those amendments affected the scope of Claim 12 such that it is no longer substantially identical to its published form.

Zurn argues that Sloan's amendments to Claim 12 added limitations that the first and second flush volumes were for removing solid waste and liquid waste, respectively. (R. 364, Zurn's Mem. at 6.) Sloan responds that it amended Claim 12 of the '635 patent to clarify the meaning of the claim term "plurality of flush volume modes," which at all times was in the preamble of the claim, to reflect what the patent specification already said -- that this claim meant two distinct, user-selectable flush modes, one of which is for evacuation of liquid waste and the other of which is for evacuation of solid waste. (R. 380, Pl.'s Resp. at 6.)

Having reviewed the particular facts of this case, the Billeter Patent, and the prosecution history, the Court concludes that Sloan's amendment to Claim 12 did more than simply provide clarification of an already existing term. *See Laitram Corp.*, 163 F.3d at 1347 ("To determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information.").

First, Sloan's amendments limited the scope of its claim. To overcome the Examiner's rejections over the Billeter Patent, Sloan narrowed the system to one governed by the user's selection and narrowed the flush volumes to a specific purpose of removing either solid and/or

liquid waste. A plain reading of the claim reveals that the amendments made during reexamination added limitations that were previously not in the claim and therefore narrowed the scope. Accordingly, the amended Claim 12, post-reexamination, is not substantially identical to its published version. *See Seattle Box*, 731 F.2d at 828 (explaining that a plain reading of a claim may obviate the need to construe it if the plain reading reveals that it is clearly not substantially identical). Indeed, Sloan's amendments provided additional language that "was added to distinguish the patented method from prior art" and "undoubtedly narrowed the scope of the claims, thereby effecting a substantial change." *Prestige*, 2011 WL 727869, at *6; *see also Laitram*, 163 F.3d at 1349 (finding that an added limitation element "narrowed the original claims, substantively changing them); *Bloom Eng'g*, 129 F.3d at 1251 (finding that an amendment to narrow a claim in order to distinguish a product from the prior art was correctly viewed as a substantive change in claim scope).

Second, Sloan clarified the term "plurality of flush modes" – a term also contained in the preamble. (Undisputed Facts ¶ 13.) During reexamination, the Examiner found that the amendment to the claims adding "that the first and second flush volumes were for removing solid waste and liquid waste" is a claim limitation, which "give[s] the preamble breath and life." (*See* R. 391, Claim Construction Order, at 9.) This amendment makes an otherwise non-limiting term in the preamble, limiting. (*See* R. 391, Claim Construction Order, at 9; *see also Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1296 (Fed. Cir. 2004) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) ("[i]n general, a claim preamble is limiting if "it recites essential structure or steps, or if it is necessary to give 'life, meaning, and vitality' to the claim")); *see also Intirtool*, 369 F.3d. at 1296 (explaining generally that a preamble is not limiting unless there is clear reliance on the preamble to distinguish the claimed

11

invention from the prior art)). The Examiner additionally stated that the inherent flush volume differentials in the Billeter reference did not meet the definition of a dual mode flush valve. The addition of these amendments during reexamination gave the "dual mode" claim term its patentable weight and differentiated it from the prior art Billeter patent. *See Pitney Bowes*, 182 F.3d at 1305 ("[i]n general, a claim preamble is limiting if "it recites essential structure or steps, or if it is necessary to give 'life, meaning, and vitality' to the claim."). Because these amendments gave the preamble breath and life, the term "plurality of user-selected flush volume modes" became a newly added limitation that allowed Claim 12 to overcome the prior art. *See Bloom Eng'g,* 129 F.3d at 1251 (finding that an amendment to narrow a claim in order to distinguish a product from the prior art was correctly viewed as a substantive change in claim scope).

Resisting the conclusion that Claim 12 is not substantially identical to its published form, Sloan relies on three cases that, according to Sloan, show that the new limitations Claim 12 are not substantive modifications but rather clarifications to the original claim. Sloan's reliance, however, is misplaced.

In *Tennant Co. v. Hako Minuteman, Inc.*, the Federal Circuit rejected the district court's conclusion that the claims of the original and re-examined patents were not substantially identical. The district court concluded that the addition of the word "bottom" before the word "wall" narrowed and substantially altered the claims. In rejecting this holding, the Federal Circuit found that the "movable first wall" was always a "bottom" wall; therefore, the court concluded that the change to "movable first bottom wall" was not a substantive change. *Tennant*, 878 F.2d 1413, 1417 (Fed. Cir. 1989). The *Tennant* court relied in part on the existence of the "bottom" limitation that appeared in some of the original claims. *Id.* (finding that claim 1

in its original form referred to "a movable first wall section" and "a second bottom wall section"). The claim scope in *Tennant* did not change with the "bottom" amendment.

Here, in contrast, the published version of Claim 12 makes no reference to user-selectable features or to solid-liquid waste distinction for either of the flush volumes, and thus the claim scope of the '635 patent claims changed with the reexamination limitations. Similarly, in *Kaufman Co. v. Lantech Inc.*, as Sloan observes, the Federal Circuit specifically noted in both cases that the amendment language was not only in the specification but also in the original claims themselves. *See Kaufman*, 807 F.2d 970, 972-73 (Fed. Cir. 1986); (*see also* R. 380, Sloan's Resp. at 13-14.)

Furthermore, in *Predicate Logic, Inc. v. Distributive Software*, the claim at issue was directed to a system for data measurement and analysis, which comprises an "instantiating" step which populates the index fields with data from the project. 544 F.3d 1298, 1300-01 (Fed. Cir. 2008). The "instantiating" step in the original claim required only a single instantiation; whereas the amended "instantiating step" clearly required two instantiations. *Id.* at 1305. The Federal Circuit found the claims to be "identical" for the purposes of Section 252 because the original claim 1 necessarily required two instantiations based on the claim language. *Id.* Unlike the original claims in *Predicate Logic*, Sloan's original claims do not necessarily require user-selectability, nor do they necessarily require a liquid or solid waste distinction for flush volumes based on their original claim language, written description, and prosecution history.

For all of these reasons, Claim 12 is not "substantially identical" to its published form. Sloan cannot therefore recover provisional damages under 35 U.S.C. § 154(d) for any pre-issuance activities that met all the limitations of Claim 12. *See Pandora Jewelry*, 2008 WL

3307156, at *10 (holding that patentee could not recover provisional rights because the issued patent was not substantially identical to the published application).

## CONCLUSION

Zurn's motion for partial summary judgment on Count II is granted in remaining part.

**Dated: October 26, 2012**

_____
**AMY J. ST. EVE**
**United States District Court Judge**