**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SLOAN VALVE COMPANY, a Delaware corporation, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZURN INDUSTRIES, INC., a Delaware )<br>corporation, and ZURN INDUSTRIES, LLC, a )<br>Delaware limited liability company, )<br>)<br>Defendants. ) | No. 10-cv-204 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Zurn Industries, Inc. and Zurn Industries, LLC (collectively, "Zurn") have moved the Court to strike Sloan Valve Company's ("Sloan") Amended Rule 26 Disclosures, the Expert Report of John Gregor, and Portions of the Expert Report of Julius Ballanco. For the reasons discussed below, the motion is denied in part and denied in part without prejudice.

This case concerns U.S. Patent No. 7,607,635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent" or the "Wilson Patent"), and the corresponding U.S. Patent Application Publication No. 2006/0151729 (the "Published Wilson Patent Application"). On January 13, 2010, Sloan commenced this action against Zurn seeking (a) damages and injunctive relief for Zurn's alleged infringement of the '635 Patent; and (b) provisional damages for Zurn's alleged making, sale, and use of inventions that the Published Wilson Patent Application covers. Expert discovery is scheduled to close on May 6, 2013. Zurn now challenges two of Sloan's expert submissions – Mr. John Gregor's report and portions of Mr. Julius Ballanco's opinions.

**I.      The Agreed Substitution of Mr. Bley for Mr. Gregor Was Appropriate**

During the course of expert discovery, Sloan disclosed John Gregor, a technician with Made to Measure ("M2M"), as an expert witnesses in the area of precision measurement techniques, and provided Zurn with Mr. Gregor's Expert Report, dated January 28, 2013 (the "Gregor Report"). Sloan engaged M2M to provide precision measurements and modeling of Zurn's Dual Flush Handle Assembly, the accused product in this patent infringement litigation. As part of its work, M2M created computer animations that reflect the travel of the plunger of Zurn's accused device. Mr. Gregor, under the direct supervision of M2M's owner – Sven Bley – conducted the measurements of the Zurn Handle. Mr. Gregor included these measurements in the Gregor Report. (R. 484-6.)

Zurn scheduled Mr. Gregor's deposition for February 26, 2013. Mr. Gregor suffers from episodes of severe anxiety, and regularly takes Prozac to treat his anxiety. (R. 492-2 at ¶ 4.) Several days before his deposition, he "became extremely stressed out and anxious" about his deposition. (*Id.* at ¶ 6.) The day before his deposition, Mr. Gregor informed Mr. Bley that he was not capable of testifying at his deposition because of the increased severity of his anxiety and stress over the deposition. (*Id.* at ¶ 9; R. 492-3 at ¶ 6.) He also communicated his condition to Sloan's attorneys. (R. 492-2 at ¶6.) Sloan then informed Zurn's counsel and offered Mr. Bley as a substitute witness to testify about the measurements taken by Mr. Gregor. Sloan told Zurn that Mr. Gregor "is experiencing grave health concerns that prevent him from testifying . . . ." (R.. 484-4.) Zurn agreed and the deposition of Mr. Bley went forward.

Zurn now contends that Sloan "deliberately misrepresented Gregor's health." Zurn complains that Mr. Gregor was at work on the day Mr. Bley's deposition went forward and

2

received telephone calls from Mr. Bley during breaks in Mr. Bley's deposition testimony. Zurn further challenges Mr. Bley's testimony, claiming that he was not able to address several assumptions utilized in the testing that formed the basis of Mr. Gregor's report. As a result, Zurn claims "unfair surprise and undue prejudice.[1]" The Court disagrees.

In support of its argument, Zurn heavily relies on Local Patent Rule 5.3. Its reliance on this Rule is misplaced. Local Patent Rule 5.3 requires a party seeking to supplement an expert report after the disclosure deadlines provided for in the Local Patent Rules to obtain prior leave of court, show good cause that it could not have made the supplement earlier, and establish that the opposing party will not suffer undue prejudice from the supplementation. Here, Sloan did not supplement the expert report of Mr. Gregor. Indeed, Mr. Gregor's report stands. Instead, Sloan substituted its expert witness from Mr. Gregor to Mr. Bley, Mr. Gregor's direct supervisor who supervised his work on the report. Zurn agreed to the substitution in advance. Even if Zurn had not agreed, the Court would have approved the substitution if Sloan had properly moved for it for the reasons set forth below. *See Randall v. Rolls-Royce Corp.,* No. 06-CV-860-SEB-JMS, 2010 WL 987484, at *3 (S.D. Ind. Mar. 12, 2010), *aff'd,* 637 F.3d 818 (7th Cir. 2011) ("Because we would not have required Defendants to continue to use Dr. Harnett, given his daughter was suffering from melanoma, even if they had requested a substitution back in March or April of 2009, we will not punish them now for having made that substitution *sua sponte.*")

