**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SLOAN VALVE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-00204 |
| | ) | |
| vs. | ) | |
| | ) | Judge Amy J. St. Eve |
| ZURN INDUSTRIES, INC., and ZURN | ) | |
| INDUSTRIES, LLC, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF *DAUBERT***
**MOTION TO EXCLUDE TESTIMONY OF HARRY J. GWINNELL**

> *We take note of the extent to which the incorrect law was announced by a patent law expert witness. We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, see Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), but markedly incorrect law. Incorrect statements of law are no more admissible through "experts" than are falsifiable scientific theories.[1]*

I.    **INTRODUCTION**

Gwinnell's testimony should be excluded for the following reasons, which go to both his qualifications to render the opinions set forth in his report, as well as the reliability and relevance of the opinions he seeks to offer:

- Gwinnell's testimony is irrelevant and improper because it is mere legal argument. He offers no testimony about relevant patent office procedure or reexamination procedure, nor could he, given his cited experience;

- Gwinnell possesses no expertise in regard to the reexamination proceedings on which he is attempting to testify;

---

[1] *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996).

- Gwinnell's testimony is flat out incorrect on the current state of the law regarding competent evidence in reexamination proceedings and the proper arbiter of willfulness determinations; and

- Gwinnell is not a person of ordinary skill in the art sufficient to opine on any issues pertaining to infringement or invalidity defenses, and in particular, cannot assess what is reasonable testing data in the relevant field of art.

Any of these individual flaws are fatal and disqualifying. Gwinnell's opinion is legally incorrect and misleading due to its incompleteness. Consequently, these deficiencies require exclusion of Gwinnell's opinions, and he should be barred from offering testimony in this matter.

## II. RELEVANT FACTUAL BACKGROUND

Sloan alleges patent infringement of U.S. Pat. No. 7,607,635. *See* Amended and Supplemental Complaint (Dkt. 197). On January 28, 2013, Sloan served the Expert Report of Harry J. Gwinnell ("Gwinnell Rep.") attached hereto as Exhibit 1. This fifty-six paragraph report indicates Gwinnell intends to offer testimony "as to the issues relating to Sloan's claim of willful infringement" as well as "Zurn's invalidity defenses." Ex. 1 at ¶ 10. Thereafter, on April 18, 2013, Gwinnell was deposed ("Gwinnell Dep.").

Gwinnell's arguments consist of two conclusory, bottom-line paragraphs at the end of his report. First, Gwinnell argues that the actions Zurn took after reexamination of the '635 patent demonstrate both objective and subjective recklessness for purposes of willfulness analysis in light of the evidence considered during the reexamination. To support this claim, Gwinnell misidentifies the invalidity arguments considered during reexamination, by incorrectly conflating an instance of prior public use (which is not subject to consideration during reexamination even though he admits such evidence can be invalidating prior art) with the printed published prior art

submissions that were considered during reexamination. *See* Ex. 1 at ¶ 54. Second, Gwinnell questions the basis for the invalidity opinion of counsel by suggesting that the opinion of counsel should have relied on "records or testing data that demonstrated that the conditions under which the study was run realistically reflected real-world conditions." *Id*. at ¶ 55. By proffering this latter opinion, Gwinnell is necessarily testifying about the propriety of the actual test data, which is a substantive consideration related to the art field of the invention—a field in which he has absolutely no relevant knowledge or experience.

Upon deposing Gwinnell, it became painfully clear that Gwinnell not only does not comprehend the technology about which he is opining, but also does not understand the nuances of reexamination proceedings or the distinctions in types of prior art considered during those proceedings, all of which requires exclusion of his opinions. Even if he did have the necessary understanding, his opinions are still nothing more than legal argument, and thus excludable on that basis, alone.

**A.    Gwinnell admits he has no experience in the relevant technical art.**

Gwinnell is a chemist with legal training, and his experience is in relation to chemical patent applications, which has nothing to do with dual flush valve assemblies. Ex. 1 at ¶ 1; Gwinnell Dep., attached hereto as Exhibit 2, at 7:10-12, 12:18-21, 15:17-19 and 15:23-16:3. During his deposition, Gwinnell admits he has no experience at the Patent Office in the art unit where the '635 patent was examined. Ex. 2 at 11:21-12:3; 15:17-22. He is substantively not qualified in the technical area of the '635 patent.

