# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 204 | **DATE** | 6/19/2013 |
| **CASE TITLE** | Sloan Valve Co vs. Zurn Industries, Inc et al. | | |

**DOCKET ENTRY TEXT**

Defendants' motion to strike Sloan's Reply Report and for Leave to Amend Zurn's Expert Report [500] is granted in part and denied in part.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Zurn Industries, Inc. and Zurn Industries, LLC. (collectively, "Zurn") have moved the Court to strike the supplemental expert report of Richard F. Bero, Sloan Valve Company's ("Sloan") expert report. They also seek leave to amend the expert report of Ivan Hofmann, Zurn's own expert. The motion is granted in part and denied in part.

## BACKGROUND

This case concerns U.S. Patent No. 7,607, 635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent" or the "Wilson Patent"), and the corresponding U.S. Patent Application Publication No. 2006/0151729 (the "Published Wilson Patent Application"). On January 13, 2010, Sloan commenced this action against Zurn seeking (a) damages and injunctive relief for Zurn's alleged infringement of the '635 Patent; and (b) provisional damages for Zurn's alleged making, sale, and use of inventions that the Published Wilson Patent Application covers. On December 13, 2012, the Court entered an Agreed Amended Scheduling Order that provided for the following expert discovery deadlines: initial expert reports due by January 28, 2013, rebuttal expert reports by March 4, 2013, and reply expert reports due by April 1, 2013.[1] (R. 443.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

---

[1] The parties first proposed a deadline for Reply expert reports in their sixth Agreed Amended Scheduling Order, entered by the Court on December 13, 2012. (R. 443.)

On January 28, 2013, Sloan served Zurn with the report of its damages expert Richard F. Bero (the "Initial Report"). The report consisted of approximately sixty pages of text and over one hundred pages of additional schedules. On March 8, 2013, Zurn served Sloan with the report of its expert, Dr. Ericksen, a statistician and survey expert. The report of Zurn's damages expert, Ivan Hofmann, was also served on Sloan. On April 5, 2013, Sloan served Bero's reply damages expert report on Zurn ("Reply Report"). Zurn contends that this Reply Report improperly presents new arguments that the Court should strike. Specifically, Zurn argues that the following arguments are new and should be stricken: 1) Bero's calculation of damages based on the "unweighted rations" rather than the "weighted ratios" used in the Initial Report; 2) Bero's addition of "an entirely new Schedule 20.0, which is yet another, alternative collateral sales ratio calculation based on Sloan's previously available sales data": and 3) Bero's "revised and increased estimate of Sloan's incremental costs" based on the inclusion of Sloan's freight-out and scrap costs which were included for the first time in the Reply Report. In addition, Zurn seeks leave to amend Mr. Hofmann's expert report. The Court will address each argument in turn.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) governs expert discovery. Rule 26(a)(2)(b)(i) requires a party to disclose to the other parties a written report of a retained expert that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P.26(a)(2)(b)( i). An expert rebuttal report is designed to "contradict or rebut evidence" disclosed in the initial expert report. FedR.Civ.P. 26(a)(2)(D)(ii). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 630 (7th Cir. 2008). *See also Butler v. Sears Roebuck & Co.*, No. 06-7023, 2010 WL 2697601, at * 1, (N.D. Ill. July 7, 2010). Although the Rules do not expressly provide for reply expert reports, the parties agreed to such reports in this case. (R. 443.) Similar to reply briefs, advocates cannot advance new arguments for the first time in a reply expert report. Experts must limit their reply reports to the scope of the issues raised in the rebuttal reports. The reply report is not the appropriate vehicle for presenting new opinions.

Local Patent Rule 5.3 provides:

Amendments or supplementation to expert reports after the deadlines provided herein are presumptively prejudicial and shall not be allowed absent prior leave of court upon a showing of good cause that the amendment or supplementation could not reasonably have been made earlier and that the opposing party is not unfairly prejudiced.

