# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SLOAN VALVE COMPANY,         )
                                 )
                Plaintiff,   )
     vs.                   )
                                 )
ZURN INDUSTRIES, INC., and ZURN   )
INDUSTRIES, LLC,              )
                                 )
             Defendants.   )
                                 )

Case No. 10-cv-00204

Judge Amy J. St. Eve

Magistrate Judge Sidney I. Schenkier

## DEFENDANTS' MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF JULIUS BALLANCO

**TABLE OF CONENTS**

I.      INTRODUCTION ...............................................................................................1

II.     RELEVANT FACTUAL BACKGROUND.....................................................2

        A.      Ballanco Explicitly Disavowed Ballanco I And The Methodology And Test
                Data Relied On Therein ......................................................................3

        B.      Ballanco II Builds its Opinions On The Wrong Claim Construction ...............3

III.    LEGAL STANDARDS FOR *DAUBERT* AND ADMISSIBILITY...................................5

IV.     ARGUMENT ....................................................................................................8

        A.      Ballanco I Opinions Regarding Plunger Travel Should Be Excluded..............8

        B.      Ballanco Cannot Advance A Claim Construction At Odds With This Court's
                Order ........................................................................................................9

        C.      Ballanco Is Not Qualified To Testify Regarding Price Erosion .....................13

V.      CONCLUSION................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Am. Honda Motor Co., Inc. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ............................................................6

*Ammons v. Aramark Unif. Servs.*,
   368 F.3d 809 (7th Cir. 2004) ............................................................8

*Bicon, Inc. v. The Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006) .........................................................12

*Bone Care Int'l LLC v. Pentech Pharms, Inc.*,
   2010 U.S. Dist. LEXIS 105118 (N.D. Ill. Oct. 1, 2010) ................5, 7

*Chapman v. Maytag Corp.*,
   297 F.3d 682 (7th Cir. 2002) ............................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   43 F.3d 1311 (9th Cir. 1995) .......................................................7, 16

*DePaepe v. GMC*,
   141 F.3d 715 (7th Cir. 1998) ............................................................7

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................16

*Goldberg v. 401 North Wabash Venture, LLC*,
   2013 WL 212912 (N.D. Ill. Jan. 18, 2013) .......................................7

*Isaacs v. Hill's Pet Nutrition, Inc.*,
   2008 WL 820273 (S.D. Ind. Mar. 25, 2008) .....................................8

*Lapsley v. Xtek, Inc.*,
   689 F.3d 802 (7th Cir. 2012) ............................................................6

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) .........................................................10

*Myers v. Ill. Cent. R.R. Co.*,
   629 F.3d 639 (7th Cir. 2010) ............................................................7

*O'Conner v. Commonwealth Edison Co.*,
   13 F.3d 1090 (7th Cir. 1994) ............................................................7

*Se-Kure Controls, Inc. v. Diam USA, Inc.*,
     2009 U.S. Dist. LEXIS 1648 (N.D. Ill. Jan. 9, 2009) ..........................................................7

*Sundance, Inc. v. Demonte Fabricating Ltd.*,
     550 F.3d 1356 (Fed. Cir. 2008)............................................................................................5

**RULES**

Federal Rules of Evidence 702 ...........................................................................................................5

**STATUTES**

35 U.S.C. § 285............................................................................................................................10

## I.     **<u>INTRODUCTION</u>**

Sloan's expert Julius Ballanco served two expert reports purporting to establish how the accused Zurn devices infringe the Patent-In-Suit.  Ballanco explicitly disavowed John Gregor's test data and Ballanco's opinions flowing therefrom that were set forth in his first report as inaccurate and unreliable, and thus such opinions should be excluded.  Ballanco's second report fails to apply this Court's claim construction, and is instead based on a substantively different claim construction.  Finally, Ballanco's opinions regarding price erosion should be excluded because they defy the laws of economics and are not supported by any scientific study or facts.  Ballanco, who is a plumbing expert and not an economist, offers only speculation and conjecture about the theoretical price that Sloan *could* have charged for the Sloan Uppercut® product, but for the existence of the accused devices.  Moreover, Ballanco is asking the Court to take him at his word that both Sloan *and* Zurn purchasers of manual dual flush products would have paid $20 - $30 more per manual dual flush valve without losing a single sale.

