UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SLOAN VALVE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-00204 |
| vs. | ) | |
| | ) | Judge Amy J. St. Eve |
| ZURN INDUSTRIES, INC., and ZURN | ) | |
| INDUSTRIES, LLC, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DR. RICHARD MAGEE'S EXPERT REPORTS AND TO EXCLUDE HIS CORRESPONDING EXPERT TESTIMONY

Professor Richard Magee, Ph.D. is Zurn's expert on both non-infringement and invalidity (obviousness, best mode, enablement, and written description), and the only experimental data of record pertaining to the operation of the Sloan Uppercut® product and sample prior art flush valves provided by either party was collected under Dr. Magee's direct supervision by Prof. Tsan-Liang Su, Ph.D. This data together with other data underpins Dr. Magee's enablement, written description and obviousness analysis. In its motion, Sloan does not argue that Dr. Magee's opinions regarding non-infringement or best mode should be excluded, that his opinions regarding invalidity is irrelevant, or that the methodology Dr. Magee employed researching the Sloan Uppercut® product and prior art flush valve handles was not scientifically reliable. Sloan's only argument is that Dr. Magee is not a person of ordinary skill in the art ("POSITA"). For the reasons set forth below, Dr. Magee is fully qualified to offer his opinions on invalidity, and Sloan's motion should be denied.

I.  **RELEVANT FACTUAL BACKGROUND**

Zurn retained Dr. Magee and Dr. Su as experts in this case shortly after the Complaint was filed. Dr. Magee received his doctoral degree in mechanical engineering in 1968 and was a professor in the Stevens Institute of Technology's Department of Mechanical Engineering from 1968 to 1986. As a professor at Stevens, Dr. Magee taught courses in mechanics and fluids, which included the basic principles embodied in flushometers. These basic principles include moments and fluid mechanics. Additionally he designed and taught experiments in the fluid mechanics laboratories at Stevens that measure the principles of liquid flow through orifices. *See* Exh. A, *Magee Decl.* at ¶ 2. One of his former students, Julius Ballanco, has been retained as Sloan's expert in this case. Dr. Magee's curriculum vita (*see* Dkt. 546-10 at 26-46) and reflects his considerable experience in the fields of both mechanical engineering and fluid dynamics. Dr. Su's expertise in flush valves, which Sloan does not challenge, is reflected in his curriculum vita (*see id.* at 47-50). Dr. Magee, in consultation with Dr. Su, studied flush valves and their handle assemblies, including prior art handles and the Sloan Uppercut® handle, and to develop and refine the opinions reflected in Dr. Magee's Reports. From 2010 to 2012, Dr. Magee and Dr. Su conducted numerous tests on the accused Zurn devices, the Sloan Uppercut®, and prior art flush valve handles, in order to fully understand how the plungers actually travel in each of these devices, *inter alia*. Video recordings of Dr. Su's preparation of the plunger plot diagrams cited in Dr. Magee's Reports have been produced to Sloan, along with the laboratory notebooks documenting the entirety of their testing.[1] The above research culminated in Dr. Magee's Reports on invalidity and non-infringement served on January 28, 2013, March 8, 2013, and April 5, 2013 (collectively, "Dr. Magee's Reports").

---

[1] *See* Bates Nos. ZP016165-016366; ZP371537-371592; ZP371594-371607.

The principal research questions Dr. Magee and Dr. Su sought to answer were: i) how do the plungers in the various flush valve handles travel, and ii) whether the plungers exhibit a horizontal axis of plunger travel and/or an angled axis of plunger travel. Dr. Magee's conclusions regarding invalidity and non-infringement, and the evidence on which those conclusions are based, are set forth in Dr. Magee's Reports and the exhibits thereto. Sloan does not argue that the experimental results obtained thereby are not scientifically reliable or relevant to the litigation. Rather, Sloan discusses only a single prong of the *Daubert* analysis, namely, that Dr. Magee is unqualified to offer an expert opinion as to invalidity because he is not one of skill in the art of "flush valve technology" in an apparent effort to deny the fact finder access to the experimental test data that Dr. Magee and Dr. Su collected.

