IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SLOAN VALVE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-00204 |
| v. | ) | |
| | ) | |
| ZURN INDUSTRIES, INC., and | ) | |
| ZURN INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Zurn Industries, Inc. and Zurn Industries, LLC's (collectively, "Zurn") motion *in limine* to exclude the expert testimony of Plaintiff Sloan Valve Company's ("Sloan") expert, Mr. Harry J. Gwinnell, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). For the following reasons, the Court grants the Motion.

**BACKGROUND**

**I.    Factual and Procedural Background**

This case concerns U.S. Patent No. 7,607, 635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" ("the '635 Patent" or the "Wilson Patent"), and the corresponding U.S. Patent Application Publication No. 2006/0151729 (the "Published Wilson Patent Application"). On January 13, 2010, Sloan commenced this action against Zurn seeking (a) damages and injunctive relief for Zurn's alleged infringement of the '635 Patent and (b)

provisional damages for Zurn's alleged making, sale, and use of inventions that the Published Wilson Patent Application covers. In defense to this charge of willful infringement, Zurn has asserted an advice of counsel defense.

On January 28, 2013, Sloan served Zurn with the expert report of Mr. Harry J. Gwinnell. Sloan seeks to offer Mr. Gwinnell's testimony as an expert in the area of "corporate intellectual property practice." (R. 521-1, Expert Report at 1.) In his expert report, Mr. Gwinnell disclosed two opinions relating to Sloan's willful infringement claim and Zurn's invalidity defense to this claim: (1) Zurn was objectively and subjectively reckless in continuing to sell its accused products after the United States Patent and Trademark Office ("USPTO") rejected the invalidity arguments on which its opinion of counsel had relied and (2) Zurn was objectively and subjectively reckless in relying on the opinion of counsel to the extent it was based on data that was not known to reflect real-world conditions and Zurn knew was not reliable. (Expert Report at 20-21; R. 587, Plaintiff's Mem. in Opp. to Mot. to Exclude 1.) The parties deposed Mr. Gwinnell on April 18, 2013, and Zurn moved to exclude all of his opinions.

## II. *Daubert* Motion Briefing and Hearing

In its Motion, Zurn argues that Mr. Gwinnell lacks the necessary expertise to render these opinions and that they amount to nothing more than legal argument. In response, Sloan contends that Mr. Gwinnell's opinions will assist the jury in determining questions of fact in connection with the willfulness inquiry. Specifically, Sloan argues that because Zurn asserts an advice of counsel defense to willful infringement, the "jury will have to decide whether it was reasonable for Zurn to have relied on [the opinion of outside counsel]." (Pl.'s Mem. in Opp. 9.) In support of this assertion, Zurn points to the Federal Circuit Bar Association's Model Instruction 3.8 for

3

willful infringement, which—in describing the subjective recklessness or "state of mind" element of the test—lists the following among the factors for the jury to consider:

> [Alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid [or unenforceable]. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

Fed. Cir. Bar Association Model Instructions 3.8

According to Sloan, because "[w]hether a corporate defendant's reliance on an opinion of counsel was or was not reckless or unreasonable, when compared to the standard of conduct in Corporate America" is a subject with which a lay juror would be unfamiliar, Mr. Gwinnell will offer helpful opinions based on his experience as a corporate IP counsel. (Pl.'s Mem. in Opp. 9.) Sloan further contends that Mr. Gwinnell will provide testimony relevant to the "objective" recklessness prong of the willfulness question. While acknowledging that the objective prong "should be decided as a matter of law by the judge," Sloan argues that consistent with *Bard v. Peripheral Vascular, Inc. v. W.L. Gore & Associates*, 682 F.3d 1003 (Fed. Cir. 2012), Mr. Gwinnell's testimony will assist the jury with the underlying factual questions upon which objective recklessness may in part turn. (*Id.* 10-11); *see Bard*, 682 F.3d at 1007 ("When a defense or noninfringement theory asserted by an infringer is purely legal (e.g., claim construction), the objective recklessness of such a theory is a purely legal question to be determined by the judge. When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury." (citation omitted).) In this regard, Sloan identifies the following three questions of fact implicated by Zurn's advice of counsel defense that it claims the jury should determine "prior to the legal determination of

4

objective recklessness": (1) "[w]hether the inherency argument contained in the 2009 opinion letter is reasonable; (2) whether Zurn should have re-evaluated its reliance on the 2009 opinion letter after the Wilson patent survived reexamination; and (3) whether Zurn's reliance on the opinion was reasonable in the first place." (Pl.'s Mem. in Opp. at 12.)

