**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SLOAN VALVE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 10-cv-00204 |
| v. | ) |
| | ) |
| ZURN INDUSTRIES, INC., and | ) |
| ZURN INDUSTRIES, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Sloan Valve Company ("Sloan") has moved to strike portions of the expert reports of Richard S. Magee and to exclude his corresponding testimony. For the reasons discussed below, Plaintiff's motion is granted in part and denied in part as moot.

**BACKGROUND**

This is a patent infringement case involving U.S. Patent No. 7,607,635, entitled "Flush Valve Handle Assembly Providing Dual Mode Operation" (the "'635 Patent"). The '635 Patent "relates to flush valves for use with plumbing fixtures such as toilets, and more specifically to improvements in the bushing of the actuating handle assembly that will provide for user-selectable, dual mode operation of the flush valve." ('635 Patent, col. 1, ll. 6-10.) The improvement is a mechanism that allows a user to select one of two flush volumes based on the direction of actuation of the handle: a full flush volume to evacuate solid waste from the bowl or a reduced flush volume to remove liquid waste.

1

Sloan filed this lawsuit against Zurn Industries, Inc.'s and Zurn Industries, LLC ("Zurn") alleging infringement. Zurn has asserted various counterclaims and defenses against Sloan, including invalidity and non-infringement. During expert discovery, Zurn disclosed Dr. Richard S. Magee as its technical expert on the issue of non-infringement and invalidity. Sloan now seeks to strike Dr. Magee's January 24, 2013 initial invalidity report and his April 5, 2013 reply report on invalidity. Sloan's primary argument is that Dr. Magee is not a person of ordinary skill in the art and thus cannot opine on what such a person would have known or considered regarding the '635 patent.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 provides, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact[,] . . . a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion. . . ." *Id. See also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

Under the expert-testimony framework, courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable. *See id.*; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). *See also Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013). In doing so, courts "make the following inquiries before admitting expert testimony: First, the expert must be qualified as an expert by

knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013); *see also Pansier*, 576 F.3d at 737.

In *Daubert*, the Supreme Court offered the following non-exclusive factors to aid courts in determining whether a particular expert opinion is grounded in a reliable scientific methodology: (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has a known or potential rate of error; and (4) whether the relevant scientific community has accepted the theory. *See Happel*, 602 F.3d at 824; *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007). Further, the 2000 Advisory Committee's Notes to Rule 702 list the following additional factors for gauging an expert's reliability: (1) whether the testimony relates to "matters growing naturally and directly out of research . . . conducted independent of the litigation"; (2) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (3) "[w]hether the expert has adequately accounted for obvious alternative explanations"; (4) "[w]hether the expert is being as careful as he would be in his regular professional work outside paid litigation consulting"; and (5) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." *Id.* (internal quotations omitted); *see also American Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010). "[B]ecause there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue

3

and not any fixed evaluative factors." *Lees*, 714 F.3d at 521, (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167 (1999)). *See also Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003) (noting that the *Daubert* analysis is flexible); *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 608 n.4 (7th Cir. 2000) (noting that "the *Daubert* Court emphasized that it did not presume to set out a definitive checklist or test, and that the district judge's inquiry should be flexible") (quotations omitted).

In assessing the admissibility of an expert's testimony, the Court's focus "must be solely on principles and methodology, not on the conclusions they generate.'" *Winters*, 498 F.3d at 742 (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire,* 526 U.S. at 152). "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek*, Inc., 689 F.3d 802, 805 (7th Cir. 2012).

**ANALYSIS**

Sloan seeks to preclude Dr. Magee's invalidity opinions that depend on what a person of ordinary skill in the relevant art would have considered obvious in 2005 or what such a person would have understood from reading the patent at issue. Sloan contends that Dr. Magee is not a person of ordinary skill in the art and thus is not qualified to testify as to what such a person would have understood from reading the patent. Specifically, Sloan asks the Court to: 1) find that Dr. Magee is not a person of ordinary skill in the plumbing flush valve art; 2) strike Dr. Magee's definition of a person of ordinary skill in the art; 3) strike Dr. Magee's obviousness

4

opinions; 4) strike Dr. Magee's best mode opinions; and 5) strike Dr. Magee's enablement and written description opinions.