Federal Rules of Civil Procedure 26(a)(2) and 37 govern the dispute. *See Assaf v. Cottrell, Inc.*, No. 10 CV 0085, 2012 WL 245196, at *2 (N.D. Ill. Jan. 26, 2012) ("The Federal Rules of Civil Procedure provide judges with broad discretion to resolve discovery disputes.

---

[1] Zurn's attempts to reargue issues previously decided by the Court fail. The Court need not readdress the substance of its prior rulings here.

Although the Rules do not expressly address substitution of expert witnesses, Rules 26 and 37 guide our inquiry to the extent that the requested substitution is a request to modify the discovery schedule ...."); *see also Via v. Lagrand*, No. 03 C 3278, 2007 WL 495287, at *3 (N.D. Ill. Feb. 12, 2007) (applying Rule 37(c)(1) to plaintiff's failure to disclose nontreating physician as an expert rather than a lay witness who had reviewed medical records of child that plaintiff was accused of abusing). Rule 26(a)(2) governs the disclosure of expert witnesses. *See* Fed. R. Civ. P. 26(a)(2). Rule 37 provides that "[i]f a party fails to disclose information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37.

The substitution of Mr. Bley for Mr. Gregor was appropriate in this case. Mr. Gregor has submitted an affidavit explaining that he suffers from episodes of severe anxiety and that he currently treats his condition with Prozac. (R. 492-2.) Zurn challenges the severity of Mr. Gregor's health issue. It complains that despite his anxiety Mr. Gregor was able to answer telephone calls from Mr. Bley during Mr. Bley's deposition. Zurn argues that these actions demonstrate that Sloan misrepresented Mr. Gregor's health and give the "clear implication that he was unwilling to answer questions under oath." As Mr. Gregor's affidavit makes clear, however, it was the fear of giving the deposition that caused the severity of his anxiety and stress. Mr. Bley's affidavit corroborates Mr. Gregor's. Zurn's conclusion is simply unsupported and insensitive under the circumstances. Mr. Gregor has sufficiently explained the impact the anticipated deposition had on his anxiety and mental state. The Court will not compel a witness with severe anxiety to testify as suggested by Zurn.

Furthermore, Zurn has not provided any evidence refuting the facts in Mr. Gregor's or Mr. Bley's affidavit. It also has not submitted any evidence of bad faith on Sloan's part in substituting, by agreement, Mr. Bley for Mr. Gregor in advance of his deposition. Mr. Bley is adopting the same report that Mr. Gregor submitted, Mr. Bley owns the company at which Mr. Gregor works, Mr. Bley supervised Mr. Gregor's work on this matter, and Mr. Bley was able to answer the majority of the questions at the deposition on very short notice. (R. 492-3.) In addition, Sloan has also offered to make Mr. Bley available for another deposition to answer the questions he was unable to answer at his first deposition. The Court agrees that Sloan's proposal will cure any potential prejudice Zurn may have faced[2].

## II.   Mr. Ballanco

Sloan also disclosed Julius Ballanco as an expert witness regarding infringement. Mr. Ballanco's expert report references the Gregor Report and the measurements taken by M2M. In addition, Zurn contends that it has suffered undue prejudice from Mr. Ballanco'srReport because his report indicated that the accused products caused price erosion of $20 to $30 for every Sloan dual flush handle sold. Mr. Ballanco, according to Zurn, would not identify the contractors who agreed with his price erosion opinions. As such, Zurn asks the Court to strike the Gregor Report and portions of Mr. Ballanco's report.

In his expert report, Mr. Ballanco opines as follows:

> In addition, in light of the fact that manual dual mode flush valves are the quickest route to water savings, in my opinion it is reasonable that Sloan could have charged higher prices for its dual mode flush valves and handles without experiencing an impact on sales volume if Zurn did not offer a less expensive, competing product. It is my opinion that, if Zurn had not been able to offer well performing, acceptable manual dual flush handles and manual dual flush valves

---

[2] The Court expects the parties to work out the issue regarding the raw data.