**B.    Gwinnell admits he has no experience with reexamination proceedings.**

As a matter of undisputable fact, reexamination proceedings did not become an available procedural mechanism in the U.S. Patent and Trademark Office until passage of the Patent and

Trademark Law Amendments Act of 1980, which is also known as the Bayh-Dole Act. *See* Pub. L. No. 96-517, 94 Stat. 3015, 69331 (1980). Gwinnell left the Patent Office in 1978. Ex. 1 at ¶ 2; Ex. 2 at 13:24. *See also* Ex. 2 at 28:4-22 (Gwinnell could not remember if he had ever been involved in a reexamination proceeding as an Examiner). As a result, Gwinnell had **no** involvement as an Examiner with reexamination proceedings, and thus his experience as an Examiner is irrelevant to the subject matter of his testimony. Moreover, Gwinnell has never filed for a patent reexamination or directly experienced the circumstances of reexamination about which he is claiming to offer an expert opinion. *Id.* at 28:4-22, 29:2-4 and 63:3-10. The vast majority of Gwinnell's career has been spent in a corporate IP department. *Id.* at 18:14-16. Thus, Gwinnell possesses no basis of specialized knowledge upon which to draw as it pertains to reexamination procedure.

**C. Gwinnell admits he does not know the facts or the legal arguments at issue, even though he is offering opinions on the same.**

Not only does Gwinnell readily concede he lacks the skill and experience in the relevant technical art and reexamination procedures, but also he admits he is unfamiliar with the full scope of facts and legal argument at issue in this case, even though his opinions make sweeping generalizations about them. For example, Gwinnell purports to opine on invalidity, even though he openly acknowledges he does not know the full scope of Zurn's invalidity defenses. Ex. 2 at 49:7-15 and 60:4-61:1, and that such knowledge could impact his opinions. *Id.* at 60:17-61:1. Further, Gwinnell did not consider how the claims of the '635 patent were narrowed post-reexamination, *id.* at 86:12-15, even though such changes in the claim language can affect a determination of willfulness.

Perhaps most egregious, Gwinnell references life cycle testing in his expert report (*e.g.*, Ex. 1 at ¶ 52) and goes on to opine on the quality of the testing (*id.* at ¶ 55), but admits he has no

idea what life cycle testing is. Ex. 2 at 81:20-24 ("Q. Okay. Let me ask it this way. Was a flush valve handle that had been life cycle tested by Mr. Funari part of the 2009 opinion? A. Yes, but I never did understand what life cycle testing meant."). Nonetheless, Gwinnell opines on whether reliance on such life cycle testing was appropriate from a willfulness perspective, stating, "…where the Opinion did not rely on any records or testing data that demonstrated the conditions under which the study was run realistically reflected real-world conditions", such reliance was objectively and subjectively reckless. Ex. 1 at ¶ 55.

> **D.     Gwinnell admits he is offering only legal argument.**

Gwinnell concedes his opinions consist of no new facts whatsoever that are not already of record. Ex. 2 at 64:5-7. The bulk of Gwinnell's report is merely his recitation (but not quotation) of other factual matter available to the Court and fact-finder directly from other witnesses or documents produced in this litigation. *See* Ex. 1 at ¶¶ 15-29 (outlining what the opinion of counsel provides); ¶¶ 30-42 (identifying factual information from the reexamination proceeding file and quoting language from documents pertaining to same); and ¶¶ 43-53 (restating, but not quoting, testimony from the Reznick and Funari depositions). Gwinnell acknowledges that all he is offering in his testimony is legal opinion. Ex. 2 at 64:5-21, 41:11-16, 46:21-23 and 47:2-6. Moreover, Gwinnell concedes his proposed testimony can be equally covered in the closing argument of Sloan's trial counsel, and his opinions are not entitled to any more weight than Sloan's litigation counsel. *Id*. at 74:1-13 and 74:24-75:8.