L.P.R. 5.3. The Rule provides for a presumption against supplementation of expert reports after the deadlines. In order to supplement an expert report after the disclosure deadlines provided for in the Local Patent Rules, a party must obtain prior leave of court, show good cause that it could not have made the supplement earlier, and establish that the opposing party will not suffer undue prejudice from the supplementation. Federal Rule of Civil Procedure 26(e) also provides for supplementation of expert reports. "Although Fed.R.Civ.P. 26(e) requires a party to supplement or correct disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset)." *Allgood v. Gen. Motors Corp.*, No. 02 C 1077, 2007 WL 647496, at **3-4 (S.D. Ind. Feb. 2, 2007) (citations and quotations omitted).

## ANALYSIS

I. **Bero's Reply Report**

    A. **Weighted v. Unweighted Ratios**

In his Initial Report, Bero calculated damages based on collateral unit sales ratios, and included both the weighted and unweighted ratios of the total number of collateral units – toilet valves, urinal valves and faucets – in sites investigated by Quest Consultants. Although Mr. Bero included both ratios, he used the weighted ratios as the basis of his collateral sales damages calculation "since use of the weighted ratios appears to represent a more accurate approximation for the ratios of collateral products to manual dual-flush valves." (R. 507, Ex. A, Bero Initial Report at 30.) According to Bero, "the un-weighted ratios simply use the investigated bathrooms and ignore the size differences of the projects." (*Id.*) In response to the Initial Report, Zurn's expert criticized the use of the weighted ratios. Consequently, in his Reply Report, Bero opined "whether one uses weighted or unweighted averages makes little difference." (R. 507-1, Ex. B, Bero Reply Report at 34.) Using the same unweighted numbers he included in his Initial Report, Bero calculated the collateral profit per value using both the weighted (as he had in his Initial Report) and the unweighted ratios to demonstrate that "whether one uses weighted or unweighted averages makes little difference." (*Id.* at 34.) His Reply Report still contains the calculations based on the weighted averages as well. Thus, rather than offering a new opinion and changing the basis for the calculation of the collateral unit sales, Mr. Bero included the calculation based on the unweighted ratios to refute Mr. Hofmann's criticisms. This calculation is responsive to the criticism and proper for Bero's Reply Report.

    B. **Estimation of Incremental Costs**

Zurn further argues that the Court should strike Mr. Bero's revised and increased estimate of incremental costs. Notably, Zurn does not contest that it failed to produce any incremental costs data for manual dual flush valve sales. Bero, therefore, relied on Sloan's incremental costs data to approximate Zurn's incremental costs. Unlike Zurn, Sloan ordinarily does not include freight out and scrap costs in its incremental costs. After including this data in his Initial Report, Mr. Hofmann criticized Mr.Bero for not including Zurn's incremental freight out and scrap costs in his Initial Report. Mr. Bero thereafter added them in his Reply Report. In his Reply Report, Bero notes that he conducted "additional investigation of Sloan's costs" after Hofmann criticized his Initial Report and after Zurn provided them. Based on this investigation, Bero noted in his Reply Report:

> I understand that in addition to Sloan's incremental costs identified in the Bero Report, the only two additional Sloan costs that potentially could be considered incremental that Sloan does not already include in its incremental costs are scrap costs and freight-out costs. These scrap and freight-out costs have both historically been approximately 1%-2% of Sloan's net sales. For purposes of my analysis, I include 4% additional incremental costs to account for the scrap and freight-out costs on the sales of Sloan's valves, packages, handles, collateral products and diaphragms."

(R. 507, Ex. B, Bero Reply Report at 39-40.) Mr. Bero then updates his royalty quantifications to incorporate the incremental freight-out and scrap costs. (*Id.* at 54.)

Zurn appears to back away from its challenge to this aspect of Mr. Bero's Reply Report because it does not address this issue in its Reply brief. Given Zurn's failure to produce the freight out and scrap costs data in the first instance, the Court will not strike this aspect of Bero's Reply Report. His opinion is also directly responsive to Mr. Hofmann's criticism.