To allow Ballanco to testify from the reports "as-is" will authorize Sloan to submit testimony that its expert indicated is not reliable, as well as contradictory testimony built upon the wrong claim construction and speculative damages analysis.  Such testimony will only serve to confuse the jury and prejudice Defendant, who is entitled to know for certain at this late stage of the proceedings exactly what infringement theory Plaintiff will present through this expert and what supporting evidence, if any, is available.  The infringement theory must be based on the Court's claim construction, and any damages purportedly flowing from that infringement likewise requires a proper foundation before presentation to the jury.  For all these reasons, Ballanco's opinions should be excluded and he should not be permitted to testify.

## II.    RELEVANT FACTUAL BACKGROUND

Sloan alleges infringement of U.S. Pat. No. 7,607,635.  *See* Amended and Supplemental Complaint (Dkt. 197).  On January 28, 2013, Sloan served the first Expert Report of Julius Ballanco ("Ballanco I")[1].  This 335-page report indicates that Ballanco intends to offer testimony regarding the alleged infringement of the '635 Patent by the accused products, as well as i) flush volume testing of the Zurn Dual Flush Valve; ii) non-acceptable alternative products; iii) the market for flush valves; and iv) quality control testing of the accused products.  Ex. 1 at 2-3. Ballanco I relies on test data prepared by John Gregor ("Gregor Report")[2].

In an attempt to cure the deficiencies in Ballanco I, Sloan served a second expert report from Ballanco ("Ballanco II") on April 5, 2013.[3]  Ballanco II relies on a new, second set of test data obtained after Sloan served Ballanco I.  This new data was prepared by Sven Bley ("Bley Report").[4]  Ballanco was deposed in connection with both of his reports, first on February 25, 2013 ("Ballanco Dep. I"), attached hereto as Exhibit 5 and then again on May 8, 2013 ("Ballanco Dep. II"), attached hereto as Exhibit 6.  While under oath, Ballanco disavowed the data set forth in Ballanco I.

In Ballanco II, Ballanco adopts a claim construction of the term "axis of plunger travel" that is at odds with the Court's construction, the intrinsic evidence, and the plain and ordinary meaning of the phrase.  Ballanco assumes for the purposes of establishing infringement that "axis of plunger travel" can be interpreted as the axis on which the plunger travels, ***or any***

---

[1] Relevant excerpts are attached hereto as Exhibit 1.  In the interest of reducing unnecessary volume in the filings, a complete copy of the Report is available as Exhibit 38 to Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment, and only excerpts are attached herein.

[2] A complete copy of the Gregor Report is available as Exhibit 40 to Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment, and only excerpts are attached herein as Exhibit 2 to this Motion.

[3] Relevant excerpts are attached hereto as Exhibit 3.  A complete copy of the Report is available as Exhibit 39 to Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment

[4] A complete copy of the Report is attached hereto as Exhibit 4.

***portion thereof***.  This is not this Court's claim construction.  *See* Dkt. 391 at 32.

**A.      Ballanco Explicitly Disavowed Ballanco I And The Methodology And Test Data Relied On Therein**

Ballanco testifies that the original test Made to Measure performed was inaccurate and

that additional testing was required to correct this inaccuracy:

> Q.      So can we assume that the original test Made to Measure reported in its January 2013 report [Ballanco I and Gregor Report] is accurate?
>
> A.      No.
>
> Q.      We can't?
>
> A.      No.
>
> Q.      Why not?
>
> A.      It turns out in my discussion with Mr. Gregor that there was a slight twisting of the bushing and the point they were honing in on has the fixed point moved ever so slightly and that distorted the results at the end as it was extending out.  He indicated, you know, that that's what occurred.
>
> Q.      Did you previously testify that the original plot was accurate to 0.0001. Do you recall testifying to that?
>
> A.      I believe I did. That was my knowledge at the time.
>
> Q.      And you don't believe that that's the case anymore; is that correct?
>
> A.      Well, I was informed otherwise.  There was a question they continued to ask Made to Measure.
>
> Q.      As you sit here today, do you intend to use the data [relied on in your opening expert report] from Made to Measure January 22013 [sic] report to support any of the opinions that you intend to offer?
>
> A.      ***I would prefer to use only the later data which was more accurate and we had the fixed point properly set.***

Exhibit 6 at 460:20-462:6 (emphasis added).