## II. ARGUMENT

Trial judges are gatekeepers primarily assessing the admissibility of expert testimony from a relevance and reliability standpoint. *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008); *Bone Care Int'l LLC v. Pentech Pharms., Inc.*, Case No. 08-CV-1083, 2010 WL 3928598, at *1 (N.D. Ill. Oct. 1, 2010).[2] District courts employ a three-part analysis before admitting expert testimony under Rule 702: (1) the expert must be qualified as an expert by knowledge, skill, experience, training or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). Courts are reluctant to preclude testimony solely on the basis of an alleged lack of credentials. *See Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) ("the notion that *Daubert* … requires particular credentials for an expert witness is radically unsound … anyone

---
[2] Copies of cited authorities only published on electronic databases are attached as Exhibit D.

with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness."). The degree of expertise goes to the weight of an expert's proposed testimony, not its admissibility. "A witness qualified as an expert is not strictly confined to his area of practice but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Trenado v. Cooper Tire & Rubber Co.*, Case No. 08-2531, 2009 WL 5061775, at *2 (S.D.Tex. Dec. 15, 2009); *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1431 (5th Cir.1989) ("The fact that Dr. Teitelbaum is not a specialist in any other field goes to the weight of his opinion, not its admissibility."). Indeed, "[o]veremphasis on qualifications over testimonial reliability reflects a pre-*Daubert* sensibility." *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999).

Here, Sloan incorrectly defines who one of ordinary skill in the art is in an attempt to exclude Magee. Dr. Magee is a POSITA. Even if he were not, his opinions and the experimental data they are based on are not such that they need to be interpreted through the eyes of one skilled in the art.

**A.    Dr. Magee's education and experience qualify him as one of ordinary skill in the art.**

Dr. Magee is a POSITA. "Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed.Cir.1983), (citing *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1381-82 (Fed.Cir.1983)). These factors are not exhaustive but are merely a guide to determining the level

4

of ordinary skill in the art. *Id.*

Dr. Magee is a trained engineer with extensive experience in analyzing mechanical/fluid systems and for that reason alone is qualified to serve as an expert with respect to manual flush valves. *See* Dkt. 546-10 at 26-46. Sloan does not challenge Dr. Magee's expertise in fluid mechanics or mechanical engineering, but argues that because Dr. Magee did not have particular experience in the flush valve industry prior to his involvement with this litigation, he is not qualified to study, analyze, and subsequently render an expert opinion on how flush valve handles operate.

Sloan's motion does not define what constitutes a POSITA other than to argue that Dr. Magee is not one. Mr. Ballanco, however, has defined POSITA as a person having "a minimum of a B.S. degree in mechanical engineering or equivalent degree, and a few years of experience in the flush valve industry." Dkt. 546-19 at 15. Ballanco's definition is overbroad in that it would encompass individuals such as engineers who go into sales of flush valves even though such a person has does not know the inner workings of a flush valve handle. His definition would also exclude individuals having the requisite education and experience to analyze flush valve handles, but lacked (for example) a few years of selling flush valves. In other words, Ballanco's definition has been crafted to specifically exclude his former professor Dr. Magee.

Dr. Magee's proposed definition of a POSITA is "a Bachelor's of Engineering with a concentration in Mechanical Engineering or an equivalent degree, and experience in designing and/or analyzing mechanical/fluid systems." Dkt. 546-10 at 15. Zurn's definition is the only definition that takes into account the fact that because the claims require "a horizontal axis of plunger travel" and an "angled axis of plunger travel," one of skill in the art would need to be able to analyze the forces acting on the plunger causing it to travel along a given path. Zurn's

5

definition recognizes that one with experience in analyzing mechanical/fluid systems would be just as capable of understanding the fluid and mechanical principles of their operation as one who designed a flush valve. Unlike Sloan's proposed definition, Zurn's definition would exclude the salesperson identified above because such a person never designed or analyzed mechanical/fluid systems, nor does he have the experience to analyze a flush valve.