On August 7, 2013, the Court held a *Daubert* hearing. During the hearing, Mr. Gwinnell testified and the parties also introduced several exhibits. At the hearing, Mr. Gwinnell testified that he anticipated rendering the following opinion in this case:

> "Based on my 30-plus years of experience with how reasonable companies act, that, in my opinion, Zurn did not act reasonably and in compliance with the normal standards of fair commerce." (Daubert Hr'g Tr. 23:6-9)

Specifically, Mr. Gwinnell opined that Zurn's "lack of follow-up . . . after the re-examination reaffirmed the validity of the patent" was inconsistent with the "normal standards of fair commerce." (Hr'g Tr. 46:10-13.) Mr. Gwinnell further testified about the processes for seeking clearance opinions from outside counsel at the specific companies for which he worked as an intellectual property counsel. (*See, e.g.*, Hr'g Tr. 27:18-21; 29:11-13.) He also testified that these companies had "written policies and procedures regarding fair standards of commerce" that required "truthfulness, good faith, [and] fair dealing." (Hr'g Tr. 29:15-16; 31:10-11; 32:20-21.) At the conclusion of the hearing, both Zurn's counsel and the Court questioned whether the "fair commerce" testimony was within the scope of Mr. Gwinnell's prior disclosed opinions. In addition, Mr. Gwinnell failed to identify these corporate policies as relevant to his opinions and failed to include copies of these corporate policies with his expert report. (Hr'g Tr. 23:6-9.) Following the hearing, Sloan's counsel submitted a supplemental submission arguing that, notwithstanding the absence of the term "normal standards of fair commerce" in Mr. Gwinnell's

5

prior opinions, his prior deposition testimony and report adequately disclosed both his opinions and the basis for them.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 provides, in relevant part, that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

Under the expert-testimony framework, courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable. *See id.*; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts "make the following inquiries before admitting expert testimony: First, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013); *see also Pansier*, 576 F.3d at 737.

## ANALYSIS

As an initial matter, the Court must determine whether Sloan's failure to specifically reference the "normal standards of fair commerce" in either Mr. Gwinnell's expert report or his deposition testimony constitutes an improper failure to disclose expert testimony. At the hearing, Zurn's counsel argued that this failure deprived it of the opportunity to cross-examine the witness on that opinion during Mr. Gwinnell's deposition. (Hr'g Tr. 72:20-22.)

Federal Rule of Civil Procedure ("Rule") 26(a)(2) requires a party to disclose a "complete statement of all opinions the [expert] witness will express and the basis and reasons for them" at the time specified for expert disclosure by the court. Fed. R. Civ. P. 26(a) (2)(B)(i). Rule 26(a)(2) further requires disclosure of "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(ii). Pursuant to Rule 26(e), the parties must supplement their report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). For an expert whose report the parties must disclose under Rule 26(a)(2)(B), this duty extends to both "information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

At the hearing, Sloan contended that neither Mr. Gwinnell's opinions nor the purpose for which Sloan has disclosed he will testify has changed. (Hr'g Tr. 79.) The Court disagrees. In his expert report, Mr. Gwinnell failed to disclose any opinion based upon the "normal standards of fair commerce" or any of the written policies he subsequently testified that he had relied upon in reaching his opinions. These policies were also absent from the "list of materials reviewed" section of his report. (*See* Expert Report, Ex. B.) Similarly, in his deposition, Mr. Gwinnell

7

never used the term "normal standards of fair commerce" or even referenced that concept. He also did not specifically discuss or reference this standard of conduct with respect to any corporate policies. Indeed, Mr. Gwinnell did not mention policies at all. Rather, as in his expert report, Mr. Gwinnell testified generally about Zurn's conduct with respect to his forty years of advising corporate clients. (Hr'g Ex. 17, Dep. Tr. 64:14-16; *see* Expert Report ¶ 54 (basing opinion as to Zurn's subject and objective recklessness generally on "experience, working for and advising both public and private companies")).

Moreover, the thrust—as well as the phrasing and substance—of Mr. Gwinnell's opinions has shifted. In his expert report and deposition, Mr. Gwinnell's opinions broadly focused on whether Zurn's reliance on the opinion of counsel following the reexamination was "both objectively and subjectively reckless." (Expert Report ¶ 54). It is not surprising that Zurn challenged these opinions at the start as legal conclusions. In contrast, at the *Daubert* hearing, Mr. Gwinnell opined that Zurn's conduct was not in keeping with the "normal standards of fair commerce" as reflected in part in the corporate policies and codes of conduct of the specific companies at which he worked. He did not testify regarding the opinions in his report. He abandoned his opinions in his report and instead offered new, more tailored ones.