**I.      Dr. Magee**

Dr. Magee received his B.E., M.S., and his doctoral degree in mechanical engineering from Stevens Institute of Technology. He currently is a research professor in the Center for Environmental Systems at Stevens Institute of Technology in Hoboken, New Jersey. In addition, Dr. Magee consults for the New Jersey Department of Environmental Protection and for the Department of Defense and United States Army on the assessment of performance claims on innovative environmental and energy technologies. Dr. Magee is also the Technical Director of the New Jersey Corporation for Advanced Technology, a not-for-profit partnership designed to develop, verify and commercialize emerging, innovative environmental and energy technologies. Dr. Magee's "fields of major interest" include "incineration, destruction of chemical weapons, combustion, heat transfer, fire safety, and fire investigation."  (R. 546-10, Magee CV.)

Dr. Magee has experience in both mechanical engineering and fluid dynamics. He is a fellow with the American Society of Mechanical Engineers, a licensed professional engineer in the State of New Jersey, and a board certified environmental engineer. Dr. Magee has published extensively in the area of fire safety and the disposal of chemical weapons, and has given numerous presentations in both of these areas. (*See* R. 546-10, Magee CV.)

In providing his opinions in this case, Dr. Magee worked with Tsan-Liang Su, Ph.D., the Director of Laboratory Operations at Stevens Institute of Technology, who operates a laboratory certified to test manual flush valves. Sloan does not dispute that Dr. Su has experience in flush valves. Dr. Magee, in consultation with Dr. Su, studied flush valves and their handle assemblies, including prior art handles and the Sloan Uppercut handle.

Dr. Magee submitted two reports that are the subject of this motion. First, he disclosed an initial invalidity report, dated January 24, 2013 (the "Invalidity Report"). Second, he submitted a reply report on invalidity, dated April 5, 2013 (the "Reply Report"). In both reports, Dr. Magee opines on various issues pertaining to invalidity of the *Wilson* patent and on the standard for a person of ordinary skill in the art.

## II.     Dr. Magee's Opinions

Dr. Magee defined one of ordinary skill in this art regarding the '635 patent "to be one with a Bachelor's of Engineering with a concentration in Mechanical Engineering or an equivalent degree, and experience in designing and/or analyzing mechanical/fluid systems." (R. 546-10 at 15.) Based on this definition, Dr. Magee gave various opinions regarding invalidity that incorporate the perspective of one of ordinary skill in the art. Regarding Zurn's defense of obviousness, for example, Dr. Magee opined as follows:

> One of ordinary skill in the art would combine the '570 Walker patent with the design and operation of these prior art valves to provide instructions to a user that by actuating the handle in an upward direction, a reduced volume of water would be flushed as compared to when the handle is actuated in the down direction so as to communicate to the end user that an upward actuation will provide a reduced flush.

(R. 546-10 at 18.) Dr. Magee also gave opinions regarding Zurn's defenses of best mode and written description that are premised on what one skilled in the ordinary art would have had the ability to determine.

## III.    Dr. Magee Is Not A Person of Ordinary Skill in the Art

Sloan contends that Zurn's expert, Dr. Magee, is not properly qualified as a person of ordinary skill in the art ( "POSITA") as of the time of the invention disclosed in the '635 Patent, and therefore asks the Court to exclude Dr. Magee's testimony regarding the obviousness, best

mode, enablement, and written description of the '635 Patent. The Court agrees that Dr. Magee is not a POSITA as applied to the '635 patent.

### A. The Definition of a POSITA

Before ruling on Sloan's motion, the Court must first determine the proper definition of a POSITA as applied to the '635 Patent. The parties do not dispute the requisite level of education required for a POSITA -- both agree that a POSITA must have a bachelor's degree in mechanical engineering or its equivalent. (R. 650, Sloan's Supp. Memo, at 1); (R. 651, Zurn's Supp. Memo, at 2). Their agreement, however, ends there. According to Sloan, the POSITA must also have a few years of experience in the flush valve industry. Zurn, on the other hand, advocates for experience in designing and/or analyzing mechanical/fluid systems.