5

> from 2006 to the present, Sloan would have been able to increase the price of its Uppercut flush valves and handles by $20-$30 each without any diminishing sales. A price increase of $20-$30 per water closet is not significant in the context of anew building construction or retrofitting projects, and it would not stop a building owner from going "green."

(R. 484-5 at 45.) During his deposition, when asked whether he had conducted any studies to support his opinion on this issue, Mr. Ballanco testified: "Have I done any studies? No, only anecdotal in my discussions with people." (R. 484-1 at 215.) He then explained that these "anecdotal" discussions took place with contractors and engineers. (*Id.*) When asked to identify the contractors, he said that he would "rather not." (*Id.*) Mr. Ballanco added "I think when I have conversations with contractors on green issues, I maintain the confidentiality because I'm not publishing any reports. They're giving me information. If I start giving their name out, I'm not going to get their information anymore." (*Id.*) The following exchange subsequently took place in the deposition:

> COUNSEL: Mr. Ballanco, other than the anecdotal evidence that you mentioned with respect to the 20 or $30 that you believe Sloan could increase the price for its UPPERCUT, do you have any other basis for that statement?
>
> MR. BALLANCO: My years of experience in the profession. I've worked in this profession a long time. You know what pricing is and what you can get away with and what you can't get away with. Water conservation is a major concern.
>
> So when you can show a savings and a price, that was my thought. I was asked what I thought you could get more and that's the price I – the differential I came up with.

(*Id.* at 218.)

Based on this testimony, Zurn asks the Court to strike Mr. Ballanco's opinions regarding price erosion, or, alternatively, to order Mr. Ballanco to identify certain contractors whom he mentioned during his deposition. According to Sloan, Mr. Ballanco disclosed the sole basis for

this opinion – his experience.  Sloan represents that Mr. Ballanco did not speak with the contractors he mentioned until *after* he had written his report, and thus he did not rely on their informal comments in reaching his opinion.

It is clear that an expert may render opinions based on his or her experience alone.  "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony."  Fed. R. Evid. advisory committee note.  The Seventh Circuit has repeatedly stated that "genuine expertise may be based on experience or training." *United States v. Conn,* 297 F.3d 548, 556 (7th Cir. 2002), quoting *Tyus v. Urban Search Mgmt.,* 102 F.3d 256, 263 (7th Cir. 1996); *see also Metavante Corp. V. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).  It is unclear from Mr. Ballanco's deposition transcript, however, whether his opinion regarding price erosion was based solely on his experience or whether his conversations with the contractors formed part of the basis for it.  Although Sloan claims that these conversations took place after Mr. Ballanco wrote his report, the deposition testimony is not clear.  Accordingly, the Court grants Zurn the opportunity to re-depose Mr. Ballanco on this sole issue.  Specifically, Zurn may question Mr. Ballanco about the basis of his opinion that Sloan could have charged $20 to $30 more for its dual mode flush valves and handles without experiencing an impact on its sales volume if Zurn had not offered a less expensive, competing product.  Mr. Ballanco must directly answer when his conversations with the noted contractors and engineers took place, and whether these conversations provided the basis for any aspect of his opinion.  If they did form the basis, Mr. Ballanco must disclose their identities and the substance of each conversation.  If he fails to do so, Zurn can renew this aspect of the motion.  If the conversations took place after he wrote his report and he did not rely on them in reaching his opinions, Mr. Ballanco need not disclose their identities and may not testify about these conversations during trial.

## CONCLUSION

Zurn's motion to Strike Sloan's Amended Rule 26 Disclosures, the Expert Report of John Gregor, and Portions of the Expert Report of Julius Ballanco is denied as to the Amended Rule 26 Disclosures and the Expert Report of John Gregor, and denied without prejudice as to the Expert Report of Julius Ballanco. The limited depositions of Mr. Bley and Mr. Ballanco as set forth in this Opinion must take place on or before April 29, 2013. Each deposition is limited to one hour. The request for fees is denied.

**DATED: April 5, 2013**              **ENTERED**:

*[signature]*
AMY J. ST. EVE
United States District Court Judge