### III.    LEGAL STANDARDS FOR *DAUBERT* AND ADMISSIBILITY

Trial judges are gatekeepers assessing the admissibility of expert testimony from both a relevance and reliability standpoint. *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008); *Bone Care Int'l LLC v. Pentech Pharms., Inc.*, Case No. 08-CV-1083,

2010 U.S. Dist. LEXIS 105118, at *5 (N.D. Ill. Oct. 1, 2010).[2]  Federal Rule of Evidence 702

provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training or education may testify in the form of an
> opinion or otherwise if (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is
> the product of reliable principles and methods; and (d) the expert
> has reliably applied the principles and methods to the facts of the
> case.

While often discussed in terms of "scientific" expert testimony, this standard applies to all expert

testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)

Under *Daubert*, the trial court assesses whether the proposed expert's testimony reflects

valid scientific knowledge, ruling out subjective belief and unsupported speculation, and then

determines whether the evidence or testimony will assist the trier of fact in understanding the

evidence or determining a fact in issue.  *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir.

2002).  The analytical factors are flexible.  *Daubert* sets forth a non-exhaustive list of guideposts

to consult in assessing the reliability of expert testimony, including: (1) whether the scientific

theory can be or has been tested; (2) whether the theory has been subjected to peer review and

publication; and (3) whether the theory has been generally accepted in the relevant scientific,

technical or professional community.  *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817

(7th Cir. 2010) (*citing Daubert*, 509 U.S. at 593-594).

In addition, the 2000 Advisory Committee's notes to Rule 702 of the Federal Rules of

Evidence identify additional benchmarks for gauging testimony, including whether the testimony

relates to matters growing naturally and directly out of research the proposed expert has

conducted independent of the litigation; whether the proposed expert has developed opinions

---

[2] Copies of cited authorities only published on electronic databases are attached hereto as Exhibit 3.

expressly for purposes of testifying; whether the expert has adequately accounted for obvious alternative explanations; and whether the expert is being as careful as he or she would be in his or her regular professional work outside of his or her paid litigation consulting. *Id*. (citations omitted). Nothing, however, requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert; "[i]n other words, 'an expert who supplied nothing but a bottom line supplies nothing of value to the judicial process." *Bone Care*, 2010 U.S. Dist. LEXIS 105118, at *9 (citations omitted).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

Where a patent lawyer is offered to testify on issues pertaining to infringement or validity of a patent, that expert must be a person of ordinary skill in the art in the technical art area of the patent to offer any potentially useful opinion to the jury. *See Sundance*, 550 F.3d at 1362, 1363 ("it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfrngement or invalidity unless that witness is qualified as an expert in the pertinent art."). The Federal Circuit in *Sundance* concluded:

> [a]llowing a patent law expert without any technical expertise to testify on the issues of infringement and validity amounts to nothing more than advocacy from the witness stand … A technically unqualified patent attorney can do much mischief by leading the jury to seemingly sound conclusions without ever providing a well-grounded factual basis in the pertinent art.

*Id.* at 1364-65 and n. 8. *See also Synthes USA, LLC v. Spinal Kinetics, Inc*., No. C-09-01201 RMW, 2011 U.S. Dist. LEXIS 93093 at *22-23 (N.D. Cal. Aug. 19, 2011) (holding it is not

enough that proposed patent law expert seeking to offer testimony on prior art based invalidity defenses spoke to technical expert, and recognizing, "Courts have generally 'condemned the practice of attempting to introduce law as evidence.'" in deciding to strike both technical-related testimony and statements of law) (citation omitted).

Perhaps the most important role of a Court in assessing the propriety of a legal expert is ensuring that the testimony of the patent law expert does not usurp the role of either the judge as the instruction-giver, or the jury as the fact-finder. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) ("the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent [in rendering a decision on the objective recklessness prong of a willfulness determination] should always be decided as a matter of law by the judge"); *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) ("Indeed, this court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide."); *Se-Kure Controls, Inc. v. Diam USA, Inc.*, No. 06 C 4857, 2009 U.S. Dist. LEXIS 1648, at *7 (N.D. Ill. Jan. 9, 2009) ("It is a basic principle that the duty of the district court is to explain the law. Testimony by a witness, therefore is limited to opinions based on facts, but may not include legal conclusions."); *Bone Care*, 2010 U.S. Dist. LEXIS 105118, at *43-44 (testimony regarding conclusions of law is excludable); *Bausch & Lomb, Inc. v. Alcon Labs.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000) ("Simply put, testimony that is designed to instruct the jury on the applicable law is not admissible because, by purporting to do what lies with the exclusive province of the court, it cannot be helpful to the jury."); *Wellbutrin Sr Antitrust Litig.*, Civ. A. No. 04-5525, et al., 2010 U.S. Dist. LEXIS