### C. Schedule 20.0

Next, Zurn criticizes Bero's inclusion of Schedule 20.0 in his Reply Report. According to Zurn, this Schedule is "sandbagging" because it presents a new and "deeply flawed approach to calculating Sloan's alleged damages for collateral sales." (R. 500 at 4; R. 516 at 2.)

Schedule 20.0 is entitled "Rational analysis based on Sloan Valve overall." Sloan contends that this Schedule responds to Mr. Hofmann's concerns regarding the adequacy of the underlying Quest investigation upon which Sloan relies for damages data in that it "summarizes the convoyed sales for all Sloan flushometers sold in 2010 and 2011." (R. 509 at 4.) Sloan's only defense of Schedule 20.0 is one line in its Response that references Schedule 20.0 and notes that "Bero also refuted Hofmann's criticism by noting that the overall ratio of flushometer sales to both urinal valves and faucets (*i.e.*, the convoyed products) was consistent with the unweighted rations resulting from the Quest investigation." (*Id.* at 9.) Sloan does not contest that Schedule 20.0 is a new, alternative collateral sales calculation for sales that Sloan and Zurn would have expected in 2006 while conducting a hypothetical negotiation for a license. In addition, Sloan does not challenge Zurn's assertion that Sloan had access to all of the data at issue in Schedule 20.0 before Bero completed his Initial Report.

Based on the submissions, Zurn has established that Schedule 20.0 is a new opinion regarding damages and thus not appropriate for the Reply Report. Accordingly, the Court strikes Schedule 20.0 from the Reply Report.

## II. Hoffman's Proposed Supplemental Report

In addition, Zurn seeks permission under Local Rule 5.3 for its expert Ivan Hofmann to file a supplemental report 1) to address Bero's arguments in his Reply Report; and 2) "to correct an inadvertent error in his calculations." (R. 500 at 5.) Zurn's request is denied.

The Court will not permit Zurn to supplement Mr. Hofmann's report to address Mr. Bero's arguments in his Reply Report. The Court has struck Mr. Bero's Schedule 20.0, thus Zurn's arguments regarding this document are moot. Because the other arguments in Bero's Reply Report are responsive to Mr. Hofmann's rebuttal report as noted above, Zurn does not have the right to supplement Mr. Hofmann's report to address them.

Zurn also seeks to supplement Mr. Hofmann's report regarding an "inadvertent error in the way Mr. Hofmann had presented Zurn's revenues." Zurn claims that Mr. Hofmann presented Zurn's revenues in his March 8 report based on how they appeared in Bero's Initial Report "for comparability purposes." Bero's Initial Report included an approximate six percent reduction of revenues to reflect certain discounts included in Zurn's cost data. Zurn claims that Mr. Bero's accounting for this reduction "was revealed only in footnotes located on pages 159, 166, and 172" of his Initial Report, thus Hoffmann missed it when he prepared his report. Significantly, Zurn's own data would have revealed the numbers that Zurn now wants Mr. Hoffman to include in a supplemental report, yet he elected not to include them. In addition, Zurn learned of Mr. Hoffman's mistake at his deposition on April 3, 2013, yet waited approximately one month before raising it with the Court. Rule 26(e) provides for the supplementation of expert disclosures to correct any errors in a timely manner. It does not, however, permit an expert to correct mistakes based on information that was available to the expert well in advance of the issuance of his report. *Stuhlmacher v. Home Depot USA, Inc.*, No. 07 C 1035, 2012 WL 5866297, at *2, (N.D. Ind. Nov. 19, 2012). Contrary to Zurn's representation, Mr. Hofmann's error is more than just a mathematical – he elected to rely on Sloan's expert's numbers and failed to understand them. Zurn has not established good cause to supplement Mr. Hofmann's report.

## CONCLUSION

Zurn's Motion to Strike Sloan's Reply Report and for Leave to Amend Zurn's Expert Report is granted in part and denied in part.