**B.      Ballanco II Builds Its Opinions On The Wrong Claim Construction**

From the outset, Sloan asked the Court to read out the structural limitation "axis of

plunger travel" from the asserted claims.  During the now completed claim construction phase,

Sloan argued that "axis of plunger travel" was not even a proper term for construction, despite

the fact that it is recited in nearly all of the asserted claims. Dkt. 391 at 32. Ballanco I sidesteps the "axis of plunger travel" limitation and defines the term as a function of the bushing passage:

> It is my opinion that the tapered shape of the bushing passage defines two axes of travel for the plunger to follow, depending on the direction of operation of the flush handle. When the handle is pushed down, the plunger tends to follow the upper bushing wall, which is at a substantially horizontal angle, resulting in the plunger traveling along a substantially horizontal axis. Conversely, when the handle is pulled up, the plunger tilts and tends to follow the lower bushing wall, which is at an approximate angle of 0.817°, resulting in the plunger traveling along an axis that is angled downward in relation to the horizontal axis of plunger travel.

Ex. 1 at 84. The Court's Claim Construction Order construes the term "axis of plunger travel" to mean "axis on which the plunger travels," not in terms of the geometry of the bushing passage, but based on the term's plain meaning. Dkt. 391 at 32-34. The Court further held that the phrase "bushing passage defining both a first axis of plunger travel and a second axis of plunger travel which is angled with respect to the first axis of plunger travel" requires no construction. *Id.* The Court's construction of "plunger mounted for sliding and tilting" incorporated this definition of "axis of plunger travel" by construing that term to mean "mounted so the plunger is capable of sliding along the horizontal axis and tilting and sliding along an axis of plunger travel that is at an angle to the horizontal axis." *Id.*

However, in Ballanco II, Ballanco relies on a construction of "axis of plunger travel" to mean axis of plunger travel, ***or any portion thereof***. Ex. 3 at 17-18. This is flat-out not the Court's claim construction. Ballanco, however, bases his infringement analysis on ***his*** claim construction, and not that issued by the Court. Ballanco testifies:

> Q.    So it's your understanding that there could be multiple axes along a complex path?
>
> A.    Could the axes be modified along -- change slightly along a path, yes.
>
> Q.    So there can be more than one axis along a path of plunger travel?

A.    Well, there is an overall general axis that you have and then there's portions of an axis as you go along. Can they vary, yes.

*Q.    I'm trying to gain an understanding of what your understanding of the Court's construction is. Does the Court's construction allow for multiple axes of plunger travel along a complex path?*

*A.    My understanding is that you could evaluate a part of the axis for the path of axis travel of the plunger.*

*Q.    So do I understand you correctly that you can take a look at just a portion of the path of travel and find an axis in that portion and that would satisfy the axis of plunger travel claim limitation, is that your understanding?*

*A.    My understanding is that you can take a part of it and evaluate that as far as the angle of the axis travel or direction of axis travel and evaluate that as part of the path of axis travel.*

*Q.    Okay. And if you found an axis in that portion of the path, would that satisfy the claim limitation of axis of plunger travel in your understanding?*

A.    *If I took a portion of it, yes.*

Ex. 6 at 320:23-322:6 (emphasis added).[5]

## III.    LEGAL STANDARDS FOR *DAUBERT* AND ADMISSIBILITY

Trial judges are gatekeepers assessing the admissibility of expert testimony from both a relevance and reliability standpoint. *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008); *Bone Care Int'l LLC v. Pentech Pharms., Inc.*, Case No. 08-CV-1083, 2010 U.S. Dist. LEXIS 105118, at *5 (N.D. Ill. Oct. 1, 2010).[6]   Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the

---

[5] Of note, Sloan's counsel repeatedly objected to this line of questioning on the grounds that it called for a legal conclusion. *See, e.g.*, Ex. 6 at 316:17-320:4 (Q: Is it correct that the Court did not construe the term [axis of plunger travel] to mean a portion of the plunger travel path which constitutes a straight line?  A: Objection made as calling for a legal conclusion).   However, what Ballanco understood the Court's construction to be, and the assumptions he made regarding the Court's construction in making his infringement analysis, are purely factual in nature.  Ballanco built his theory on the wrong construction. That is not a legal issue, but a factual one.