Sloan's entire motion is based on one argument, namely that Dr. Magee is not one of ordinary skill in the art. The foregoing analysis establishes that Dr. Magee is one of skill in the art, and Sloan's motion should therefore be denied.

> **A.  Even if Sloan is correct regarding the definition of a POSITA, Dr. Magee's proposed testimony is still admissible under Rule 702.**

Notwithstanding the above, Dr. Magee is a well-qualified expert who may testify about obviousness, enablement and written description pursuant to FRE 702. Sloan's heavy reliance on *Sundance* is misplaced because *Sundance* only warrants excluding patent attorneys under FRE 702 from posing as technical experts. It does not require that an expert be a POSITA, or be a POSITA as of 2005.

> 1. FRE 702 does not require one to be of ordinary skill in the art in order to testify as an expert witness.

In *Sundance*, the Federal Circuit held that it was an abuse of discretion to allow a **patent lawyer** with no technical expertise in the art to testify about infringement and validity. 550 F.3d at 1363. The party seeking to introduce testimony from its patent law expert presented no evidence or argument that he was in any way qualified to testify as a technical expert. *Id.* at 1362 n.4. Central to the *Sundance* holding was the fact that the proposed expert possessed "no experience whatsoever" in the technology at issue. *Id.* at 1362. In an effort to bolster this incorrect legal position, Sloan also cites *Flex-Rest, LLC v. SteelCase, Inc.*, 445 F.3d 1351, 1360-61 (Fed. Cir. 2006), *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1268 (Fed. Cir.

6

2008) and *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 395 Fed.Appx. 709, 715 (Fed.Cir.2010). What Sloan fails to advise the Court is that FRE 702 does not require excluding expert witnesses if they are not one of ordinary skill in the art. Instead,

> The cases cited by [Sloan] in support of its motion are inapposite [to the issue present in this motion] because they address vastly more attenuated relationships between the expertise of the purported experts and the field of the inventions than the circumstances before this Court. For example, in *Sundance,* the Federal Circuit held that a patent attorney with experience in patent law and procedure did not have sufficient technical expertise to testify about whether a "retractable segmented cover system used with a truck trailer" was obvious in light of prior art references. 550 F.3d at 1358, 1360–65; *see also id.* at 1362 (observing that the expert "has no experience whatsoever in 'the field of tarps or covers,' " and the proponent of his testimony did not even purport that his "experience with engines and the like is sufficiently related to covers"). In *Flex–Rest, LLC v. Steelcase, Inc.,* the Federal Circuit found no abuse of discretion in the exclusion of an ergonomics expert's testimony when the district court had "found that one skilled in the art was a keyboard designer." 455 F.3d 1351, 1360 (Fed.Cir.2006). Similarly, the Federal Circuit in *Extreme Networks, Inc. v. Enterasys Networks, Inc.* found no abuse of discretion in the exclusion of an expert's testimony when that expert did not meet her own description of a person of ordinary skill in the art. 395 Fed.Appx. 709, 715 (Fed.Cir.2010) ("Both parties agree that a person of ordinary skill in the art ... would have a substantial background in switches, bridges, and routers.... [The expert] worked as a system administrator for several corporations, but she never seems to have worked on 'the design or development of high speed switches, bridges, or routers.' ").

*Disney Enterprises, Inc. v. Kappos*, No. 12-cv-687, 2013 WL 508941, at *9 (E.D. Va. Feb. 11, 2013). Similarly, the Federal Circuit in *Proveris* likewise found that a patent attorney with experience in plumes to maneuver satellites while working at General Electric's missile and space division was unqualified to testify about laboratory equipment used to develop drug delivery devices. 536 F.3d at 1267-68. Instead, the correct recitation of the legal standard under FRE 702 is that an expert may, nevertheless, be qualified to opine on obviousness because he had experience that were "at least similar to the technologies at issue in this litigation." *Disney*, 2013 WL 508941 at *9.