In addition, Sloan has been inconsistent on the precise factual determinations for which Mr. Gwinnell's opinions will be helpful to the jury. Sloan's citation to the Federal Circuit Bar Association Model Patent Jury Instruction 3.8 in its memorandum, for example, relied on a component of the "subjective recklessness" prong of the willful infringement test.[1] (Pl.'s Mem.

---

[1] Instruction 3.8 provides in relevant part:

> The first part of the test is objective: the patent holder must persuade you that [alleged infringer] acted despite a high likelihood that [alleged infringer]'s actions infringed a valid and enforceable patent. In making this determination, you may not consider [alleged infringer]'s state of mind. Legitimate or credible defenses to infringement, even if not

8

in Opp. at 9.) Sloan then implied Mr. Gwinnell's opinions would also go to the factual questions underlying the "objective recklessness" prong. (*Id.* at 10.) The specific factual questions Sloan identified under this inquiry, however, are in the nature of whether it was reasonable for Zurn to rely on the opinion of counsel, *see id.* at 12, which the Federal Circuit Bar Association Model Patent Jury Instructions identify as a sub-component of the "subjective recklessness" inquiry. *See* Fed. Cir. Instruction 3.8. Finally, at the hearing, Mr. Gwinnell and Sloan's counsel framed his opinion in terms of the "normal standards of fair commerce," which is a phrase Sloan apparently has drawn from the "objective" prong of the Seventh Circuit Pattern Patent Instructions. *See* Seventh Circuit Patent Pattern Jury Instructions (2008 version); Hr'g Tr. 21:13-18 (referencing "Jury Instruction 11.2.14" in opening statement).[2]

---

> ultimately successful, demonstrate a lack of recklessness. Only if you conclude that the [alleged infringer]'s conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of the [alleged infringer]. The patent holder must persuade you that [alleged infringer] actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether [alleged infringer] had this state of mind, consider all facts which may include, but are not limited, to:
> . . .
> (6) [Give this instruction only if [alleged infringer] relies upon an opinion of counsel as a defense to an allegation of willful infringement:
> [Alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid [or unenforceable]. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

[2] Instruction 11.2.14 provides in relevant part the following with respect to willful infringement:

> To succeed on its contention that Defendant infringed the patent willfully, Plaintiff must prove two things by clear and convincing evidence:
>
> 1. There was a high likelihood that Defendant's actions constituted infringement of a valid patent. In making this determination, you may not consider Defendant's actual state of mind. [You may consider the normal standards of fair commerce.]

Federal Rule of Civil Procedure 37 provides that "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion of the untimely-disclosed evidence is automatic unless the non-compliant party meets its burden to show that the untimely disclosure was substantially justified or harmless. *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012); *see Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011). Exclusion is warranted in these circumstances. Sloan's argument that Zurn cannot be credibly surprised by Mr. Gwinnell's opinion in this respect is unpersuasive. Indeed, after reading Mr. Gwinnell's report and deposition testimony, the Court was also surprised by the change in his opinions at the *Daubert* hearing. (Hr'g Tr. 75:14-16.) Because of the lack of disclosure, Zurn did not have the opportunity to cross-examine Mr. Gwinnell on the "normal standards of fair commerce" opinion or on the underlying policies that helped form his opinions. Sloan also has failed to provide any explanation as to why it failed to disclose the "normal standards of fair commerce" opinion until the *Daubert* hearing itself.

Mr. Gwinnell's citations to *In re Seagate Tech., LLC*, 497 F.3d 1360, 1384 (Fed. Cir. 2007) in his report do not remedy the lack of disclosure. *Seagate* only references the standards of commerce by way of a footnote to Judge Newman's concurring opinion. *See Seagate*, 497 F.3d at 1371 n.5 ("We would expect, as suggested by Judge Newman, *post* at 1377, that the standards of commerce would be among the factors a court might consider."). These citations, absent an explicit mention of the phrase "normal standards of fair commerce," did not adequately provide notice of the policies themselves or of Mr. Gwinnell's opinion as to Zurn's conduct in

light of the "normal standards of fair commerce." Therefore, Sloan's failure to disclose was neither substantially justified nor harmless.

Accordingly, the Court strikes Mr. Gwinnell's opinions based upon "the normal standards of fair commerce."

## CONCLUSION

For the foregoing reasons, the Court grants Zurn's Motion on the basis of Sloan's failure to timely disclose Mr. Gwinnell's opinions pursuant to Rule 37.

**Date: August 23, 2013**

                **ENTERED**

                _____
                AMY J. ST. EVE
                United States District Court Judge