The Court must first look to the art at issue in the patent. Sloan contends that the relevant art is "flush valves." Zurn, on the other hand, contends the relevant art is "mechanical/fluid systems." In addition, Zurn argues that work experience in the relevant field is not required to be considered a POSITA.

The Court has considered the supplemental memoranda submitted by the parties. For the following reasons, the Court defines a POSITA as a person having at least a bachelor's degree in mechanical engineering (or its equivalent) and some experience designing, assembling, and/or repairing plumbing systems or devices.

#### 1. Defining "The Art"

In determining the relevant art for purposes of defining the hypothetical POSITA, the Federal Circuit considers "the prior art, the problems giving rise to the invention, and the invention itself." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1376 (Fed. Cir. 2012). The

Court considers each of the factors identified in *Mintz* in determining the definition of a POSITA for the '635 Patent.

Looking first at the prior art, the Declaration of Scott Kaspar, filed by Sloan, states that 54 of the 57 patents cited on the face of the '635 Patent "relate to flush valves or flushometers, and many include the words 'flush valve' or 'flushometer' in their titles." (Sloan's Supp. Memo, at 6) (citing Kaspar Decl., ¶¶ 6-7). Zurn does not dispute this fact. Moreover, Mr. Kaspar states that each of the seven prior art patents cited by Zurn, and the only two prior art patents discussed in the background of the '635 Patent itself, "relate directly to flush valves." (Kaspar Decl., ¶ 9). The relevant prior art is directed specifically to flush valves.

Second, considering the problems giving rise to the invention, the '635 Patent describes its aim as promoting water conservation by designing "flush valves for use with plumbing fixtures such as toilets, and more specifically . . . improvements in the bushing of the actuating handle assembly that will provide for user-selectable, dual mode operation of the flush valve." ('635 Patent, Col. 1, ll. 6-11). Sloan advocated for a narrow interpretation of this language to solve a problem within the art of flush valves. A more reasonable and less restrictive interpretation supported by the intrinsic evidence, however, is that the patent aimed to solve a problem within the art of plumbing systems generally, as is stated in the opening sentence of the patent. Given that flush valves are a subset of plumbing systems, the goals of user selectability and water preservation are equally applicable to the art of plumbing systems as they are to flush valves specifically.

Finally, turning to the invention itself, the Court recognizes that the opening words of the '635 Patent state that "[t]he current invention relates to flush valves for use with plumbing fixtures such as toilets." ('635 Patent, Col. 1, ll. 1-2). Looking at the claims of the '635 Patent,

the Court recognizes that they are each directed to a flush valve, a flush handle assembly, a system for a flush valve, or a method for using a flush valve. Again, flush valves, flush handle assemblies, flush valve systems, and methods for using flush valves are all subsets of the plumbing art generally. Therefore, a reasonable consideration of this factor indicates that the art of the '635 patent is plumbing systems and devices, not just flush valves.

The Court is cognizant of Zurn's argument that while the focus of the inventor and the patent itself may help define the art, district courts should avoid "definitions so narrow that they merely describe the use to which the invention has been put rather than the experience from which the invention could be created." (R. 653, Zurn's Opposition to Sloan's Supp. Memo, at 3) As Zurn has argued, the Court must avoid a definition that "ignores the experience needed to understand how and why the invention works." (*Id.*) In defining the art, courts should, however, "narrow[] the art to focus on the context of the inventor's problem." *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007) (In defining the scope of prior art for purposes of obviousness, "[a] reference is reasonably pertinent if, even though it may be in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem"); *Oatey Co. v. IPS Corp.*, 665 F. Supp. 2d 830, 849 (N.D. Ohio 2009) ("[P]rior art relevant to the obviousness inquiry is not strictly limited to the specific field of endeavor of the invention at issue, but extends to fields logically related to the general problem facing the inventor.") (citing *In re ICON Health & Fitness, Inc.*, 496 F.3d at 1379-80); *see also Oatey Co.*, 665 F. Supp. 2d at 849 ("The nature of the problem defines the scope of the prior art a person of reasonable skill in the art would consult in attempting to solve it."); *Se-Kure Controls, Inc. v. Diam USA, Inc.*, 662 F. Supp. 2d 1006, 1013 (N.D. Ill. 2009) ("[A]nalogous art need not be from

the same field of endeavor or have the same requirements as the system embodied in the patent-at-issue as long as the reference was reasonably pertinent to the problem with which [the inventors] were involved.") (citing *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992)).