144271, at *13 (E.D. Pa. 2010) ("In other words, district courts have discretion to allow legal expert testimony where it would be helpful for the trier of fact to 'understand the evidence', but they cannot allow experts to explain the law.") (citations omitted); *VIM Inc. v. Somerset Hotel Ass'n,* 19 F. Supp. 2d 422, 427, n. 4 (W.D. Pa. 1998) (in antitrust case, recognizing objective baselessness is not the sort of issue that lends itself to expert testimony under Fed. R. Ev. 702, holding, "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts") (citation omitted).

Of particular import to the propriety of the Gwinnell report, courts have held objective recklessness for willfulness determinations is not an appropriate subject for legal expert opinion testimony. *See, e.g.*, *Inventio AG v. Otis Elevator Co*., No. 06 Civ. 5377 (CM), 2011 U.S. Dist. LEXIS 88965, at *5-6 (S.D.N.Y. Jun. 23, 2011). In *Inventio*, the Court granted a motion to exclude testimony of a proposed patent law expert on the topic of objective recklessness, stating:

> I do not allow lawyers other than myself to explain the law to the jury, no matter their credentials. Otis can submit proposed jury instructions and I will consider them; [the proposed patent law expert] can of course help Otis craft jury instructions. But, in my courtroom, no one testifies about the law, and no one interprets my opinions for the jury.

The Court further rejected the proposed patent law expert's attempt to opine on the significance of Inventio's failure to move for a preliminary injunction as a signal that the patent holder does not believe there to be an objectively high likelihood of infringement:

> Otis can argue to the jurors that they can consider that fact (*i.e*., the fact of failure to move for injunctive relief), as some evidence of Inventio's state of mind. But Otis cannot elicit – from its own "attorney expert," no less – what "must have been" Inventio's state of mind when it did or did not take this or that action in connection with this lawsuit.

*Id*. at *6. In sum, even the most "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are

reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Clark v. Takata Corp.*, 192 F.3d 750, 759, n. 5 (7th Cir. 1999).

IV.   **ARGUMENT**

   A.   **Gwinnell's testimony is irrelevant and improper as it provides mere legal argument.**

Where an expert invades the province of the fact-finder by attempting to cloak conclusions of law as testimony, such testimony is not proper, and should be excluded. *U.S. v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("[u]nless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403"); *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) ("[E]xpert witnesses are not allowed to sort out possible conflicting testimony or to argue the implication of those inconsistencies.  That is the role of the lawyer, and it [is] for the jury to draw its own conclusions from the testimony it hears").  Here, Gwinnell openly admits that he is advocating from the witness stand.   He is offering statements of law, and not fact, and is proposing to testify as to the application of law to those facts:

> Q.   Do you intend to testify in this matter as to the applicable law in this case on one or more issues?
>
> MR. BERTA: Object to the form.
>
> A.   Yes.  Yes.

Ex. 2 at 41:11-16.  *See also id*. at 47:2-6.  As an initial matter, testimony regarding objective recklessness (*see* Ex. 1 at ¶¶ 54-55) is entirely improper as that is a matter purely for the Court's determination.  Indeed, Gwinnell's own report cites the *Bard Peripheral* decision recognizing that the question of objective recklessness should be decided by the Court.  *See* Ex. 1 at ¶ 13.