[6] Copies of cited authorities only published on electronic databases are attached hereto as Exhibit 7.

> evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis – requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony." *Lapsley v. Xtek, Inc*., 689 F.3d 802, 809 (7th Cir. 2012).

Under *Daubert*, the trial court assesses whether the proposed expert's testimony reflects valid scientific knowledge, ruling out subjective belief and unsupported speculation, and then determines whether the evidence or testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Chapman v. Maytag Corp*., 297 F.3d 682, 687 (7th Cir. 2002). The analytical factors are flexible. *Daubert* sets forth a non-exhaustive list of guideposts to consult in assessing the reliability of expert testimony, including: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the relevant scientific, technical or professional community. *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (*citing Daubert*, 509 U.S. at 593-594).

In addition, the 2000 Advisory Committee's notes to Rule 702 of the Federal Rules of Evidence identify additional benchmarks for gauging testimony, including whether the testimony relates to matters growing naturally and directly out of research the proposed expert has conducted independent of the litigation; whether the proposed expert has developed opinions expressly for purposes of testifying; whether the expert has adequately accounted for obvious alternative explanations; and whether the expert is being as careful as he or she would be in his or her regular professional work outside of his or her paid litigation consulting. *Id.* (citations omitted). Nothing, however, requires a district court to admit opinion evidence that is connected

to existing data only by the *ipse dixit* of the expert; "[i]n other words, 'an expert who supplied nothing but a bottom line supplies nothing of value to the judicial process." *Bone Care*, 2010 U.S. Dist. LEXIS 105118, at *9 (citations omitted). Additionally, if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

Speculative testimony is not admissible as expert analysis. *See Goldberg v. 401 North Wabash Venture, LLC*, No. 09 C 6455, 2013 WL 212912, at *3 (N.D. Ill. Jan. 18, 2013) (refusing to admit speculative testimony regarding what conclusions purchasers would or did draw from marketing materials and testimony regarding opposing party's alleged state of mind, and concluding expert testimony unhelpful and unnecessary to the jurors). An expert is not permitted to act as a mind reader and opine that he knows how a party would have acted. *Se-Kure Controls, Inc. v. Diam USA, Inc.*, No. 06 C 4857, 2009 U.S. Dist. LEXIS 1648, at *7 (N.D. Ill. Jan. 9, 2009) (barring testimony regarding intent of or truthfulness of witnesses). *See also DePaepe v. GMC*, 141 F.3d 715, 720 (7th Cir. 1998). In *DePaepe*, the Court held:

> With all respect to the district court, the whole point of *Daubert* is that experts can't "speculate." They need analytically sound bases for their opinions. District courts must be careful to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves. Syson lacked any scientific basis for an opinion about the motives of GM's designers. He could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify *as an expert* that GM had a particular motive. Because Syson did not participate in the deliberations leading to the design of the sun visor, he could not testify as a fact witness on the subject, either.

*Id. See also, e.g.*, *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 816 (7th Cir. 2004) ("a court is expected to reject "any subjective belief or speculation") (citation omitted); *Isaacs v. Hill's Pet Nutrition, Inc.*, No. 1:03-cv-0348-LJM-JMS, 2008 WL 820273, at *2 (S.D. Ind. Mar. 25, 2008) (if an expert testifies concerning a hypothetical, "the hypothetical alternative must itself have an analytically sound basis such that it is more than mere speculation").