Unlike the experts in the cases cited by Sloan, Dr. Magee is not a patent attorney with

7

little or no technical expertise in the relevant technology. He is a trained engineer with extensive experience in analyzing mechanical/fluid systems who confirmed his general understanding of the technology at issue with experimentation and analysis of the actual flush valves at issue in this case. He is, moreover, a professor who trains the next generation of engineers, including Sloan's expert, Julius Ballanco. He is more than qualified to opine as to Zurn's invalidity defenses because he is more than qualified to have run the necessary tests and interpret the experimental data upon which his opinions are based. Any alleged lack of experience would go to the weight of his testimony, not the admissibility. *See Tesco Corp. v. Weatherford Int'l Inc.*, 750 F.Supp. 2d 780, 791 (S.D. Tex. 2010) (distinguishing *Sundance* on the grounds that "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to assigned to the testimony by the trier of fact, not its admissibility.") (citations omitted).

        2.      <u>It is irrelevant whether Dr. Magee was a POSITA in 2005.</u>

Sloan further mischaracterizes the law by arguing that Dr. Magee was not a POSITA as of 2005. An "expert must be qualified to testify about what a person with ordinary skill in the art must have understood at the time of the invention, but the expert's knowledge of that may have come later." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03-cv-7713, 2006 WL 3718074, at *1 (N.D. Ill. Dec. 14, 2006). To this end, even if an expert witness was not one of ordinary skill in the art at the pertinent time, he may still testify about what such a person must have understood at that time if the expert develops that knowledge at a later date. *Disney*, 2013 WL 508941 at *9. Sloan does not dispute that Dr. Magee understands how flush valves function, how they are made, and how the plunger travels when the handle is actuated in the up and down directions, all of which are elements in Dr. Magee's enablement analysis. *See* Dkt. 546-10 at 22;

8

*see also Atlas Powder Co. v. E.I. duPont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984) ("To be enabling under § 112, a patent must contain a description that enables one skilled in the art to make and use the claimed invention.").

Nor does Sloan dispute that Dr. Magee studied how the plunger travels in Sloan's Uppercut® to determine whether Sloan had possession of a flush valve that had a horizontal axis and angled axis of plunger travel. *See* Dkt. 546-10 at 22; *Moba v. Diamond Automation*, 325 F.3d 1306, 1320 (Fed. Cir. 2003) ("[t]he function of the description requirement is to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him."). Sloan also cannot dispute that Dr. Magee compared the plunger travel paths in prior art handles to those of the accused device, which forms the basis of his obviousness opinion. As Dr. Magee has said, this is a very simple device that was well within his ability to study and learn how it functions. Dkt. 567-24 at 49-50; 567-25 at 113. So much so that Dr. Magee found things that John Wilson, the inventor of the Wilson Patent who was focused solely on a specific flush volume reduction, did not know about his claimed invention, i.e., how the plunger actually travels within the assembly.

**C.     Dr. Magee's opinions regarding invalidity do not require specialized knowledge of one of skill in the art.**

Unlike the experts relied on by Sloan, Dr. Magee does not intend to take the stand and offer unsupported opinions regarding the level of skill in the art at the time of the invention. He intends to offer opinions based on his study of how the plunger travels through the bushing passage. Sloan's motion does not challenge the methodology Dr. Magee and Dr. Su used in developing and testing their hypotheses, or the relevance of the evidence in Dr. Magee's expert reports, yet maintains that Zurn's should be precluded from introducing this evidence because Dr. Magee's expertise fails to comport with its own self-serving definition of a POSITA.

9

1. <u>Dr. Magee is qualified to opine on Zurn's written description and enablement defenses.</u>