Keeping these goals in mind, and considering each of the *Mintz* factors, a reasonable definition of "the art" to which the '635 Patent pertains is plumbing systems and devices. The patent itself supports this definition. In addition, Sloan admits that "the typical employees that work on flush valves at companies like Sloan or Zurn devote their time to designing plumbing valves." (Sloan's Supp. Memo, at 10). Sloan further admits that "improvements to flush valves . . . are invented by people who are experienced in the design of plumbing equipment." (*Id.*). Likewise, Zurn admits that "[f]lush valves are a subset of fluid/mechanical systems." (Zurn's Opposition to Sloan's Supp. Memo, at 2). Plumbing systems and devices fall somewhere in between these two extremes. Finally, defining "the art" as plumbing systems and devices puts the invention within the broader context of how and why it works, while also providing the appropriate focus on the context of the inventor's problem.

The relevant art is not "mechanical/fluid systems." Zurn's proposed definition covers an extremely broad variety of different technologies that go far beyond the art in the '635 patent. As Dr. Magee admitted, Zurn's definition "covers an extremely broad range of different technologies including the designs of, for example, an airplane wing, a braking system for a car, an automatic transmission for a vehicle, a hydraulic elevator, a system for fueling a vehicle, an airplane or rocket ship, a hydraulic forklift, a dentist's drill, and a refrigerator." (Ex. 8, Magee Dep. 17:20-19:19). Given the breadth of the "mechanical/fluid systems" art, Zurn's unsupported assertion that "the principles governing flush valves are the same as those governing other

10

mechanical/fluid systems" fails.  (Zurn's Opposition to Sloan's Supp. Memo, at 3).  Thus, in this case, the Court finds that the art cannot be defined so broadly.

Having defined "the art" as plumbing systems and devices, the Court now turns to the level of "ordinary skill" required for an expert to be qualified as a POSITA.

### 2. The Level of "Ordinary Skill"

The Federal Circuit has held that the POSITA is "a hypothetical person who is presumed to know the relevant prior art."  *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (citing *Custom Accessories Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986)).  "The actual inventor's skill is not determinative."  *Custom Accessories*, 807 F.2d 955, 962.  In determining the level of ordinary skill, district courts may consider the following factors: the "type of problems encountered in the art, prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field."  *Mintz*, 679 F.3d at 1376 (quoting *Custom Accessories,* 807 F.2d at 962).  The Federal Circuit has stated that not all factors may be present in every case, and "one or more of them may predominate."  *Custom Accessories*, 807 F.2d at 963.  The Court analyzes each of these factors in determining the level of ordinary skill.

As described above in defining "the art," the '635 patent directs itself to solving the problem of providing a dual flush mechanism for controlling the volume of water consumed when flushing a plumbing system.  Prior art solutions to those problems, as identified on the face of the patent, were addressed to the art of flush valves.  Neither party specifically discusses the rapidity with which innovations are made in the plumbing art, although the Court does consider the declaration of Sloan's expert, Julius Ballanco, which states that "[w]ater conservation in plumbing fixtures started in the late 1970's," and work on flushometers began in the "early to

mid-2000s"). (R. 650-2, Ballanco Decl., ¶¶ 17-18). Based on this uncontested aspect of Ballanco's declaration, plumbing systems are not an art in which innovations are made with rapidity.