On the issue of subjective recklessness, any opinion by Gwinnell invades the province of the jury, as the jury is the proper entity to apply the facts to the law as provided by the Court, not

the law as provided by Gwinnell. *SDI v. CSC*, 09 C 4008, 2012 WL 3292819, *3 (N.D. Ill. Aug 10, 2012) ("summarizing evidence that is favorable to [their party] to sort out possible conflicting testimony or to argue the implication of those inconsistencies" is not proper expert testimony); *Aponte v. City of Chicago*, No. 09-cv-8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."); *Jordan v. City of Chicago*, 08 C 6902, 2012 WL 254243, at *8 (N.D. Ill. Jan. 27, 2012) (bottom line conclusion does not help the jury and is not proper expert testimony). Here, Gwinnell does not provide any unique insight based on experience or practice. Rather, the report regurgitates factual information that will no doubt be presented to the jury and then, in two paragraphs, summarily opines that such evidence establishes the objective and subjective recklessness prongs of the willfulness analysis. Such conclusory testimony is improper and should be excluded.

**B.      Gwinnell has no expertise in regard to the reexamination proceedings on which he is attempting to testify.**

Nowhere in Gwinnell's report or testimony does Gwinnell provide any summary of reexamination procedures whatsoever. This is not surprising given Gwinnell's lack of experience in reexamination proceedings. Gwinnell has never participated in a reexamination proceeding as an Examiner or active participant such that he has no experience or expertise. Without the relevant experience upon which to base his testimony, Gwinnell's testimony is not proper because it is not relevant and does not meet the foundational criteria required to admit expert testimony. *See Davis*, 277 F.R.D. at 368 ("Stephen Hawking would be a stunning witness in a case involving theoretical physics, but would never see the light of day in an accounting malpractice case."). Gwinnell does not possess the requisite knowledge or experience to testify

11

regarding reexamination proceedings and what was or was not considered during the proceeding. Accordingly, he has no basis to testify regarding what impact such proceedings have as to a willfulness analysis.

### C. Gwinnell's testimony is flat out incorrect on the current state of the law regarding willfulness and reexamination.

Not only does Gwinnell lack experience, but also he does not know the law regarding reexamination procedures. Gwinnell's lack of knowledge and experience is demonstrated by his attempt to conflate different types of prior art in a muddled analysis of what is proper evidence in a reexamination proceeding. Where the focus of testimony from a legal expert relates to purely procedural legal matters, the testimony must be accurate to have any value. Here, the testimony is not purely procedural, but even if it were, it is not accurate. Expert testimony is not reliable— and thus not admissible—unless it is based upon a correct application of the law. *See, e.g.*, *Herbert*, 99 F.3d at 1117. Here, it is a matter beyond dispute that only printed publication varieties of prior art references are capable of being submitted during a reexamination proceeding. Gwinnell does not dispute this point. *See* Ex. 2 at 53:11-16. Gwinnell testifies:

> Q.    And again, as we discussed earlier, prior public use is a variety of prior art on which a patent may be invalidated?
>
> A.    It's – right. It's a basis on which a patent may be invalidated, yes.
>
> Q.    But it's not one on which a patent may be invalidated via re-examination proceeding in the U.S. Patent Office?
>
> MR. BERTA: Asked and Answered.
>
> A.    A public use, no.

*Id*. at 51:12-22. Here, Zurn's attorneys filed a request for reexamination of the '635 patent citing certain printed prior art patents. In its contentions, Zurn alleged that the asserted claims are also (and separately) invalid in view of certain prior art product specimens, which were never

considered during reexamination because reexamination can only be based on printed publications. Thus, evidence relating to actual use of a product and the wear that is revealed with life cycle testing is not evidence admissible during a reexamination proceeding. Period.

Moreover, there is no requirement that an opinion of counsel be obtained after reexamination in these circumstances, and any claim that, as a matter of law, such additional opinion is required is not correct. *See E.I. DuPont De Nemours and Co. v. Monsanto Co.*, 903 F. Supp. 680, 743 (D. Del. 1995) ("…the Court rejects DuPont's argument that BASF had a duty to obtain an updated opinion of counsel following the two reexaminations of the [ ] patent. BASF, like Monsanto, has vigorously pursued its challenges to the validity of the [] patent in this litigation, and, as above, the Court believes that its arguments have some merit. Accordingly, the Court finds that BASF had a good faith belief that the [ ] patent was invalid.").

Gwinnell, however, misconstrues this very real limitation on evidence in reexamination proceedings (or fails to recognize this key difference) and argues that somehow through what he terms an "inherency" argument, the same evidence underlying the life cycle testing was considered during the reexamination. *Id.* at 83:10-84:3. Not only is his "opinion" pure attorney argument, but also it is demonstrably incorrect based on the fundamental evidentiary standards of a reexamination proceeding.