## IV.    ARGUMENT

### A.    Ballanco I Opinions Regarding Plunger Travel Should Be Excluded

Ballanco openly acknowledges that Ballanco I relied on inaccurate data that he no longer considers reliable: "Q: Okay. Do you intend to rely on Exhibit 636 or 637 [plunger plot diagrams from Ballanco I] to support any of the opinions that you intend to offer at trial? A. My preference would be to rely on the later data that was done, not on this data. Q. Okay. So – and my question is whether or not you will rely on these or whether we should just focus on the later data? A. *I think it's better to focus on the later data*." Ex. 6 at 464:5-14 (emphasis added).

The old data cannot support Ballanco's opinions because it is inaccurate and thus, unreliable, by Ballanco's own assessment. According to John Gregor's report, the plunger plot diagrams referenced in Ballanco I were prepared by using Pro/Engineer software to output the positional coordinate data of the midpoint of the plunger into two Microsoft Excel spreadsheets,

one for each direction of flush. *See* Ex. 2 at 8. However, the Pro/Engineer software was not identifying the midpoint of the actual plunger; rather, it identified the midpoint of a CAD model of the plunger. *Id.* Ballanco testifies that the methodology used to prepare this CAD model led to inaccuracies and rendered the resulting plot diagrams unreliable:

> Q.  So can we assume that the original test Made to Measure reported in its January 2013 report is accurate?
>
> A.  No.
>
> * * *
>
> Q.  Why not?
>
> A.  It turns out in my discussion with Mr. Gregor that there was a slight twisting of the bushing and the point they were honing in on has the fixed point moved ever so slightly and that distorted the results at the end as it was extending out. He indicated, you know, that that's what occurred.

Ex. 6 at 460:20-461:13. Ballanco should be precluded from presenting anything relating to this CAD Model and plunger plot diagrams referenced in the Gregor Report and Ballanco I as, by his own admission, they are unreliable and inaccurate. As a result, such information is wholly unhelpful to a jury, and indeed, is likely to confuse more than clarify. This significant error in Ballanco I renders the entire report questionable in its accuracy and reliability. However, at a minimum, the opinions in the Gregor Report and Ballanco I should be excluded to the extent they purport to analyze axis of plunger travel and offer any testimony in relation to that analysis.

**B.    <u>Ballanco Cannot Advance A Claim Construction At Odds With This Court's Order</u>**

Ballanco bases his infringement analysis in Ballanco II on a construction of "axis of plunger travel" that is not what was provided by this Court, even though he claims that is what he "remembers" the construction to be:

> Q.  Is it correct that the Court did not construe the term [axis of plunger travel] to mean a portion of the plunger travel path which constitutes a straight line?

MR. FLORSHEIM:    Object as calling for a legal conclusion.  You can answer if you are able.

A.      I don't know what the – I was there at the hearing and I know that the discussion was that it could be a part of the path of travel as being still the axis in which the plunger travels.

Q.      So it can be any arbitrary portion of the path of travel?

MR. FLORSHEIM:    Same objection.  Asks for a legal conclusion.

A.      I really don't – you know, again, I'm only referring to it as an engineer.  So I don't know from – when you get into the legal discussions, I allow the attorneys to do that discussion.

Ex. 6 at 316:17-317:14.  Where, as here, an expert relies on an interpretation of a claim term that is at odds with the Court's construction and the intrinsic evidence, such testimony should be precluded because it is not helpful to the finder of fact.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012).  In *MarcTec*, the Federal Circuit affirmed the grant of summary judgment of non-infringement that issued from the Southern District of Illinois.  After claim construction, Plaintiff proposed an expert to testify regarding infringement who relied on a claim construction that was contrary to the district court's claim construction, and the district court ruled that MarcTec's expert testimony ignored the court's claim construction and thus was irrelevant on the question of infringement and therefore inadmissible under *Daubert*.  *See id.* Thereafter, the district court found, and the Federal Circuit likewise affirmed, a finding that the case was exceptional under 35 U.S.C. § 285 thereby warranting an award of attorneys' fees.