The '635 Patent teaches that plunger travel axis is defined exclusively by the internal geometry of the bushing and that the only force acting on the plunger to define the axis of plunger travel is $F_{bushing}$. *See* at Dkt. 576-3 at 5:15-30. Dr. Magee's testing and analysis of the flush valve handles at issue led him to the conclusion that simply adding a tilted portion into the bushing passage does not result in a handle assembly that has an angled axis of plunger travel or a horizontal axis of plunger travel. His conclusion is based, among other things, on the experimental that neither the Sloan Uppercut® nor the accused Zurn devices exhibit a horizontal axis of plunger travel or an angled axis of plunger travel. Sloan does not even attempt to explain why a POSITA from 2005 would view the plunger travel data contained in Dr. Magee's Reports differently than he or she would view it today. Absent such an explanation, Dr. Magee is just as qualified as a POSITA from 2005 to opine whether Sloan's Uppercut® has a horizontal axis of plunger travel and an angled axis of plunger travel, thereby failing to comply with the written description and enablement requirements of 35 U.S.C. § 112, first paragraph. The best that Sloan can do is argue that Wilson incorrectly assumed in 2005 that the plunger would have travel axes defined exclusively by the internal geometry of the bushing and that a bushing passage having a tilted portion would cause the plunger to travel along a horizontal and an angled axis of plunger travel. But such an incorrect assumption does not negate the fact that the Uppercut® does not have a horizontal or angled axes of plunger travel, and therefore, there is no evidence that one can actually make a handle assembly with those plunger travel axes, or that Wilson possessed such a handle. *See* Magee Rpt. Dkt. 546-10 at 22.

2. <u>Dr. Magee is qualified to opine on Zurn's obviousness defense on the basis of the experimental data contained in his reports.</u>

To support his opinions regarding invalidity, Dr. Magee tested observations made by

10

Wilson, Becker, Funari and Ballanco and found that the prior art flush valves exhibit plunger travel paths that differ from the accused device, if they differ at all, only in the magnitude of the initial displacement of the plunger upon actuation. *See* Magee Rpt. Dkt. 546-10 at 15-18.

Sloan has repeatedly acknowledged that prior art flush valves exhibited some degree of flush volume reduction when actuated in the up direction. *See Ballanco Decl.*, Exh. B at ¶ 7 and Exhibit D. This was well known principle in the art, which was caused by the fact that the bushing passage is larger than the plunger. *See* Dkt. 567, Zurn SUMF at ¶ 13; *see also* Exh. C, Becker Depo. at 102:4 – 108:7; ZP00032-36.

Dr. Magee's analysis and testing of prior art flush valves confirmed that actuating the handle upward in resulted in a consistently reduced flush volume. *See* Magee Rpt. Dkt. 546-10 at 17. Dr. Magee's testing also confirmed that prior art flush valve handles achieved this reduction in flush volume because the plunger displaced away from the horizontal axis of plunger travel upon actuation, and eventually contacted the relief valve stem at a lower vertical point. *Id.* Once again, none of this testing on which Dr. Magee's conclusions of obviousness are based has been challenged as either unreliable or irrelevant in Sloan's motion.

Based on his analysis and the experimental data in his report, Dr. Magee concluded that flush valves that were manufactured and sold prior to the critical date of the patent-in-suit met all of the limitations of claims 12 and 14, with the exception of the limitation requiring the flush valve system to be user-selectable. *See id.* at 17-18. Dr. Magee seeks to offer testimony that it would have been obvious to tell someone that he or she could save water by flushing upward. *Id.* This opinion does not rely on specialized knowledge of a POSITA from 2005 because all of the structural limitations (i.e., the design and engineering aspects of the claimed invention) were already present in prior art flush valves at the time of the claimed invention. Dr. Magee studied

11

this and confirmed what Wilson, Becker, Funari and Ballanco all observed in the prior art, and he explained why this happens. As to the motivation to tell someone how to save water, Sloan does not contend that this motivation is somehow unique to only the flush valve industry, and Ballanco states that the industry's increased focus on water conservation, started at least as early as 1990. *See* Exh. B at ¶ 11-14.