Turning to the sophistication of the technology and the level of education of active workers in the field, Zurn provides little guidance aside from its assertion that the technology is not sophisticated enough to warrant requiring experience in the field. The parties agree that a bachelor's degree in mechanical engineering is a prerequisite for workers in this field. In addition, Mr. Ballanco contends that "[i]t normally takes 2-3 [years] of practical work experience after graduation for an engineer to begin working" on the problems in the field of flush valves, and the "[e]ngineers that work on flush valves tend to work on very few other types of products." (Ballanco Decl., ¶¶ 23, 28). In response, Zurn offers the declaration of Kevin Schoolcraft, an Engineering Manager at Zurn, who disagrees with Mr. Ballanco's conclusions that "particularized experienced [is] required for an engineer to be considered proficient in flush valves, and in the flush valve industry as a whole." (R.653-1, Schoolcraft Decl., ¶ 5). Mr. Schoolcraft offers examples of engineers at Zurn who have worked on flush valve projects "within months or even weeks of beginning their employment at Zurn." (*Id.* ¶ 10). The Court, however, is unconvinced that, while these entry-level Zurn engineers work on flush valves, they would qualify as a POSITA on their first day of employment. As these engineers gain experience working on flush valves and plumbing systems, they gain the requisite level of ordinary skill in the art—they have not achieved it on their first day. Just because Zurn allows its new engineers to begin working on projects in the flush valve group does not require this Court to find that they have, at that time, anything more than a low level of skill in the art. Therefore, the Court finds that the field of plumbing systems and devices is sufficiently

sophisticated that the level of ordinary skill in the art includes both a bachelor's degree in mechanical engineering, as the parties agree, and some experience designing, assembling, and/or repairing plumbing systems or devices.

Zurn presents additional arguments for why a POSITA should not be required to have obtained prior work experience. Zurn contends that the Court's definition of the POSITA "must encompass patent examiners and entry-level engineers with little or no experience in the flush valve industry." (*Id.*). Zurn goes as far as to assert that Federal Circuit case law stands "for the proposition that the requisite level of skill in the art is presumptively the lowest-common denominator (i.e. meeting minimum education requirements and general familiarity with the underlying technical principles)." (Zurn's Supp. Memo, at 5).

The Court cannot, however, agree with Zurn's proposal that "the level of skill in the art is typified by an engineer with low to medium skill in the relevant technology." *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991). To the contrary, in *Ryko*, the Federal Circuit, reviewing a motion for summary judgment, merely "assumed that the district court believed the non-movant appellant's evidence, that the ordinary skill in the art was low to medium." *Ryko*, 950 F.2d at 719. The Court did not establish that the level of ordinary skill in the art is always an engineer with low to medium skill. Contrary to Zurn's arguments, requiring a POSITA to possess a few years of experience does not limit the definition to persons of "extraordinary or inventive skill." Nor can the Court agree that a POSITA is the lowest-common denominator. While, in the decision cited by Zurn, the district court in *Endress + Hauser* did find that a POSITA was a "newly-graduated electrical engineer having a bachelor's degree and a C-minus grade point average," the court did so because the defendant "provided no credible evidence to support its argument that the hypothetical [POSITA] is a person having not only a relevant

13

technical degree, but also several years' design experience in the use" of the technology at issue. *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 892 F. Supp. 1107, 1116 (S.D. Ind. 1995). In this case, Sloan has presented credible evidence that design experience is required to be a POSITA. Thus, requiring experience in the field of plumbing systems and devices sets a level of skill that is neither low nor extraordinary. Rather, it defines the level of "ordinary" skill in the art.

Furthermore, a patent examiner is not necessarily a POSITA. Although the Federal Circuit has stated that a patent examiner is deemed to have some experience in the art, he or she does not necessarily meet the criteria of a POSITA for purposes of making an obviousness determination. In fact, in *Lee*, the Federal Circuit stated that, while patent examiners are deemed to have experience in the field of the invention, "this experience, insofar as applied to the determination of patentability, must be applied from the viewpoint of the 'person having ordinary skill in the art to which said subject matter pertains,' the words of section 103." *In re Lee*, 277 F.3d at 1345. The fact that the Federal Circuit has upheld district court findings regarding the level of ordinary skill in the art that required "at least a few years of design experience working in the field," which is not a prerequisite to be a patent examiner, indicates that patent examiners are not POSITAs in all instances. *See Orthopedic Equip. Co., Inc. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1382 (Fed. Cir. 1983) (upholding district court finding that required a few years of design experience developing orthopedic soft goods where the patent claimed an adjustable knee immobilizer).