Secondly, Gwinnell's understanding of how a willfulness determination occurs is not accurate, and thus will be unhelpful to a jury. *See, e.g.*, *id.* at 76:10-78:4. Accordingly, Gwinnell should not be permitted to offer testimony on the willfulness standard, either.

      **D.**     **Gwinnell is not a person of ordinary skill in the art sufficient to opine on any issues pertaining to infringement or invalidity defenses, and in particular, cannot assess what is reasonable testing data in the relevant field of art for purposes of making any assessment related to invalidity.**

Gwinnell's opinion regarding the sufficiency of life cycle testing is unreliable, not based on any specific knowledge or skill, and constitutes classic bootstrapping of other testimony or argument that Plaintiff is likely to offer. Gwinnell concedes he does not even understand what life cycle testing is, yet he proceeds to claim that the life cycle testing performed was inadequate. Gwinnell states:

- He "never did understand what life cycle testing meant." Ex. 2 at 81:23-24;

- He never asked anyone what life cycle testing is. *Id*. at 82:1-3;

- He did not find any information that helped him to understand what life cycle testing is. *Id*. at 87:17-23

Accordingly, not only based on his demonstrated lack of any training in the art field, his admissions specifically as to life cycle testing render any opinion relating to life cycle testing improper. Indeed, Gwinnell eventually admits his opinion on the topic is worthless:

> Q.    So then, you, yourself really would have no idea what would or wouldn't be a realis – a realistic set of real world conditions under which to run a life cycle test?
>
> A.    No.

*Id*. at 87:24-88:4. If Gwinnell does not know what life cycle testing is, he cannot assess the adequacy of such testing, and he certainly cannot assess whether it was proper to rely on such testing in order to make any assessments regarding willful infringement.

**V.** **CONCLUSION**

For all of these reasons, Defendants hereby move to exclude the opinions and testimony of Gwinnell.

Dated: June 10, 2013                    /s/ John W. McIlvaine
                                        _____

                                        John W. McIlvaine (*admitted Pro Hac Vice*)
                                        Thomas C. Wolski (*admitted Pro Hac Vice*)
                                        Cecilia R. Dickson (*admitted Pro Hac Vice*)
                                        Steven M. Johnston (*admitted Pro Hac Vice*)
                                        sloanvzurn@webblaw.com

                                        **THE WEBB LAW FIRM, P.C.**
                                        One Gateway Center
                                        420 Ft. Duquesne Blvd., Suite 1200
                                        Pittsburgh, PA 15222
                                        Telephone: (412) 471-8815
                                        Facsimile: (412) 471-4094

                                        Nicole M. Murray
                                        nicole.murray@quarles.com
                                        John E. Conour
                                        john.conour@quarles.com
                                        **QUARLES & BRADY LLP**
                                        300 N. LaSalle St., Suite 4000
                                        Chicago, IL 60654
                                        Telephone: (312) 715-5000
                                        Facsimile: (312) 715-5155

                                        David R. Cross
                                        david.cross@quarles.com
                                        Patrick J. Murphy
                                        patrick.murphy@quarles.com
                                        **QUARLES & BRADY LLP**
                                        411 E. Wisconsin Avenue, Suite 2040
                                        Milwaukee, WI 53202
                                        Telephone: (414) 277-5000
                                        Facsimile: (414) 271-3552

                                        **Attorney for Defendants, Zurn Industries, Inc.
                                        and Zurn Industries, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, I electronically filed the DEFENDANTS'
MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF
HARRY J. GWINNELL with the Clerk of the Court using the CM/ECF system, which will send
an electronic copy of the foregoing to counsel of record and constitutes service under Federal
Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

Jason A. Berta (6295888)
Scott R. Kaspar (6284921)
Lisa M. Noller (6229957)
Daniel W. Werly (6301164)

**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700

Richard S. Florsheim (admitted *pro hac vice*)

**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: 414.271.2400
Facsimile: 414.297.4900

/s/ John W. McIlvaine
Attorney for Defendants, Zurn Industries, Inc. and
Zurn Industries, LLC