As this Court held in its Claim Construction Order, claim 1 is a representative claim of the '635 Patent.  In pertinent part, claim 1 recites:

> …the bushing passage defining both ***a first axis of plunger travel*** and ***a second axis of plunger travel*** which is angled with respect to the first axis of plunger travel, wherein tilting of the handle in a first direction moves the plunger along ***the first axis of plunger travel providing a first flush volume of water adequate to evacuate solid waste*** and tilting of the handle in a second direction tilts the plunger and moves the plunger along ***the second axis of the plunger travel providing a second flush volume of water adequate to evacuate liquid waste***.

Dkt. 391 at 4 (emphasis added). The asserted claims require two independent axes of plunger travel: a horizontal axis (providing a first flush volume of water adequate to evacuate solid waste,) and an angled axis (providing a second flush volume of water adequate to evacuate liquid waste).[7] Nowhere in the claims is it recited that an "axis of plunger travel" is a complex path, or even that the "axis of plunger travel" is a "best-fit line" that is representative of the entire path the plunger travels, much less that any two points within the plunger travel path constitute an axis of plunger travel. This is likewise nowhere described or shown in the '635 patent specification or drawings. Moreover, the defining attribute of the respective "axis of plunger travel" limitations is that the axes provide differing flush volumes of water depending on whether the axis of plunger travel is a horizontal or an angled one. The asserted claims do not recite "providing a first [full] flush volume" or "providing a second [reduced] flush volume" as independent results, but rather as modifiers of the structural limitations "first [horizontal] axis of plunger travel" and "second [angled] axis of plunger travel", respectively. By definition, *a portion* of a plunger travel path cannot be *an axis of plunger travel* providing a full or reduced flush volume because that portion never causes the full or reduced flush volume. The claims require that the entire axes do so. Thus, the Ballanco construction is not an inconsequential misstatement of the Court's claim construction; rather, it is an entirely new and different construction from that determined by this Court. Ballanco is not free to reject this Court's claim construction determination.

The recitation of "comprising" in the claim prefix does not alter the foregoing analysis.[8]

---

[7] Each of the asserted claims recites a "plunger mounted for sliding and tilting", "tilting the inner end of the plunger", or a "horizontal axis of plunger travel." The Court has construed "plunger mounted for sliding and tilting" and "tilting the inner end of the plunger" to require a horizontal plunger travel axis. *See* Dkt. 391 at 40.

[8] Ballanco contends that statements made by Zurn's counsel at the *Markman* Hearing were an acknowledgement that an axis of plunger travel can be defined by less than the entire plunger travel path.

Even if the asserted claims would read on a device with more than two axes of plunger travel, the claims require a first [horizontal] axis that provides a first [full] flush volume and a second [angled] axis that provides a second [reduced] flush volume. Portions of the plunger's travel path that do not result in a full or reduced flush volume cannot constitute an "axis of plunger travel." Moreover, under Sloan's construction of "axis," each of the claims would be invalid as indefinite because both paths of plunger travel would include horizontal axes of travel and angled axes of travel. *See Magee Dec.* at ¶¶ 18-20, attached hereto as Exhibit 8.

Ballanco's interpretation that any two points on the plunger travel path may define an axis of plunger travel, whether or not the path traveled by the plunger between those two points results in a full or reduced flush volume, would deprive this limitation of all meaning. Such a construction is impermissible. "Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, non-limiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). The Court's construction is clear. An axis of plunger travel is the axis on which the plunger travels, and that entire axis of plunger travel must provide either a full or a reduced flush. Any portion thereof that does not, by itself, effectuate a full or reduced flush volume cannot constitute an axis of plunger travel.

By eschewing the Court's construction in Ballanco II, Ballanco also ignores his own prior testimony that, unless specified otherwise, an axis of plunger travel includes the entire axis.

---

However, it is the Court's construction that controls, regardless of what arguments were advances by the parties in advocating for a particular construction, especially where, as here, the advocated construction was not adopted by the Court.