> **D.  Dr. Magee properly relied on the experimental data obtained by Dr. Su, whose expertise in flush valve technology is beyond question.**

Sloan has also not challenged the qualifications or expertise of Dr. Su, who, under Dr. Magee's direct supervision, conducted the flush valve handle analysis and testing that informed Dr. Magee's Reports. Even assuming that there was not sufficient overlap between Dr. Magee's education and experience in mechanical/fluid systems and the technology at issue, any alleged gap in Dr. Magee's expertise was more than compensated for by his collaboration with Dr. Su, who has undisputed expertise in flush valve technology and who meets Sloan's definition of POSITA specifically tailored to exclude Dr. Magee. As courts in this Circuit have routinely observed, the Federal Rules specifically contemplate expert witness reliance on facts and data prepared by other experts or others of skill in the art. The Advisory Notes to the 2000 amendments to Rule 702 make clear that "[t]he term 'data' is intended to encompass the reliable opinions of other experts." An expert may also rely on published data of other scientists and researchers in relevant fields, even when those fields are different from his or her own. *See In re Yasmin and YAZ (Drospirernone) Marketing, Sales Practices, and Products Liability Litigation*, C 09 2100, 2011 WL 6301428, at *7, (S.D. Ill. Dec. 16, 2011) ("It is reasonable for a hematologist to rely on pharmacologically or epidemiologically based studies and reports when opining as to hematological conclusions. Dr. Green's years of medical training and experience qualify him to opine generally the correlations based on his interpretation of pharmacologically

and epidemiologically based studies and documents."); *Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385 (9th Cir.1992) ("The fact that the experts were not licensed hematologists does not mean that they were testifying beyond their area of expertise. Ordinarily, courts impose no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor.")).

In this case, Sloan has not even argued that it was improper for Dr. Magee to rely on the facts and experimental data obtained by Dr. Su or that Dr. Su's methodology was not scientifically valid. Nor has Sloan challenged the reliability or relevance of the evidence contained in Dr. Magee's Reports. Sloan's motion would have the Court exclude reliable, relevant evidence whose scientific validity has not been challenged simply because Dr. Magee did not have specific flush valve industry experience prior to his involvement in this litigation. Sloan's *Daubert* motion should be denied, and Dr. Magee should be allowed to offer testimony on the entirety of his reports and introduce all evidence contained therein at trial.

### III. CONCLUSION

For all of the foregoing reasons, Sloan's Motion to exclude the opinions and testimony of Dr. Magee should be denied.

Dated: June 21, 2013

_____
John W. McIlvaine (*admitted Pro Hac Vice*)
Thomas C. Wolski (*admitted Pro Hac Vice*)
Cecilia R. Dickson (*admitted Pro Hac Vice*)
Steven M. Johnston (*admitted Pro Hac Vice*)
sloanvzurn@webblaw.com

**THE WEBB LAW FIRM, P.C.**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815
Facsimile: (412) 471-4094

Nicole M. Murray
nicole.murray@quarles.com
John E. Conour
john.conour@quarles.com
**QUARLES & BRADY LLP**
300 N. LaSalle St., Suite 4000
Chicago, IL 60654
Telephone: (312) 715-5000
Facsimile: (312) 715-5155

David R. Cross
david.cross@quarles.com
Patrick J. Murphy
patrick.murphy@quarles.com
**QUARLES & BRADY LLP**
411 E. Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202
Telephone: (414) 277-5000
Facsimile: (414) 271-3552

**Attorney for Defendants, Zurn Industries, Inc. and Zurn Industries, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I served the DEFENDANTS' BRIEF IN OPPOSITION TO SLOAN'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF RICHARD A. MAGEE on Plaintiff via electronic mail with a courtesy copy to the Court, which constitutes service under the Federal Rules of Civil Procedure.

        Jason A. Berta (6295888)
        Scott R. Kaspar (6284921)
        Lisa M. Noller (6229957)
        Daniel W. Werly (6301164)

        **FOLEY & LARDNER LLP**
        321 North Clark Street, Suite 2800
        Chicago, IL 60654-5313
        Telephone: 312.832.4500
        Facsimile: 312.832.4700

        Richard S. Florsheim (admitted *pro hac vice*)

        **FOLEY & LARDNER LLP**
        777 East Wisconsin Avenue
        Milwaukee, WI 53202-5306
        Telephone: 414.271.2400
        Facsimile: 414.297.4900

        _____
        Attorney for Defendants, Zurn Industries, Inc. and Zurn Industries, LLC