Finally, Zurn argues that Sloan's proposed definition would "encompass salespeople and others having 'experience in the flush valve industry' who have never once examined a flush valve, while excluding actual engineers who have studied flush valves and the way [they]

operate but happen to lack a particularized experience in the flush valve industry." (Zurn's Supp. Memo, at 1). In light of the Court's findings today, Zurn's argument is moot, as the requisite experience will be in designing, assembling, and/or repairing plumbing systems or devices.

The field of the invention at issue in this case is sufficiently sophisticated to warrant a requirement of some experience within the field to qualify as a POSITA. While a POSITA would certainly have a degree in mechanical engineering, the POSITA would also necessarily have experience in the specific application of mechanical engineering to plumbing systems and devices. Specifically, the POSITA must have some experience designing, assembling, and/or repairing plumbing systems or devices. Without some understanding of plumbing systems and devices, an expert would not grasp many important aspects of the invention, and therefore could not be considered a POSITA for purposes of testimony regarding the obviousness, enablement, or best mode of the '635 Patent.

### B. Dr. Magee Does Not Have Any Experience in Plumbing Systems or Devices

Dr. Magee does not have any experience in plumbing systems or devices. During his deposition in this case, he admitted that following:

* He has never been a member of the International Association of Plumbing and Mechanical Officials; (Magee Dep. at 7)

* He was not a member of the American Society of Plumbing Engineers or the American Society of Sanitary Engineering; (*Id.* at 7)

* He was never a member of any organization that had a primary focus on plumbing or plumbing equipment; (*Id.* at 7)

* He has never been certified as a plumbing designer; (*Id.* at 7-8)

* He has never worked as a plumber or plumbing mechanic, or designed a plumbing system for an building; (*Id.* at 8)

* He has never conducted any training seminars on plumbing code requirements or on plumbing design; (*Id.* at 8)

* Dr. Magee has never consulted for a company that made toilets, urinals, or flush valves for them before his engagement in this case; (*Id.* at 8-9)

* He has never designed a toilet or urinal flush valve, or any bathroom plumbing device; (*Id.* at 10)

* Dr. Magee does not have any patents on plumbing devices; (*Id.* at 10) and

* Dr. Magee has not written any books or articles on plumbing or plumbing design. (*Id.* at 10.)

While Dr. Magee has impressive experience in other areas and extensive credentials in the areas of fire and the disposal of chemical agents, he does not have any of the requisite experience designing, assembling, and/or repairing plumbing systems or devices. Accordingly, he is not a POSITA as applied to the '635 patent.

### III. Opinions Regarding Obviousness

The majority of Dr. Magee's opinions regarding obviousness are based on the perspective of a POSITA. Because he is not a POSITA, he is not qualified to give these opinions. Accordingly, the Court grants this aspect of Sloan's motion. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008).

### IV. Opinions Regarding Best Mode, Enablement and Written Description

Sloan also seeks to exclude Dr. Magee's opinions regarding whether the patent specification enables a person of ordinary skill in the art to practice the claimed invention and whether such a person would have recognized that the specification is sufficiently definite to describe all the elements of the claimed invention. It further seeks to exclude Dr. Magee's opinions regarding best mode. Sloan argues that these expert opinions also must be based on the expertise of one skilled in the ordinary art, an expertise Dr. Magee does not have.

Because the Court is granting summary judgment for Sloan on Zurn's best mode and enablement defenses, the Court denies this aspect of Sloan's motion as moot.

Regarding his opinions on the Zurn's written description defense, the Court strikes Dr. Magee's opinions to the extent they are based on the perspective of a POSITA.

## CONCLUSION

For the reasons discussed in detail above, the Court grants Sloan's motion to strike the opinions of Dr. Magee based on the perspective of a POSITA in part and denies it in part as moot. In addition, the Court defines a POSITA as a person having at least a bachelor's degree in mechanical engineering (or its equivalent) and some experience designing, assembling, and/or repairing plumbing systems or devices.

Dated: November 18, 2013         ENTERED:

                                 AMY J. ST. EVE
                                 United States District Court Judge