Ballanco testifies, "Q: So if someone is asking you to put an axis into a product, you would think that only a portion of an entire path has to be an axis? A: No, but a ***portion*** of it would be a ***part of the axis of plunger travel.***" Ex. 6 at 319:16-20. By arguing that the plunger's job is not done until the relief valve clears the plunger, Ballanco is indicating that the plunger must travel the full extent of the axis of plunger travel. *See* Ex. 3 at 15-16 ("the reason that the midpoint graph is cut off after 0.200 inches in the x-direction is because the relief valve clears the plunger by that point and the plunger's job is done."). Ballanco cannot now argue that a portion of the axis of plunger travel (in which the plunger has not completed its job and which does not provide a full or reduced flush volume) constitutes an axis of plunger travel for infringement purposes. Finally, Ballanco II introduces data that is also questionable in its methodology, and thus should be excluded. The CAD model that was prepared by Bley is a markedly inaccurate representation of the accused device on its face. In Bley's CAD model, there is a substantial gap between the blue plunger seal and the bushing. Neither Bley nor Ballanco provide any explanation for the presence of this gap, much less how a machine that is purportedly accurate to within a few thousandths of an inch could generate a model with such an observable disparity. *See* Ex. 8 at ¶ 22.

For all of the foregoing reasons, Ballanco's opinions in Ballanco II relying on an improper interpretation of the Court's construction of "axis of plunger travel" and a shoddy methodology should be excluded and Ballanco should be precluded from testifying as to how the plunger travels in the accused device at trial.

### C.     Ballanco Is Not Qualified To Testify Regarding Price Erosion

In his expert report, Ballanco states, "It is my opinion that, if Zurn had not been able to offer well performing, acceptable manual dual flush handles and manual dual flush valves from

2006 to the present, Sloan would have been able to increase the price of its Uppercut® flush valves and handles by $20-$30 each without any diminishing sales." Ex. 1 at 45. Ballanco testifies that this increase was based on his "thought" and not on any economic study.

> Q. Mr. Ballanco, other than the anecdotal evidence that you mentioned with respect to the 20 or $30 that you believe Sloan could increase the price for its UPPERCUT®, do you have any other basis for that statement?
>
> A. My years of experience in the profession. I've worked in this profession a long time. You know what pricing is and what you can get away with and what you can't get away with. Water conservation is a major concern. So when you can show a savings and a price, ***that was my thought***. I was asked what I thought you could get more and that's the price I -- the differential I came up with.
>
> Q. Did you -- did you conduct any study to determine whether 20 or 30 -- whether Zurn's customers would be willing to pay 20 or $30 more for a manual dual flush?
>
> A. No.
>
> Q. Are you aware of any such study?
>
> A. No.

Ex. 5 at 218:2-22 (emphasis added). When given the opportunity to provide additional support for his "thought", Ballanco refused to identify any individuals to corroborate his opinions:

> Q. You previously testified that you based it on contractors. Do you recall that, your conversations with contractors?
>
> MR. BERTA: Objection. Misstates the testimony.
>
> A. No. I think I clarified that I based it on my experience in the profession and all I had done is spoken to contractors after the fact.
>
> Q. You spoke with contractors after you issued your January report?
>
> A. After I wrote my statement that I did not change. So I wrote that before January and my discussions were after that point in time.
>
> Q. And who were those contractors?
>
> A. I will not tell you who they are.

Ex. 6 at 513:17-514:9. Not only did Ballanco fail to provide any corroborating evidence for his $20-$30 price increase, but also he testified that he had not taken sales of 1.28 gallons per flush

high efficiency toilets ("HET"), a non infringing alternative[9], into account when he "thought" about the price increase. Underlying the need for the robust economic analysis required to prove price erosion, Ballanco testified that he could not evaluate the effect of the HET on the market as he did not have enough information to do so.

> Q.      And wouldn't that [a price increase for manual dual flush products] drive more sales to the HET as it would be a less expensive alternative?

> A.      It's hard to say because HET is not always price driven. It's based on some of the other factors we talked about between the dual flush.

Ex. 5 at 214:19-22.

If Ballanco's failure to conduct an economic analysis was the only error in his price erosion analysis, the Court would be justified in excluding only his opinions on price erosion. However, there are other errors. Ballanco apparently did not discuss pricing issues with Sloan as Ballanco's opinion is contrary to the testimony of John Aykroyd, Sloan's Vice President of Business Development. Aykroyd testifies that Sloan would have to do a study to determine "what the market would bear" before it could determine Sloan's ability to charge more for its manual dual flush product. As a result, Aykroyd could not determine whether a $20 - $30 increase in price would affect Sloan's sales of manual dual flush product:

> Q.      Would you have a difficulty -- if you had been selling at $100, would you have difficulty doing a net increase of $30?

> A.      Again, I would have to take a look at that and it would be dependent on the size of the building and the amount of water savings.

> Q.      You have never looked at that?

> A.      No.

> *  *  *

> Q.      Could you get a $20 premium?

---

[9] Smith Dep. at 56:18-58:21, attached hereto as Exhibit 10; 4/30/2013 Allen Dep. at 44:7-45:20, attached hereto as Exhibit 11.

A.      Possibly.

Q.      How do you know that?

A.      I said "possibly." I would have to do analysis to see what the market would bear.

Q.      Have you done any analysis?

A.      I have not.

Q.      Has anyone at Sloan done an economic analysis of that?

MR. ARNTSEN: Object.  Foundation.

A.      Not that I am aware of.

Aykroyd Dep. Tr. at 72:21-74:9, attached hereto as Exhibit 9.

A court cannot admit evidence "that is connected to the existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Daubert*, 43 F.3d at 1319 (if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts).  A patentee who seeks price erosion damages (a form of lost profits) has the burden of proving that "but for" infringement, (1) it would have sold its product at higher prices *and* (2) the quantity it would have sold at the higher prices.  *Id.* at 1357.  Because "[a]ll markets must respect the law of demand" according to which "consumers will almost always purchase fewer units of a product at a higher price than at a lower price, possibly substituting other products," the patentee "must produce credible economic evidence to show the decrease in sales, if any, that would have occurred at the higher hypothetical price."  *Id.* at 1359.

Ballanco cannot satisfy this burden based simply on his subjective belief that Sloan could have sold its patented products to Zurn's admittedly price-sensitive customers at significantly higher prices without affecting consumer demand – Ballanco has to prove as much with sound

economic evidence. *Id.* Because Ballanco's opinion fails to present any such evidence, his opinions regarding price erosion should be excluded.

## V.    <u>CONCLUSION</u>

For all of these reasons, Defendants hereby move to exclude the opinions and testimony of Julius Ballanco.

Dated: June 10, 2013

/s/ John W. McIlvaine
John W. McIlvaine (*admitted Pro Hac Vice*)
Thomas C. Wolski (*admitted Pro Hac Vice*)
Cecilia R. Dickson (*admitted Pro Hac Vice*)
Steven M. Johnston (*admitted Pro Hac Vice*)
sloanvzurn@webblaw.com

**THE WEBB LAW FIRM, P.C.**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815
Facsimile: (412) 471-4094

Nicole M. Murray
nicole.murray@quarles.com
John E. Conour
john.conour@quarles.com
**QUARLES & BRADY LLP**
300 N. LaSalle St., Suite 4000
Chicago, IL 60654
Telephone: (312) 715-5000
Facsimile: (312) 715-5155

David R. Cross
david.cross@quarles.com
Patrick J. Murphy
patrick.murphy@quarles.com
**QUARLES & BRADY LLP**
411 E. Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202
Telephone: (414) 277-5000
Facsimile: (414) 271-3552

**Attorney for Defendants, Zurn Industries, Inc. and Zurn Industries, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2013, I served the DEFENDANTS' MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF JULIUS BALLANCO on Plaintiff via electronic mail with a courtesy copy to the Court, which constitutes service under the Federal Rules of Civil Procedure.


Jason A. Berta (6295888)
Scott R. Kaspar (6284921)
Lisa M. Noller (6229957)
Daniel W. Werly (6301164)

**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700


Richard S. Florsheim (admitted *pro hac vice*)

**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: 414.271.2400
Facsimile: 414.297.4900


/s/ John W. McIlvaine
Attorney for Defendants, Zurn Industries, Inc. and Zurn Industries, LLC